UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS HERTEL, et al.,

       Plaintiffs,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC,
et al.,

       Defendants.

_____/

File No. 1:12-CV-174

HON. ROBERT HOLMES BELL

**O P I N I O N**

This matter is before the Court on Plaintiffs Nancy Hutchins and Curtis Hertel's

motion to remand a state court action removed by Defendants the Federal National Mortgage

Association ("Fannie Mae") and the Federal Housing Finance Agency ("FHFA") (Dkt. No.

1, Notice of Removal) and also Defendants JPMorgan Chase Bank, N.A. and Bank of

America, N.A (the "Banks") (Dkt. No. 3, Joinder in Notice of Removal).  (Dkt. No. 27, Mot.

to Remand.)  For the reasons that follow, Plaintiffs' motion to remand will be denied.

**I.**

On November 10, 2011, Hertel, Register of Deeds of Ingham County, and Hutchins,

Register of Deeds of Branch County, filed a complaint in Ingham County Circuit Court.

Plaintiffs' complaint alleged that multiple defendants, including Fannie Mae and the Banks,

violated Michigan's State Real Estate Transfer Tax Act ("SRETTA") and County Real Estate

Transfer Tax Act ("CRETTA"), Mich. Comp. Laws §§ 207.502, 207.523, by improperly

claiming exemptions. On February 9, 2012, the summons issued by the circuit court for Fannie Mae expired without an order extending it. On February 27, 2012, the FHFA filed a motion to intervene in the circuit court. That same day, Fannie Mae and the FHFA filed a notice of removal in this Court, relying on 12 U.S.C. § 1723a(a) and 28 U.S.C. §§ 1331, 1332(d), 1441(a), and 1442(a). (Dkt. No. 1, Notice of Removal.) Also on that same day, the Banks joined in the notice of removal on the additional ground of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a). (Dkt. No. 3, Joinder in Notice of Removal.)

## II.

As a general rule, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Similarly, "[a] civil action or criminal prosecution that is commenced in a State court and that is against or directed to [an agency of the United States, among others,] may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a).

Federal courts have original jurisdiction "over all civil actions where the amount in controversy exceeds the sum or value of $75,000" and there is complete diversity of citizenship. 28 U.S.C. § 1332(a). Additionally, federal courts have original jurisdiction "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000,

exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).

Original jurisdiction is also present in "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Fannie Mae's federal statutory charter provides that it "shall have power . . . to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, state or federal."  12 U.S.C. § 1723a(a).

### III.

Fannie Mae and the FHFA rely on different jurisdictional bases for removal than the Banks.  Thus, the arguments pertaining to each set of defendants favoring removal will be discussed in turn.

### A.  Fannie Mae and the FHFA

Fannie Mae and the FHFA assert numerous bases of removal jurisdiction.  Fannie Mae relies on § 1441(a), while the FHFA relies on § 1442(a) in addition to § 1441(a).  (Dkt. No. 1, Notice of Removal 4-5.)  A requirement under § 1441(a) is that the federal courts have original jurisdiction.  Thus Fannie Mae and the FHFA assert 12 U.S.C. § 1723a(a) and 28 U.S.C. §§ 1331 and 1332(d) as bases of original jurisdiction.

While Plaintiffs dispute the application of all of these original jurisdiction statutes, their primary contention is that neither Fannie Mae nor the FHFA had the right to remove under either §§ 1441(a) or 1442(a) because neither was a party to the action at the time of removal.  (Dkt. No. 27, Mot. to Remand ¶¶ 1-2, 4.)  Section 1441(a) requires that a civil

action in which the federal courts have original jurisdiction may be removed only "by the defendant or the defendants." Similarly, § 1442(a) permits removal only by parties who a civil action is "against or directed to." If there is no removal jurisdiction under § 1441(a) or § 1442(a), then it is irrelevant whether this Court would have original jurisdiction under 12 U.S.C. § 1723a(a) or 28 U.S.C. §§ 1331, 1332(d).

