UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS HERTEL, the Register of Deeds and
Representative of INGHAM COUNTY; and
NANCY HUTCHINS, the Register of Deeds
and Representative of BRANCH COUNTY,
both as Class Representatives of all 83 counties
in the State of Michigan,                                   Case No. Case No. 1:12-cv-00174

                        Plaintiffs,                         Hon. Robert Holmes Bell

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
MERSCORP, INC., BANK OF AMERICA
N.A.; J.P. MORGAN CHASE & CO., CHASE
HOME MORTGAGE CORPORATION f/k/a
CHASE HOME FINANCE, WELLS FARGO
BANK, N.A., CITIMORTGAGE INC., and
JOHN DOE as any other authorized signers for
MERS or MERSCORP, INC., and Defendants
JOHN DOC Corporations I – MMM,

                        Defendants.
_____


**MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS OF INTERVENOR-DEFENDANTS FEDERAL
NATIONAL MORTGAGE ASSOCIATION, FEDERAL HOME LOAN
<u>MORTGAGE CORPORATION, AND THE FEDERAL HOUSING FINANCE AGENCY</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

   I.    FANNIE MAE, FREDDIE MAC, AND FHFA ................................................. 3

   II.   THE STATUTORY EXEMPTIONS FROM "ALL [STATE AND LOCAL] TAXATION" ................................................................................................... 4

   III.  THE TRANSFER TAXES ................................................................................ 5

   IV.  HISTORY OF THIS ACTION ......................................................................... 5

   V.   RELATED LITIGATION ................................................................................. 6

ARGUMENT ...................................................................................................................... 7

   I.    LEGAL STANDARD FOR MOTION TO DISMISS ...................................... 7

   II.   PLAINTIFFS' CLAIMS FAIL BECAUSE THE EXEMPTION STATUTES PROHIBIT TRANSFER TAXES ON ANY REAL ESTATE TRANSACTION TO WHICH THE ENTERPRISE DEFENDANTS ARE PARTY ....................................... 8

     A.  The Enterprise Defendants' Exemption from "All [State and Local] Taxation" Immunizes the Entirety of their Transactions from the Transfer Taxes ......................... 9

     B.  The Enumerated Items in the Exemption Statutes' "Including" Clauses Demonstrate that Congress Intended to Immunize the Enterprise Defendants from the "Entire Process" of Investing in Mortgages ................................................................. 13

CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................7

*Bennett v. Durham*,
    683 F.3d 734 (6th Cir. 2012) ....................................................................................8

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994).................................................................................................13

*Carson v. Roane-Anderson Co.*,
    342 U.S. 232 (1952).................................................................................................15

*Dist. of Columbia ex rel. Hager v. Fed. Nat'l Mortg. Ass'n*,
    No. 11-2090, --- F. Supp. 2d ----, 2012 WL 3228658 (D.D.C. Aug. 9, 2012) ...............1, 9, 14

*Dodd v. United States*,
    545 U.S. 353 (2005)...................................................................................................9

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
    314 U.S. 95 (1941)............................................................................................13, 16

*Federal Land Bank of New Orleans v. Crosland*,
    261 U.S. 374 (1923)..........................................................................................10, 11, 12

*Hertel v. Bank of America*,
    No. 11-cv-757, --- F. Supp. 2d ----, 2012 WL 4127869 (W.D. Mich. Sept. 18, 2012) ... passim

*Interstate Oil Pipe Line Co. v. Stone*,
    337 U.S. 662 (1949).................................................................................................13

*Jimenez v. Quarterman*,
    555 U.S. 113 (2009)...................................................................................................9

*Laurens Fed. Savs. & Loan Ass'n v. S.C. Tax Comm'n*,
    365 U.S. 517 (1961)........................................................................................... passim

*Miller v. French*,
    530 U.S. 327 (2000)...................................................................................................9

*Murdock v. Ward*,
    178 U.S. 239 (1900).................................................................................................13

*Norfolk & Western Ry. Co. v. Am. Train Dispatchers' Ass'n*,
    499 U.S. 117 (1991)..............................................................................................9, 10

*Oakland Cnty. v. Fannie Mae*,
  276 F.R.D. 491 (E.D. Mich. 2011) ...................................................................................6

*Oakland Cnty. v. FHFA*,
  871 F. Supp. 2d 662 (E.D. Mich. 2012).....................................................................6, 7, 14

*Paslowski v. Standard Mortgage Corp.*,
  129 F. Supp. 2d 793 (W.D. Pa. 2000)..........................................................................15, 16

*Pittman v. Home Owners' Loan Corp.*,
  308 U.S. 21 (1939)........................................................................................... passim