### 1. Fannie Mae

The Plaintiffs concede that Fannie Mae was a named defendant in the original complaint. (Dkt. No. 27, Mem. in Supp. 5.) However, they argue that because the summons for Fannie Mae expired before it was served, Fannie Mae was dismissed from the case before it attempted to remove it. (*Id.*) Consequently, Plaintiffs conclude that Fannie Mae is not a defendant in the present action and cannot remove under § 1441(a). The Court agrees with this conclusion, and thus it does not reach Fannie Mae's asserted bases for this Court's original jurisdiction under § 1723a(a), § 1332(d), or § 1331.

According to Michigan law, "[o]n the filing of a complaint, the court clerk shall issue a summons to be served" on a named defendant. Mich. Court Rule 2.102(A). Such a summons expires 91 days after the complaint is filed, although within that 91 days a plaintiff may request an extension. Mich. Court Rule 2.102(D). However, absent such an extension, the following occurs:

> On the expiration of the summons as provided in subrule (D), *the action is deemed dismissed* without prejudice as to a defendant who has not been served with process as provided in these rules, unless the defendant has submitted to the court's jurisdiction. . . . After the time stated in subrule (E)(1), the clerk

4

shall examine the court records and enter an order dismissing the action as to a defendant who has not been served with process or submitted to the court's jurisdiction. *The clerk's failure to enter a dismissal order does not continue an action deemed dismissed* . . . The clerk shall give notice of the entry of a dismissal order under MCR 2.107 and record the date of the notice in the case file. The failure to give notice does not affect the dismissal.

Mich. Court Rule 2.102(E) (emphasis added).

In this case, the complaint was filed on November 10, 2011, meaning that the service of summons expired on February 9, 2012. (Dkt. No. 27, Mem. in Supp. 5.) There was no extension requested. The fact that "Plaintiffs have not amended their complaint to remove Fannie Mae from the caption, to delete the paragraph identifying Fannie Mae as a defendant, or to excise the allegations and exhibits that refer to property transfers to which Fannie Mae is a party" (Dkt. No. 33, Resp. 5) is of no matter. The summons expired and Fannie Mae was dismissed, whether or not Plaintiffs took any action in regard to their complaint and whether or not an order dismissing Fannie Mae was filed.[1]

Fannie Mae does not assert that it submitted to the state court's jurisdiction prior to being dismissed. Instead, Fannie Mae argues that it was entitled to remove the action despite the fact that Plaintiffs did not serve it with a timely complaint. (*Id.* at 6-8.) In support, it relies on 28 U.S.C. § 1448:

In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with

---

[1]Indeed, under Michigan law, Plaintiffs were not allowed to amend their complaint. *See* Mich. Court Rule 2.118(A)(1) ("A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party. . . "). Because there was never a responsive pleading, amending the complaint was not an option.

> process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

In support of the proposition that defects in service can be cured even when a defendant has been dismissed according to state law, Fannie Mae relies on an Eastern District of Michigan case: "The state court did not formally dismiss the matter, and the Michigan court rule that would 'deem' the matter dismissed as to a defendant not 'served with process as provided in [the Michigan] rules,' Mich. Ct. R. 2.102(E)(1), does not govern federal courts." *Cowen v. Am. Med. Sys., Inc.*, 411 F. Supp.2d 717, 720 (E.D. Mich. 2006). Similarly, Fannie Mae relies on *Morton v. Wright*, No. 06-14151, 2007 WL 734965 (E.D. Mich. Mar. 8, 2007). In *Morton*, a properly-served party moved for removal and was joined by multiple unserved defendants. The court found it did have jurisdiction over the unserved defendants because they had consented to removal notwithstanding plaintiff's failure to serve them. Thus, Fannie Mae argues that this Court has jurisdiction over it because it has similarly consented to removal. (Dkt. No. 33, Resp. 7.)