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*,
  683 F.3d 239 (6th Cir. 2012) .....................................................................................7, 8

*Rust v. Johnson*,
  597 F.2d 174 (9th Cir. 1979) ....................................................................................15, 16

*State ex rel. Seaboard Air Line Railroad Co. v. Green*,
  173 So. 2d 129 (Fla. 1965).........................................................................................12

*State of Kansas ex rel. Todd v. United States*,
  995 F.2d 1505 (10th Cir. 1993) .................................................................................12, 13

*United States v. Plavcak*,
  411 F.3d 655 (6th Cir. 2005) .......................................................................................9

**STATUTES**

7 U.S.C. § 1511................................................................................................................12

12 U.S.C. § 1433..............................................................................................................11

12 U.S.C. § 1451..........................................................................................................3, 15

12 U.S.C. § 1452(e) ................................................................................................ passim

12 U.S.C. § 1463..............................................................................................................11

12 U.S.C. § 1716........................................................................................................3, 15, 16

12 U.S.C. § 1723a(c)(2)............................................................................................ passim

12 U.S.C. § 4501..............................................................................................................15

Housing and Economic Recovery Act of 2008, Pub L. No. 110-289, 122 Stat. 2654,
  codified at 12 U.S.C. § 4617 *et seq.*................................................................ passim

M.C.L. § 207.501 .........................................................................................................4, 5

M.C.L. § 207.502 ..................................................................................................5

M.C.L. § 207.505(c) ...........................................................................................3, 8

M.C.L. § 207.521 ..................................................................................................5

Pub. L. 91-351, 84 Stat. 451, § 301 (1970) ........................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..........................................................................................7

## <u>INTRODUCTION</u>

Clearly and broadly worded federal statutes mandate that Intervenor-Defendants Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), and the Federal Housing Finance Agency in its capacity as the Enterprises' Conservator ("FHFA" and together with the Enterprises, the "Enterprise Defendants"), "shall be exempt from all taxation . . . imposed by any . . . State, county, municipality, or local taxing authority" with a single, narrow carve-out for taxation of real property that is not at issue here.  12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2) (the "Exemption Statutes").  This Court has already recognized that the Exemption Statutes immunize the Enterprise Defendants from Michigan real estate transfer taxes (the "Transfer Taxes") when the Enterprises are grantors in real estate transfers.  *Hertel v. Bank of America*, No. 11-cv-757, --- F. Supp. 2d ----, 2012 WL 4127869 (W.D. Mich. Sept. 18, 2012) ("*Hertel I*").  As the Court observed in *Hertel I*:

> [t]here is no possible reading of the [Exemption] [S]tatutes other than that Fannie Mae, Freddie Mac, and the FHFA are exempt from all state taxation, regardless of whether it is termed a recording or excise tax.  . . .  Consequently, the Court finds that the text unambiguously exempts [Fannie Mae, Freddie Mac and FHFA] from all state taxation, with the sole exception of taxes on real property.

*Id.* at *3.  Similarly, in August 2012, Judge Bates of the U.S. District Court for the District of Columbia held that the "sweeping and unambiguous" language of the Exemption Statutes "unambiguously prove[s]" that the Enterprise Defendants are exempt from taxes imposed on their real estate transfers.  *Dist. of Columbia ex rel. Hager v. Fed. Nat'l Mortg. Ass'n*, No. 11-2090, --- F. Supp. 2d ----, 2012 WL 3228658, at *4 (D.D.C. Aug. 9, 2012) (citation omitted).

This case presents an issue undecided in *Hertel I*:  whether the Exemption Statutes "cover

the entire process of [the Enterprises'] real estate transactions" and thereby prohibit Plaintiffs from imposing the Transfer Taxes on the Enterprises' counterparties (*i.e.*, the "Bank Defendants").[1]  Order Granting Intervention at 5, ECF No. 78 (Dec. 18, 2012).  At oral argument in *Hertel I*, the State of Michigan recognized that the Exemption Statutes should apply with equal force when the Enterprises are grantees, as the statutes immunize *both parties* to the transaction.  Hr'g Tr., ECF No. 79 at 41-42, *Hertel v. Bank of Am., N.A.*, No. 1:11-757 (W.D. Mich. Feb. 9, 2012).  Plaintiffs nevertheless allege that the Bank Defendants are liable for the Transfer Taxes in transactions where the Enterprises are grantors, grantees, or real parties in interest.