However, *Cowen* and *Morton*'s conclusions on this matter are not established law, and this Court declines to follow them. "[I]n determining the validity of service in the state court *prior to removal*, a federal court must apply the law of the state." 4A Wright & Miller, Federal Practice and Procedure § 1082 (emphasis added). *After removal*, then federal law governs and defects in service can be cured pursuant to § 1448. *Id.* Because state law deemed Fannie Mae dismissed and the matter was closed prior to the removal, state law

6

controls on that matter and § 1448 cannot be used to bring back Fannie Mae as a party.

Multiple circuits have held that § 1448 possesses this limitation. According to the Third Circuit, "[i]mplicit in our conclusion is that § 1448 cannot be utilized to breathe jurisprudential life in federal court into a case legally dead in state court." *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 168 (3d Cir. 1976). The First Circuit has cited *Witherow* with approval in holding that the application of § 1448 "would ignore [plaintiff's] procedural deficiency in state court . . . .We decline to use Section 1448, as the district court noted, to 'breathe jurisprudential life in federal court to a case legally dead in state court.'" *Osborne v. Sandoz Nutrition Corp.*, 67 F .3d 289, 289 (1st Cir.1995) (quoting *Witherow*, 530 F.2d at 168). *See also Marshall v. Warwick*, 155 F.3d 1027, 1033 (8th Cir. 1998) ("We do not believe that [§ 1448] can 'resurrect' a removed diversity case which would have been dismissed as time-barred had it remained in state court."); *Lee v. City of Beaumont*, 12 F.3d 933, 937 (9th Cir. 1993) ("[Federal Rule of Civil Procedure] 4(j) does not apply to service of process which was attempted prior to removal; the sufficiency of service in this case is determined according to state law because service of process occurred before removal."); *Morton v. Meagher*, 171 F. Supp.2d 611, 615 (E.D. Va. 2001) ("On this record, service was not effected within the time frame prescribed by state statute and, therefore, the case was 'dead' before it was removed to federal court.")

In conclusion, this Court declines to follow *Cowen* and *Morton* and instead chooses to follow the myriad of decisions holding that § 1448 cannot revive an action deemed

dismissed under state law. Therefore, Fannie Mae is not a party to this case, meaning that this Court's jurisdiction cannot be predicated on the original jurisdiction arguments unique to Fannie Mae.

### 2. The FHFA

Plaintiffs also argue that the FHFA cannot rely on either § 1441(a) or 1442(a) because it was not a party in the state court action. (Dkt. No. 27, Mem. in Support 12-19.) This is because at the time of removal, there was a pending motion by the FHFA to intervene in the state court case. Nevertheless, the FHFA contends that it can properly remove the case pursuant to 28 U.S.C. § 1442(a) even though it was not a party to the state action. (Dkt. No. 33, Resp. 11-12.) The Court declines to rule on the FHFA's standing to remove because such a ruling is unnecessary in light of the Court's conclusion in Part B below that the Court possesses diversity jurisdiction pursuant to 28 U.S.C. § 1332 as argued by the Banks.

### B. The Banks

The Banks have joined in Fannie Mae and FHFA's notice of removal. (Dkt. No. 3, Joinder in Notice of Removal.) The Banks concur that this Court has original jurisdiction based on the federal question grounds put forth by Fannie Mae and the FHFA, but they also request removal on the additional ground of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.* at 2.) Because there is no dispute that the Banks are defendants in the present matter, the applicability of § 1441(a) is not in question, and the analysis rests on the applicability of the original jurisdiction statute, § 1332. The Court finds that § 1332 is

applicable and that the removal by the Banks was proper.