Basic principles of statutory construction and controlling Supreme Court precedent defeat Plaintiffs' claim.  Congress exempted the Enterprise Defendants from "*all* taxation," and the broad sweep of this language immunizes the entirety of the Enterprises' transactions.  In addition, Congress enumerated certain items, such as the Enterprise Defendants' "income," "activities," "franchise," and "mortgages or other security holdings," as specifically exempt from taxation.  For nearly a century, the Supreme Court has consistently recognized that statutes that are materially identical to the Exemption Statutes forbid any state or county taxes similar to the Transfer Taxes on transactions involving an exempt entity — *even if such taxes fall on non-exempt counterparties*.  Accordingly, the Enterprises' transactions are exempt from the Transfer Taxes, and Plaintiffs may not indirectly tax the Enterprises or their transactions by imposing

---

[1]     The Bank Defendants include Bank of America, N.A., JP Morgan Chase & Co., Chase Home Mortgage Corporation, Chase Home Finance, Flagstar Bank, FSB, Wells Fargo Bank, N.A., CitiMortgage, Inc., Comerica Bank, Independent Bank, SSB Bank, and US Bank, N.A.

taxes on the Bank Defendants here.  This Court should dismiss Plaintiffs' action with prejudice.[2]

## BACKGROUND

### I.    FANNIE MAE, FREDDIE MAC, AND FHFA

Fannie Mae is a government sponsored enterprise chartered by Congress to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation."  12 U.S.C. § 1716.  Freddie Mac is also a government-sponsored enterprise chartered by Congress for substantially the same mission, including to "provide ongoing assistance to the ssecondary market for residential mortgages," to strengthen and support "mortgages on housing for low- and moderate-income families" by "increasing the liquidity" of the market, and "to promote access to mortgage credit throughout the Nation."  *Id.* § 1451 note.

FHFA is an independent federal agency, created pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, *codified at* 12 U.S.C. § 4617 *et seq.*, with comprehensive regulatory and oversight authority over the Enterprises.  On September 6, 2008, the Director of FHFA placed the Enterprises into FHFA's conservatorship "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."  12 U.S.C. § 4617(a)(2).  The Conservator has the statutory power to "operate" the Enterprises and "to conduct all [of their] business," with the statutory mission of, among other things, "preserv[ing] and conserv[ing] the[ir] assets and property."  *Id.* § 4617(b)(2)(B).

---

[2]    Dismissal is also warranted under M.C.L. § 207.505(c), which exempts from the CRETT "instruments which this state is prohibited from taxing under the constitution or statutes of the United States."

## II.    THE STATUTORY EXEMPTIONS FROM "ALL [STATE AND LOCAL] TAXATION"

Fannie Mae's charter — a federal statute — provides that Fannie Mae, "including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, *shall be exempt from all taxation* now and hereafter imposed by *any State, . . . county, municipality, or local taxing authority*, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed." 12 U.S.C. § 1723a(c)(2) (emphases added).

Freddie Mac's federal statutory charter similarly provides that Freddie Mac, "including its franchise, activities, capital, reserves, surplus, and income, *shall be exempt from all taxation* now or hereafter imposed by . . . *any State, county, municipality, or local taxing authority*, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." *Id.* § 1452(e) (emphases added).

HERA provides that FHFA, as Conservator, "[i]ncluding its franchise, its capital, reserves, and surplus, and its income, *shall be exempt from all taxation* imposed by *any State, county, municipality, or local taxing authority*, except that any real property of [FHFA, as the Conservator,] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." *Id.* § 4617(j)(1), (2) (emphases added). HERA also provides that the Conservator is not "liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." *Id.* § 4617(j)(4).

- 4 -

## III.   THE TRANSFER TAXES

The statute governing the county real estate transfer tax ("CRETT"), M.C.L. § 207.501 *et seq*, permits and empowers the county board of each of Michigan's 83 counties to levy an additional excise tax of up to $0.75 for each $500.00, or fraction thereof, of the real property's assessed value on transactions in which real property located within that county is transferred, absent an applicable exemption.  The revenue generated by the CRETT remains with the county. The CRETT is imposed on "the person who is the seller or grantor."  *Id.* § 207.502.[3]

## IV.   HISTORY OF THIS ACTION

On November 10, 2011, Curtis Hertel, Jr., Register of Deeds of Ingham County, and Nancy Hutchins, Register of Deeds of Branch County ("Plaintiffs"), filed a Complaint on behalf of a putative class consisting of all 83 counties and their county representatives.  *See* Complaint, *Hertel v. Mortg. Elec. Recording Sys. Inc.*, Case No. 11-1214-NZ (Ingham Cnty. Ct. Nov. 10, 2011) ("*Hertel II*").  Plaintiffs' Complaint identified Fannie Mae as a "Defendant" and sought relief against Fannie Mae, the Bank Defendants, and other defendants.  Plaintiffs did not, however, serve Fannie Mae with the Complaint.  On February 27, 2012, FHFA filed a Motion to Intervene in Ingham Circuit Court, and shortly thereafter Fannie Mae and FHFA filed a Notice of Removal of this action in the Western District of Michigan.