Federal courts have original jurisdiction in all matters involving completely diverse parties where there is more than $75,000 in controversy.  § 1332.  Complete diversity requires every plaintiff to be diverse from every defendant.  The Banks do not dispute that this matter lacks complete diversity.  However, they contend that the non-diverse individuals and companies have been fraudulently joined.  (Dkt. No. 3, Joinder in Notice of Removal ¶ 17.)  Because Plaintiffs have not asserted a colorable claim against Marshall Isaacs, Jeanne Kivi, Ellen Coon, eTitle Agency, Inc., 1st Choice Title Services, Inc., and Attorneys Title Agency LLC, (the "Non-Diverse Defendants"), the Banks ask that the Court find diversity jurisdiction and deny Plaintiffs' motion to remand.  (*Id.*)  Plaintiffs contend that it has colorable claims against all of the Non-Diverse Defendants, and thus there is not complete diversity.  (Dkt. No. 39, Reply 2-10.)  Alternatively, they contend that the amount in controversy requirement has not been satisfied.[2]  (*Id.* at 10.)

### 1.  Complete Diversity/Fraudulent Joinder

"[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  The removing

---

[2]Plaintiffs also contend that removal by the Banks was untimely.  (Dkt. No. 39, Reply 1-2.)  This argument has no merit.  Chase was served on January 30, 2012.  Bank of America was served on January 27, 2012.  Ignoring for the sake of argument the last-served defendant rule, and only looking at Bank of America's time-line for removal (28 U.S.C. § 1446 provides 30 days from service), the thirtieth day after their service was February 26, 2012, a Sunday.  Pursuant to Federal Rule of Civil Procedure 6(a)(1)(c), the time to remove was thus extended to Monday, February 27, 2012, the day the Banks filed their motion to remove.  (*See* Dkt. No. 3, Joinder in Notice of Removal.)

party bears the burden of proving fraudulent joinder:

> [T]he removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party." All doubts as to the propriety of removal are resolved in favor of remand.

*Id.* (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) (citations omitted). There can be no fraudulent joinder unless it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968); *see also Alexander*, 13 F.3d at 949. "The question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.*

The Complaint asserts multiple claims against the Non-Diverse Defendants: (1) failure to pay transfer taxes under SRETTA and CRETTA when the transfer documents are filed; (2) preparing transfer instruments "not in conformity with" SRETTA and CRETTA; (3) statutory conversion; and (4) conversion of an instrument. Plaintiffs also seek a declaratory judgment that the activities of all defendants are in violation of SRETTA and CRETTA. They argue that all of these claims are colorable.

### I) Failure to Pay Transfer Tax

Plaintiffs assert three bases of liability for the Non-Diverse Defendants based on their failure to pay the transfer tax: (1) liability for not affixing the proper transfer tax stamps on

10

the transfer documents when filed; (2) liability as agents of sellers or grantors;[3] and (3) liability under a "concert of action" theory.

First, Plaintiffs argue that SRETTA and CRETTA impose liability on those responsible for making, executing, issuing, and/or delivering instruments subject to the transfer tax at issue, if such people fail to affix a stamp indicating the tax has been paid and fail to pay the tax at the time of filing. (Dkt. No. 1, Ex. A, Compl. ¶¶ 14-16, 22-24.) In support, they cite Michigan Compiled Laws § 207.507: "The tax imposed by this act shall be evidenced by the affixing of a documentary stamp or stamps to every instrument subject to the tax imposed by this act by the person making, executing, issuing or delivering such document."

There can be no recovery under state law on this claim because § 207.507 provides no basis of liability for such persons. All this section does is indicate that a documentary stamp must be affixed to instruments subject to the tax to prove that the tax has been paid. It does not impose liability on the makers or executors of the instruments for failing to properly stamp the instruments and pay the transfer tax at the time of filing. Indeed to impose liability on such persons would contradict the plain language of the statute, which

---

[3]Plaintiffs do not directly assert this basis of liability. However, their complaint refers to the Non-Diverse Defendants as "agents" (*see, e.g.*, Dkt. No. 1, Ex. A, Compl. ¶ 33) and asserts that their alleged statutory duty to affix stamps *in conjunction* with the fact that "they were working with/for the grantor/seller who is responsible for the payment" (Dkt. No. 39, Reply 4) gives rise to liability. Moreover, their reply belief contains the heading "The Non-Diverse Defendants are Liable as Agents of Sellers or Grantors." (*Id.* at 3.) Thus, Plaintiffs appear to be relying on an agency theory. To the extent that Plaintiffs do not wish to rely upon an agency theory, discussion of this basis of liability may be ignored.

limits imposition of the transfer tax to a "seller or grantor." *See* Mich. Comp. Laws §§ 207.502(2), 207.523(2).