Plaintiffs sought to remand this case to state court on March 28, 2012 and to dismiss Fannie Mae from this action.  *See* ECF No. 27.  On October 4, 2012, this Court dismissed Fannie Mae without prejudice because it had not been served within 91 days after issuance of the summons. Opinion at 3–8, ECF No. 49 (Oct. 4, 2012).  It also denied Plaintiffs' Motion to

---

[3]   The statute governing the state real estate transfer tax ("STRETT"), M.C.L. § 207.521 *et seq*, is not at issue in this case because Plaintiffs voluntarily dismissed their STRETT claim. *See* Pls' Voluntary Dismissal of Claims, ECF No. 70 (Nov. 20, 2012).

Remand because diversity jurisdiction existed notwithstanding Plaintiffs' fraudulent joinder of non-diverse defendants, *id.* at 8–21.

After Fannie Mae was dismissed from the case, the Enterprise Defendants moved to intervene as defendants, and the Court allowed their intervention on December 18, 2012. In so holding, the Court recognized the Enterprise Defendants' "substantial interest in ensuring the Court construes the exemption statutes to cover the entire process of their real estate transactions and to include their counter-parties." Order at 5, ECF No. 74. The Court denied the State of Michigan's motion to intervene because the STRETT was no longer at issue in the case. *Id.* at 8.

## V.     RELATED LITIGATION

*Hertel II* is the fourth in a series of cases that have been filed during the last two years implicating the Enterprise Defendants' statutory immunity from the Michigan Transfer Taxes.

First, on June 20, 2011, Oakland County, Michigan and Andrew E. Meisner, Oakland County's Treasurer, filed suit in the Eastern District of Michigan against Fannie Mae and Freddie Mac, alleging that they were required to pay Michigan's state and county real estate transfer tax for real estate transactions in Oakland County. *Oakland Cnty. v. Fannie Mae*, 276 F.R.D. 491, 494 (E.D. Mich. 2011). After granting FHFA's motion to intervene, *id.* at 499, the Eastern District of Michigan ultimately held that the Enterprise Defendants are not exempt from the STRETT and CRETT under the Exemption Statutes. *Oakland Cnty. v. FHFA*, 871 F. Supp. 2d 662 (E.D. Mich. 2012) ("*Oakland*"). The court authorized an immediate appeal, stating that "[t]here is substantial ground for difference of opinion as to that question" of whether the defendants are exempt from the state and county transfer taxes. *Id.* at 671. The Enterprise Defendants filed their opening brief with the Sixth Circuit on November 6, 2012, and the *Oakland* plaintiffs filed their opposition briefs in December 2012. The appeal will be fully briefed by January 18, 2013.

Second, two days after the *Oakland County* action was filed, *Hertel I* was filed in the Ingham County Circuit Court against the Enterprises and six other defendants, alleging that all of these defendants failed to pay the state and county real estate transfer tax in Ingham County. *Hertel I* at *1. Following removal to federal court, this Court granted Enterprise Defendants' motion for summary judgment on September 18, 2012, holding that they are exempt from the SRETT under the Exemption Statutes.[4] *Id.* at *8. Although not specifically addressed in the *Hertel I* decision, the State recognized at oral argument that the Exemption Statutes equally immunize *both parties* to the transaction. Hr'g. Tr., ECF No. 79 at 41, *Hertel v. Bank of Am., N.A.*, No. 1:11-757 (W.D. Mich. Feb. 9, 2012) ("[T]he state isn't contesting that if the Court accepts the entities' position, that even transactions where the entity is the transferee would be exempt.").

Finally, on November 10, 2011, Genesee County filed a putative class-action suit against the Enterprise Defendants making allegations identical to those made in *Oakland* and *Hertel I*. The Eastern District of Michigan ruled in Genesee County's favor for the reasons stated in its *Oakland* opinion.

<u>ARGUMENT</u>

**I.    LEGAL STANDARD FOR MOTION TO DISMISS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering such a motion, a court must accept all factual allegations in a complaint as true, but need not accept as true any legal conclusions. *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d

---

[4]    This Court did not rule on the CRETT because Mr. Hertel had been dismissed as a Plaintiff and the State Plaintiffs pursued only the STRETT claims.