Plaintiffs admit that the sellers and grantors are directly responsible for the taxes, but then jump to the conclusion that "if such persons does [sic] not draft, sign, issue, or deliver such an instrument, *those that do are responsible for the instrument being properly stamped with the applicable taxes due*." (Dkt. No. 39, Reply 3 (emphasis added).) There is no basis whatsoever in the statutes for such a conclusion, and, in fact, this conclusion contradicts the plain language limiting liability to sellers or grantors. Thus, because Plaintiffs do not argue that the Non-Diverse Defendants were sellers or grantors, they cannot sustain a cause of action against them under this theory.

Second, Plaintiffs argue that the Non-Diverse Defendants may be held liable as agents of the statutorily liable sellers and grantors. (Dkt. No. 1, Ex. A, Compl. ¶ 33; Dkt. No. 39, Reply 3.) Plaintiffs argue that because these defendants had a specific statutory duty to ensure payment by the stamp requirement, and they were working for the sellers and grantors responsible for the payment, they can be held liable for the violation of their statutory duty which resulted in nonpayment of the transfer tax. (Dkt. No. 39, Reply 4.)

Again, state law provides no recovery under this theory. The statute does not extend liability to agents of sellers and grantors. Nor is there any common law basis for extending liability in this manner. "Under long-settled principles of contract law, agency agreements do not create any rights in third parties, even a party as to whom the principal owes some

12

performance and for whose benefit the principal has retained an agent to render it." *Uniprop,*

*Inc. v. Morganroth*, 678 N.W.2d 638, 641 (Mich. Ct. App. 2004) (quoting *Koppers Co., Inc.*

*v. Garling & Langlois*, 594 F.2d 1094, 1098 (6th Cir. 1979)).  Plaintiffs have not argued that

any exception to this principle is present, nor does it appear to the Court that any such

argument would have merit.

Third, Plaintiffs argue that the Non-Diverse Defendants face liability under a concert

of action theory "[b]ecause each of the types of Defendants have statutory duties [meaning

that] their conduct working together can be the only way the proper transfer tax is not paid."

(Dkt. No. 39, Reply 4; *see also* Dkt. No. 1, Ex. A., Compl. ¶ 33.)  This claim is not colorable.

There are three elements a plaintiff must satisfy to succeed on a concert of action

theory of liability in Michigan: "plaintiff must show, first, that all defendants acted tortiously;

second, that plaintiff was harmed by one of the defendants; and, third, that plaintiff, 'through

no fault of [his or her] own, [is] unable to identify which actor caused the injury.'"

*Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 727 (Mich. Ct. App. 1985) (quoting *Abel*

*v. Eli Lilly & Co.*, 343 N.W.2d 164, 173 (Mich. 1984)).

As discussed above, Plaintiffs are unable to show that any of the Non-Diverse

Defendants violated SRETTA or CRETTA individually because there is no liability under

those statutes for such makers and executors.  At most, only a seller or grantor can be liable

for violating these statutes, so any alleged defects in the deeds prepared and executed by the

Non-Diverse Defendants are not actionable.  Without at least potential liability under

SRETTA and CRETTA for the Non-Diverse Defendants, Plaintiff's concert of action theory fails.  This conclusion is inevitable regardless of the " working together" and "much more than a tacit agreement" scenarios hypothesized by Plaintiffs.  (Dkt. No. 39, Reply 4.)