- 7 -

239, 246 (6th Cir. 2012). Accordingly, a court may disregard threadbare recitals of a cause of action's elements or mere conclusory statements found in the complaint. *See Bennett v. Durham*, 683 F.3d 734, 737 (6th Cir. 2012).

## II. PLAINTIFFS' CLAIMS FAIL BECAUSE THE EXEMPTION STATUTES PROHIBIT TRANSFER TAXES ON ANY REAL ESTATE TRANSACTION TO WHICH THE ENTERPRISE DEFENDANTS ARE PARTY

In *Hertel I*, this Court properly recognized that Plaintiffs may not impose the Transfer Taxes directly on the Enterprise Defendants in light of their expansive, clearly worded statutory exemptions: "There is no possible reading of the [Exemption] [S]tatutes other than that Fannie Mae, Freddie Mac, and the FHFA are exempt from all state taxation, regardless of whether it is termed a recording or excise tax." *Hertel I* at *3.

Just as Plaintiffs may not levy the Transfer Taxes on the Enterprises *directly*, Plaintiffs may not do so *indirectly* by imposing such taxes on the Enterprises' counterparties. It is immaterial whether the Enterprises are not alleged to be the grantors, or whether the CRETT purportedly falls on the Bank Defendants as the grantors.[5] In any transfer involving the Enterprises as a party or real party in interest, the Exemptions Statutes apply regardless of whether the Enterprises, the Bank Defendants, or some other entity pays the tax as a mechanical matter. That is because the tax's "necessary effect" would be the same in each case: to tax the transactions and "to increase the cost" to the exempt entities, thereby constituting a tax that is preempted by federal law. *Laurens Fed. Savs. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517, 522 (1961). As the plain text of the Exemption Statutes demonstrates, and as longstanding Supreme Court precedent confirms, Congress intended to exempt the entire panoply of the

---

[5] To the extent Plaintiffs' causes of action against the Bank Defendants are based on transactions in which the Enterprises are grantors, *e.g.*, First. Am. Compl., Ex. 2, they are foreclosed by the Court's decision in *Hertel I* as well M.C.L. § 207.505(c).

Enterprise Defendants' mortgage-related activities from "*all* taxation," including real estate

transfers to and from the Enterprises.

A. **The Enterprise Defendants' Exemption from "All [State and Local] Taxation" Immunizes the Entirety of their Transactions from the Transfer Taxes**

The starting point for determining whether Plaintiffs may impose Transfer Taxes on the

Enterprise Defendants' real estate transactions is the plain language of the Exemption Statutes.

*See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). "When [a] statute's language is plain, the

sole function of the courts — at least where the disposition required by the text is not absurd —

is to enforce it according to its terms." *Dodd v. United States*, 545 U.S. 353, 359 (2005) (citation

omitted); *see Hager* at *4; *Hertel I at* *3. "If the intent of Congress is clear, that is the end of the

matter; for the court . . . must give effect to the unambiguously expressed intent of Congress."

*Norfolk & Western Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 128 (1991) (citation

omitted). "A fundamental canon of statutory construction is that, unless otherwise defined,

words will be interpreted as taking their ordinary, contemporary, common meaning." *United

States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005).

Here, the plain meaning of the Exemption Statutes is clear; indeed, their language is

"sweeping and unambiguous." *Hager* at *4; *see Hertel I* at *3-4. The Exemption Statutes are

materially identical, sharing expansive plain language and the same subject-verb-object

construction: Congress provided that the Enterprises and their Conservator "shall be exempt"

from "all" state and local taxation. 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2). "Shall"

unambiguously expresses Congress's intent that the exemption be mandatory. *See Miller v.

French*, 530 U.S. 327, 337 (2000). And "all" means *all*. It "is an inclusive adjective that does

not leave room for unmentioned exceptions." *Hertel I* at *3; *see also Norfolk & Western*, 499

U.S. at 129-30, 33 (statute exempting railways "from the antitrust laws and from *all other law*" covered common-law contractual obligations, and "the phrase 'all other law'" constituted a "clear statutory command" that "includes any obstacle imposed by law.").

Consistent with the plain meaning of "all taxation," an unbroken line of Supreme Court authority confirms that substantially identical statutory tax exemptions immunize entities from paying substantially identical excise taxes, *regardless of whether such taxes are imposed directly on the tax-exempt entities or indirectly on them through taxation of their counterparties*. Irrespective of who pays the Transfer Taxes, they are "obstacle[s] imposed by law," *Norfolk & Western*, 499 U.S. at 133, that would frustrate the purpose underlying the Enterprise Defendants' congressionally-mandated missions.