### ii) Preparing Non-Conforming Transfer Documents

Next, Plaintiffs allege that the Non-Diverse Defendants are liable under SRETTA and CRETTA for knowingly preparing transfer documents "not in conformity with" the statutes.  (Dkt. No.1, Ex. A, Compl. ¶¶ 39-42.)  Alleged deficiencies include the failure to state the true value of the property, the failure to state any applicable tax exemption, and the stating of improper exemptions.  (*Id.* at ¶¶ 40, 42.)  Plaintiffs admit the statutes are silent as to whether or not a private right is conferred on anyone and ask this Court to infer one.  (Dkt. No. 39, Reply 5.)

First, it should be noted that SRETTA and CRETTA do impose remedies for certain conduct.  Among others, it is a criminal offense for any person to fraudulently remove or tamper with a documentary stamp and for any person to knowingly issue a fraudulent affidavit.  Mich. Comp. Laws §§ 207.512, 207.534.

"As a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive.  However, an exception to this general rule provides that if the statutory remedy is plainly inadequate, a private cause of action can be inferred." *Int'l Bhd. of Elec. Workers, Local Union No. 58 v. McNulty*, 543 N.W.2d 25, 29 (Mich. Ct. App. 1995) (citing *Forster v. Delton Sch. Dist.*, 440 N.W.2d 421 (Mich. Ct. App. 1989);

14

*Dudewicz v. Norris Schmid, Inc.*, 503 N.W.2d 645 (Mich Ct. App. 1993)). The Michigan statutes provide criminal sanctions for certain documentary deficiencies. These remedies do not become "plainly inadequate" just because the "statutory remedies are not as comprehensive as plaintiffs . . . would like." *Id*. at 30.

Plaintiffs dismiss the relevance of these statutory sanctions, arguing that "[a] close review of the SRETT and CRETT sections providing for criminal sanctions HAVE NOTHING WHATSOEVER TO DO WITH THE NON-PAYMENT OF TAXES." (Dkt. No. 39, Reply 5.) That is beside the point. Plaintiffs independently argued that the Non-Diverse Defendants were liable for not paying the transfer taxes, and this Court found those arguments to lack merit. *See supra* Part B(1)(i) (discussing Dkt. No. 1, Ex. A, Compl. ¶¶ 14-16, 22-24). Later on in their complaint, in the part being analyzed here, Plaintiffs allege that it was *also* wrongdoing for the Non-Diverse Defendants to make or execute instruments "not in conformity with" SRETTA and CRETTA. (Dkt. No. 1, Ex. A, Compl. ¶¶ 39-42.) In support of this allegation, Plaintiffs alleged documentary deficiencies for which the Non-Diverse Defendants were responsible. While the statutes do not provide criminal sanctions for the alleged documentary deficiencies, they do provide sanctions for some documentary deficiencies, meaning these statutory remedies are relevant.

To the extent that Plaintiffs' arguments against the relevance of these sections of SRETTA and CRETTA can be understood as a request for the Court to imply a right of action for the allegations discussed in Part B(1)(i), any cause of action inferred by the Court

would not aid Plaintiffs.  The statutes are not silent on failure to pay the transfer tax as Plaintiffs claim.  While the statutes may not directly spell out an enforcement mechanism, they do clearly state which persons may be held liable for the failure to pay the transfer taxes. As mentioned above, the statutes are clear that the tax is only upon a seller or grantor.  Thus, if the Court were to infer a cause of action regarding tax liability,[4] it would only allow Plaintiffs to sue a seller or grantor, and it would not make Plaintiffs' otherwise baseless claims against the other defendants colorable.