In *Federal Land Bank of New Orleans v. Crosland*, the Supreme Court held that a statute exempting Federal Land Banks ("FLBs") and their "income derived therefrom" from state and local taxation prohibited the State of Alabama from imposing a recordation tax on all mortgages issued by an FLB.  261 U.S. 374, 378-79 (1923).  In so holding, the Court rejected Alabama's argument that it could tax the FLB indirectly by conditioning the privilege of recording mortgages on the payment of a fee: "[Alabama] cannot use its control [of the registration system] as a means to impose a liability that it cannot impose directly."  *Id.*  Moreover, the Court expressly held that the FLB's tax immunity applied to all "mortgages" issued by it, rejecting Alabama's suggestion that the mortgage recordation tax could be imposed were it borne by the FLB's private borrower.  As the Court noted, it did not "make[] any difference" whether "the [FLB] may collect the money in advance from the borrower."  Nor was it material that "[t]he statute says that the [FLB] must pay the tax," because "whoever pays it it is a tax upon the mortgage," and the imposition of such a tax would be "forbidden by the law of the United

- 10 -

States." *Id.* at 378-79.

Similarly, in *Pittman v. Home Owners' Loan Corp.*, the Court held that Congress exempted the Home Owners' Loan Corporation ("HOLC") from a Maryland stamp tax. 308 U.S. 21 (1939). The exemption statute at issue in *Pittman* shared the same structure as those at issue here: it provided that the HOLC, "including" several enumerated items, "shall be exempt" from "all taxation . . . imposed . . . by any State, county, municipality, or local taxing authority," "except that any real property of the [HOLC] shall be subject to taxation to the same extent, according to its value, as other real property is taxed." *Id.* at 32-33 n.3 (citing 12 U.S.C. § 1463). Whereas the tax in *Crosland* was imposed directly on the exempt entity, the tax in *Pittman* was "silent as to the one who shall pay the tax." *Id.* The Court found this distinction immaterial and reaffirmed *Crosland*, holding that Maryland could not indirectly tax HOLCs by imposing "condition[s] attached to [mortgage] registration" as "a practical method of collection." *Id.* Accordingly, the state was prohibited from imposing the tax, even if the HOLC's non-exempt borrower paid the tax in its entirety.

Likewise, in *Laurens Federal Savings & Loan Association v. South Carolina Tax Commission*, the Supreme Court faced a materially identical statute exempting a Federal Home Loan Bank ("FHLB") "including its franchise, its capital, reserves, and surplus, its advances, and its income," from "all taxation now or hereafter imposed by . . . any State [or county]," except for taxes on its real property.[6] 365 U.S. at 519 (citing 12 U.S.C. § 1433). Unlike *Pittman* and *Crosland*, the excise tax in *Laurens* was imposed on the non-exempt borrower. Once again,

---

[6] FHLBs are housing-related government-sponsored enterprises like Fannie Mae and Freddie Mac, and Congress copied their exemption nearly verbatim in the Enterprises' federal statutory charters. *See* 12 U.S.C. §§ 1452(e), 1723a(c)(2).

- 11 -

however, the Court rejected the state's argument, reaffirmed *Pittman*, and again held that this broad and materially identical exemption prevented a state from collecting a documentary-stamp tax on any transfer to or from the FHLB. *Id*. Emphasizing the breadth of the tax exemptions, the Court held that states could not evade their effect by collecting a tax from the exempt entities' counterparties. "Regardless of who pays" the taxes on a transaction, its "necessary effect" would be the same: to tax the transactions would "increase the cost" to the exempt entities, thereby constituting a tax barred by federal law. *Id.* at 522. "[T]his tax, whether nominally imposed on [an FHLB] or on [its counterparty], is bound to increase the cost of loans to home owners and thus contravene the basic purpose of Congress in insulating these [transactions] from state taxation." *Id.*; *see Pittman*, 308 U.S. at 30-31.

Consistent with the Supreme Court's decisions, other courts have held that an entity's immunity prohibits taxation of its transactions or counterparties. For example, in *State ex rel. Seaboard Air Line Railroad Co. v. Green*, the Florida Supreme Court relied on *Crosland*, *Laurens*, and *Pittman* to conclude that a private party was not subject to Florida's real property transfer tax when it purchased property from the General Services Administration, which was similarly immune from state taxation. 173 So. 2d 129, 131 (Fla. 1965). As the court held, "even if the [private party] pays the tax in question here, and not the exempt grantor, it would be a tax on the deeds, and this is not permitted." *Id.* Similarly, in *State of Kansas ex rel. Todd v. United States*, the Tenth Circuit held that the Federal Crop Insurance Corporation's ("FCIC") statute, which includes a materially similar statutory exemption from "all [state and local] taxation," 7 U.S.C. § 1511, preempted the State of Kansas from taxing private crop insurance contracts reinsured by the FCIC. 995 F.2d 1505 (10th Cir. 1993). Noting that "[w]hat Kansas cannot do directly, it is, in essence, trying to do indirectly," the Tenth Circuit concluded that it was

- 12 -

reasonable to interpret the statute as barring such indirect taxation. *Todd*, 995 F.2d at 1510.