### iii) Statutory Conversion

Plaintiffs also assert liability against the Non-Diverse Defendants for conversion. (Dkt. No. 1, Ex. A, Compl. ¶¶ 58(c),(f), 60(c),(f).)  Plaintiffs' theory is that the sellers and grantors failed to pay the taxes which were due and converted the tax proceeds to their own use, using improper and unlawful drafting techniques aided by the Non-Diverse Defendants. (Dkt. No. 39, Reply 8.)   In reliance, Plaintiffs cite Michigan Compiled Laws § 600.2919a(1)(b):

> [Liability exists for] [a]nother person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

However, Plaintiffs specifically allege that the Non-Diverse Defendants "aided in the

---

[4]While Plaintiffs devote time in their reply brief to their standing to sue to collect unpaid transfer taxes (Dkt. No. 39, Reply 6-7), the Court declines to reach this issue, because Plaintiffs' standing to sue the Lender-Defendants (the sellers and grantors potentially liable for such taxes) has not been raised by any defendant.

conversion process." (Dkt. No. 39, Reply 8.) This is not the appropriate standard under § 600.2919a(1)(b). Aiders are only liable for statutory conversion if their aid comes *after* property has been converted. *See* § 600.2919a(1)(b) (using the past tense when describing liability for those parties "aiding in the concealment of *stolen, embezzled, or converted* property") (emphasis added). *See also In re Pixley*, 456 B.R. 770, 786 (Bankr. E.D. Mich. 2011); *Burg v. Burg*, No. 284131, 2009 WL 2951282, at *5 (Mich. Ct. App. Sept. 15, 2009). Plaintiffs have not alleged that the Non-Diverse Defendants played any role aiding in the concealment of converted property after a conversion occurred. If any conversion did occur, it happened upon the filing of the allegedly improper documents with the state, and there is no allegation that the Non-Diverse Defendants did anything after that. Thus, these defendants cannot be liable for statutory conversion.

### iv) Conversion Through an Instrument

Similarly, Plaintiffs allege that the Non-Diverse Defendants are liable for conversion through an instrument. (Dkt. No. 1, Ex. A, Compl. ¶¶ 58(c), 60(c).) Such a claim requires the following:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

Mich. Comp. Laws § 440.3420. Plaintiffs' theory is that "[b]ased on Defendants' failure to pay transfer taxes at the time of filing, they were receiving payments in the amount of the

17

transfer taxes to which they were not entitled." (Dkt. No. 39, Reply 8.)

This claim is not colorable. Plaintiffs rely on the fact that an instrument is considered converted if a bank makes payment with respect to an instrument to a person not entitled to receive payment. (Dkt. No. 39, Reply 8.) Plaintiffs are correct that this is a basis for conversion through an instrument. But their theory under this basis is that because Defendants failed to pay transfer taxes at the time of filing, they were receiving payments in the amount of the transfer taxes to which they were not entitled. (*Id.*) To the extent that an unpaid tax can constitute a "payment" to the nonpaying party, this claim can only establish conversion through an instrument for the sellers and grantors benefitting from the unpaid taxes. The Non-Diverse Defendants did not receive any "payment" by filing these instruments with allegedly inapplicable exemptions because they would not be the ones making payment in the absence of such exemptions. *See* Mich. Comp. Laws §§ 207.502(2), 207.523(2) (limiting transfer tax liability to sellers and grantors). There can be no conversion by a party not receiving any benefit. Consequently, even if the Non-Diverse Defendants knowingly filed documents with fraudulent bases of avoiding tax liability, they cannot be held liable for conversion through an instrument.

### v) Declaratory Relief

Last, Plaintiffs seek a declaratory judgment against the Non-Diverse Defendants. (Dkt. No.1, Ex. A, Compl. ¶¶ 58(a), 60(a).) However, once again Plaintiffs ask this Court to find an implied cause of action against the Non-Diverse Defendants who are only the

18

makers and executors of the transfer instruments. (Dkt. No. 39, Reply 9-10.) As previously discussed, there is no basis in the statutory scheme, express or implied, for such a cause of action. *See supra* Part B(1)(ii). Thus, Plaintiffs' attempt to seek a declaratory judgment does not have a colorable basis.