As these cases demonstrate, the Enterprise Defendants' broad exemption from "all [state and local] taxation" prohibits Plaintiffs from imposing the Transfer Taxes on the Bank Defendants here.

**B. The Enumerated Items in the Exemption Statutes' "Including" Clauses Demonstrate that Congress Intended to Immunize the Enterprise Defendants from the "Entire Process" of Investing in Mortgages**

Congress further emphasized the breadth of the Exemption Statutes by immunizing the Enterprise Defendants, "including" their franchise, capital, reserves, income, and other enumerated items. 12 U.S.C. §§ 1723a(c)(2), 1452(e). The "including" clauses reflect the expansive scope of the exemptions; they do not embody an exhaustive list. "[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941); *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).

All three Exemption Statutes include specific terms that "illustrat[e]" the "general principle" that Congress intended to immunize the entirety of the Enterprise Defendants' mortgage-related activities and transactions. First, each statute specifically exempts the respective entity's "franchises" from all taxation, which refers to all privileges of doing business in a state. 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2).[7] In addition, Fannie Mae's statute specifically provides that Fannie Mae's "mortgages or other security holdings" are exempt from all taxation. 12 U.S.C. § 1723a(c)(2). Finally, Freddie Mac's statute expressly exempts all of

---

[7] *See, e.g.*, *Murdock v. Ward*, 178 U.S. 239, 147 (1900); *Interstate Oil Pipe Line Co. v. Stone*, 337 U.S. 662, 677 n.14 (1949) (Reid, J., dissenting) ("we perceive no difference . . . between franchise, privilege, and excise taxes, insofar as they are exacted for the privilege of doing or the doing of interstate business, [and] we have treated them as identical").

- 13 -

Freddie Mac's "activities" from state and local taxation. 12 U.S.C. § 1452(e); *see also Hager* at

*4 ("[B]ecause the statute instead exempts Fannie Mae itself, neither its property nor its

*activities* can be taxed.") (emphasis added); *cf. Oakland*, 871 F. Supp. 2d. at 670 (noting that the

Michigan Transfer Taxes fell on all of the Enterprises Defendants' "*activities*: the transfer of

property.") (emphasis added).

Read together, these terms must "be construed as covering the entire process" of funding

and owning mortgages — including foreclosing on the collateral property when necessary.

*Pittman*, 308 U.S. at 31. Once again, the Court's longstanding decisions are instructive. In

*Pittman*, for instance, the Court confronted a materially similar statute exempting the HOLC

from "all taxation," "including" the HOLC's "loans." The Court broadly construed "loans" to

cover "the entire process of lending, the debts which result therefrom and the mortgages given to

the [HOLC] as security." *Id.* at 31. The Court recognized that such a construction was necessary

in order "to carry out the manifest purpose of the broad exemption" because "[b]oth the

mortgage and its recordation were indispensable elements in the lending operations authorized

by Congress." *Id.* at 31-32. Because the exemption prohibited all taxes on its mortgages, and

because "the [Maryland] tax [was] imposed upon the mortgage and [was] graded according to

the amount of the loan," the state was prohibited from imposing the tax on any party to the

mortgage. *Id.*

Similarly, the Court in *Laurens* adopted a broad construction of FHLB's "advances" in

the "including" clause of its exemption statute. As in *Pittman*, the Court sought to effectuate the

FHLB Act's "overall policy of making these mortgage funds available at low cost to home

owners." *Laurens*, 365 U.S. at 522. Accordingly, "regardless of who [paid] the documentary

stamp taxes," the "necessary effect" of imposing the tax on the FHLB or a private party would be

the same. In both cases, the tax would "contravene the basic purpose of Congress in insulating these advances from state taxation" by " increas[ing] the cost of obtaining the advances of funds from the Home Loan Bank to be used in making loans to home owners." *Id.*

Finally, in *Carson v. Roane-Anderson Co.*, 342 U.S. 232, 234 (1952), the Court generously construed "activities" in the "including" clause of the Atomic Energy Commission's ("AEC") statutory tax exemption, *i.e.*, the Court construed the same exact phrase in Freddie Mac's Exemption Statute. Recognizing that Congress intended to give "activities" a "broad sweep," the Court concluded that "the inference is strong that 'activities' means *all* authorized methods of performing the governmental function." *Id.* at 235-36 (emphasis added). Accordingly, the Court held that the AEC's statutory exemption immunized its affiliated private contractors from a Tennessee sales tax. *Id.* at 236. A tax exemption for all of Freddie Mac's "activities" likewise must cover all of Freddie Mac's authorized acts, including foreclosing on properties in which it has a security interest and transferring those same properties as part of its activities in the interstate secondary mortgage market.

As *Laurens*, *Pittman*, and *Carson* instruct, a cramped reading of the items enumerated in the Exemption Statutes' "including" clause would be inappropriate. Rather, these terms should be read expansively against the backdrop of Enterprises' important public mission to provide a secondary market for residential mortgages and to promote access to mortgage credit for low- and moderate-income families. *See* 12 U.S.C. § 1716; Pub. L. 91-351, 84 Stat. 451, § 301 (1970) (codified as amended as 12 U.S.C. § 1451 note); *see also* 12 U.S.C. § 4501. In *Rust v. Johnson*, the Ninth Circuit explained that "Congress intended [Fannie Mae] to operate as a reserve market for mortgage investors and to thereby facilitate the distribution of investment capital available for home mortgage financing." 597 F.2d 174, 177 (9th Cir. 1979). Similarly, in *Paslowski v.*

*Standard Mortgage Corp.*, the court noted that although Freddie Mac had been privatized, it "still has at its core a public purpose established by Congress, which is to provide stability in, and to provide ongoing assistance to, a secondary market for home mortgages." 129 F. Supp. 2d 793, 802 (W.D. Pa. 2000). "To assist [the Enterprises] in the performance of [their] secondary market functions," Congress granted the Enterprises "special rates and privileges," including their "immunity from state taxation (except for taxes on real estate)." *Rust*, 597 F.2d. at 177; *see also Bismarck*, 314 U.S. at 99-100 (noting that Congress has the power to statutorily protect from taxation entities that it has created).

Transferring real estate in foreclosure is an "indispensable element" of the Enterprises' statutorily authorized business of investing in mortgages, *see, e.g.*, 12 U.S.C. § 1716, and it is a public function that Congress surely sought to protect and promote through the Exemption Statutes. Accordingly, the entirety of the Enterprises' transfers is exempt from the Transfer Taxes.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint fails to state a claim against the Bank Defendants and should be dismissed with prejudice.

Dated: January 17, 2013

Respectfully submitted,

By:   /s/ Ann Marie Uetz
FOLEY & LARDNER LLP
ANN MARIE UETZ (P48922)
*Attorney for Federal National Mortgage*
*Association, Intervenor-Defendant*
500 Woodward Avenue, Ste. 2700
Detroit, MI  48226-3489
Phone:  (313) 234-7100
Facsimile:  (313) 234-2800
auetz@foley.com

By:   /s/ Michael J. Ciatti
KING & SPALDING LLP
Michael J. Ciatti (Va. Bar No. 40607)
*Attorney for Federal Home Loan Mortgage*
*Corporation, Intervenor-Defendant*
1700 Pennsylvania Avenue, NW
Washington, DC  20006
Phone:  (202) 661-7828
Facsimile:  (202) 626-3737
mciatti@kslaw.com

By:   /s/ Michael A.F. Johnson
ARNOLD & PORTER LLP
Michael A.F. Johnson (D.C. Bar # 460879)
Asim Varma (D.C. Bar # 426364)
Howard N. Cayne (D.C. Bar # 331306)
*Attorneys for Federal Housing Finance Agency*
*as Conservator of Fannie Mae and Freddie*
*Mac, and Intervenor-Defendant*
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  202.942.5000
Facsimile:  202.942.5999

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2013 I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system which will send notification of such filing to the

following:

**William E. Maxwell, Jr. (P35846)**
Wm. Maxwell & Associates
P.O. Box 701968
Plymouth, MI 48170
Phone: (734) 737-0758
Email: wmaxwell@aol.com

**Daniel P. Marsh (P43504)**
101 W. Big Beaver Rd. Suite 1400
Troy, MI 48084
Phone: (248) 687-1600
Fax: (248) 687-1001
Email: dan@danielpmarsh.com

By: _____/s/ Michael A.F. Johnson_____
ARNOLD & PORTER LLP
Michael A.F. Johnson (D.C. Bar # 460879)
*Attorney for Federal Housing Finance Agency*
*as Conservator of Fannie Mae and Freddie*
*Mac, and Intervenor-Defendant*
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: 202.942.5000
Facsimile: 202.942.5999
Michael.Johnson@aporter.com