### 2. Amount in Controversy

Alternatively, Plaintiffs contend that diversity jurisdiction is improper because the amount-in-controversy requirement is not satisfied. Plaintiffs contend that "there is a very good chance that at least one defendant will not meet the $75,000 requirement." (Dkt. No. 39, Reply 10.) This is a misstatement of the law. The amount-in-controversy requirement can be met by one plaintiff's claims against one defendant. "To satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the amount-in-controversy specification." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (citing *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 559 (2005)). Once one plaintiff satisfies the amount-in-controversy requirement as to one defendant, 28 U.S.C. § 1367 permits supplemental jurisdiction over claims by other plaintiffs and claims against other defendants. *Exxon Mobil*, 545 U.S. at 559.

The burden of showing that the amount-in-controversy requirement is met falls on the defendant in removal actions:

> Generally, because the plaintiff is 'master of the claim,' a claim specifically less than the federal requirement should preclude removal. State counterparts to Fed.R.Civ.P. 54(c) might enable a plaintiff to claim in her complaint an amount lower than the federal amount in controversy but nevertheless seek and

recover damages exceeding the amount prayed for. . . . In such situations, the removing defendant must show that it is "more likely than not" that the plaintiff's claims meet the amount in controversy requirement.

*Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157-58 (6th Cir. 1993)); *see also Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). The "more likely than not" burden "does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Gafford*, 997 F.2d at 159.

 In state court, Plaintiffs pleaded damages that exceeded $25,000. (Dkt. No. 1, Ex. A, Compl. ¶ 4.) Michigan Court Rules provide that a plaintiff must plead a specific amount if the claims are for a sum certain, but that otherwise "a specific amount may not be stated, and the pleading must include allegations that show that the claim is within the jurisdiction of the court." Mich. Court Rules 2.111(B)(2). Because Plaintiffs did not seek a sum certain and could recover more than the $25,000 pleaded, the burden is on the removing defendant to show that it is more likely than not that the actual value of the claims of at least one plaintiff against one defendant exceeds $75,000.

The Banks note that Plaintiffs seek unpaid transfer tax from the last 15 years in their respective counties. Thus, the Banks allege that the amount-in-controversy requirement is met by estimating the number of MERS-registered mortgages for properties located in

Ingham and Branch Counties, and then applying the county and state transfer taxes to the value of these estimated properties . (Dkt. No. 32, Resp. 17.)  They conclude that "the alleged unpaid taxes far exceed $75,000." (*Id.*)  Moreover, they point out that the value in controversy is even higher than this number given the fact that Plaintiffs ask for damages to be trebled. (*Id.* (citing Dkt. No. 1, Ex. A, Compl. ¶¶ 58(c), 60(c).)  Plaintiffs have not alleged that the numbers used by defendants are incorrect or misleading.

However, the Banks did incorrectly use data from both Branch and Ingham County to calculate the approximate amount in controversy.  The claims of only one plaintiff may be used, which means that the Banks should have limited the data estimating the number of MERS-registered mortgages to one county.  Nevertheless, even halving the Banks' numbers results in an amount-in-controversy over $75,000.  Instead of the alleged unpaid taxes "far exceeding" $75,000, the Court would have to consider the alleged unpaid taxes to only exceed $37,500.  But that is no matter, since tripling this number (as Plaintiffs seek to triple their damages) amounts in a number well above the $75,000 threshold.  While these calculations do not prove to a legal certainty that one plaintiff's claims against MERS exceed $75,000, they are sufficient for the Court to find that it is more likely than not.

## IV.

Multiple parties have joined in removal of the present action to federal court.  The Court finds that Fannie Mae was deemed dismissed under state law and had no standing to remove this action.  Whether the FHFA had standing to remove the action is not reached

21

because the Court finds that the Banks had standing to remove the action and that the Court has original jurisdiction pursuant to § 1332 and the doctrine of fraudulent joinder. Consequently, Plaintiffs' motion to remand will be denied.

An order consistent with this opinion will be entered.


Dated: October 4, 2012                                    /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE