# Exhibit J-2

J-2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Judy Rogers and Charles Johnson,

      Plaintiffs,

v.

RBC Mortgage Co. f/k/a Prism Mortgage
Co, Chase Home Finance, LLC, Mortgage
Electronic Registration Systems, Inc.,
Fannie Mae, IBM Lender Business
Process Services, and Orlans Associates,
P.C.,

      Defendants.
_____/

Case No. 11-11167

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND [21] AND GRANTING DEFENDANT ORLANS'S MOTION TO DISMISS [14]**

    Plaintiffs Judy Rogers and Charles Johnson filed a complaint in state court against Defendants Chase Home Finance, LLC, Mortgage Electronic Registration Systems, Inc. (MERS), Fannie Mae, IBM Lender Business Process Service (Lender), and RBC Mortgage Co., f/k/a Prism Mortgage Co. Plaintiffs alleged various violations of state and federal law based upon those defendants' attempt to foreclose on Plaintiffs' mortgage. Chase removed the case to this Court on the basis of diversity and federal question jurisdiction. Plaintiffs then filed a first amended complaint, adding Defendant Orlans Associates, P.C.

    Now before the Court is Plaintiffs' motion to remand and Orlans's motion to dismiss. Because the Court finds that it has jurisdiction over Plaintiffs' federal claims based upon federal question jurisdiction and has supplemental jurisdiction over Plaintiffs' state claims, the Court DENIES Plaintiffs' motion to remand. Because the Court finds that Plaintiffs have

not pleaded actionable claims under the Fair Debt Collection Practices Act or what Plaintiffs have titled "Unfair and Deceptive Business Acts and Practices and [False and/or Fraudulently Procured Documents," the Court GRANTS Orlans's motion to dismiss.

I. Facts

The facts necessary to resolve these two motions are straightforward: Plaintiffs executed a mortgage on their home and later failed to pay the mortgage; then they allegedly requested information from the various defendants, questioning the mortgage's chain of title; they allege that they did not timely receive the information they requested; Orlans then sent a notice that foreclosure proceedings would begin; and after that, Plaintiffs filed suit to stop the foreclosure and keep their home.

Plaintiffs reside at and co-own a condo at 4273 Elden Place, Waterford, Michigan 48329. (Am. Compl., Ex. A, Rogers Aff. ¶ 1.) On April 7, 2004, Plaintiffs refinanced the mortgage on the condo for $166,000.00 with RBC. (*Id.* ¶2.) (Orlans's Mot. to Dismiss, Ex. 2, Mortgage.) The mortgage was later assigned to MERS. (Rogers Aff. ¶ 5.) On November 1, 2004, RBC transferred Plaintiffs' account to Chase. (*Id.* ¶ 7.)

On July 1, 2010, Chase transferred the servicing of the mortgage to Lender. (*Id.* ¶ 8) At that time, Plaintiffs allege that they were not only current on their mortgage payments, but that they were also two payments ahead of schedule. (*Id.*) They state therefore that they did not owe a mortgage payment until September 1, 2010. (*Id.*)

Sometime later, Lender asked Plaintiffs to complete an IRS W-9 form. (*Id.* ¶ 9.) Plaintiff Rogers thought that this request was unusual. (*Id.*) She states that she noticed, in the request letter, that Lender identified itself as a loan servicer, and at the bottom of the letter, Lender stated that it was a debt collector. (*Id.*)

2

On July 11, 2010, Plaintiff Rogers states that she sent Lender "a written request for evidence of authorization and assignment." (*Id.* ¶ 10.)

On July 26, 2010, Plaintiff Rogers states that she received Lender's response, in which it stated that "[y]ou need to fill out and return the [] W-9 [form] to the correspondence address." (*Id.* ¶ 11.)

Plaintiff Rogers then states that she sent a series of Qualified Written Requests (QWRs) and letters to Lender, requesting "evidence, stipulation, validation and the name of the Trust (securitized)." (*Id.* ¶12.) She alleges that she used multiple formats and statements in her QWRs and requests. (*Id.*) And she alleges that she mailed the letter by certified mail, return receipt requested, on the following dates: July 11, August 1, September 8, October 16, October 25, November 7, November 15, and January 17, 2011. (*Id.*)

Plaintiff Rogers also states that she sent QWRs and requests for evidence to Chase, again, by certified mail and return receipt requested, on June 24, July 13, and August 14, 2010. (*Id.* ¶ 13.)

But Plaintiffs allege that they did not receive "confirmation or stipulation or evidence." (*Id.* ¶ 15.) They state that, since "Chase [was] out of the picture, [they] stopped paying the First Mortgage, but continued to pay [their] Fifth Third Bank Home Equity Line of Credit." (*Id.*)

Plaintiff Rogers states that Lender eventually responded with a letter titled "Receipt of Inquiry." (*Id.* ¶ 16.) Plaintiff Rogers alleges that this form letter did not identify or reference that Lender received a QWR or request. Plaintiff then states that she never received any of the information she requested. (*Id.*)

3

On August 1, 2010, after writing to three credit bureaus, Plaintiff Rogers indicates that an additional mortgage account, dated 2004, appeared on her credit report. (*Id.* ¶19.) She alleges that this mortgage was not on her previous October 4, 2009 report. (*Id.*) She states that she "continued correspondence with the credit bureaus, asking for an investigation and disputing the duplicate items." (*Id.*) The correspondence with the credit bureaus, Plaintiff relates, resulted in the bureaus placing a fraud alert on Plaintiffs' accounts. (*Id.*)

Eventually, Plaintiff acknowledges that she received various documents from Chase and Lender. (*Id.* ¶20.)

Plaintiff Rogers states: "I am informed and believe the assignments propounded are defective or fraudulent thus no chain of title exists and no transfer of interests occurred. When the loan was assigned or sold to each entity, there were no Assignments of the Mortgage to any entity at the time of the sale. Therefore, "True Sales" or transfer could not occur since the mortgage and note were separated." (*Id.* ¶ 30) (emphasis removed.)

Plaintiffs also allege that the notice of the sheriff's sale that was to take place on March 15, 2010, was not posted on their door until February 21, 2010. (*Id.* ¶ 32.)

On March 13, 2011, Plaintiffs filed suit against Defendants RBC, Chase, MERS, Fannie Mae, and IBM in Michigan state court. Against those defendants, Plaintiffs asserted seven causes of action:

- 1. Violation of Michigan statutes:
  - the Michigan Foreclosure by Advertisement statute: Michigan Compiled Laws 600.3201 *et seq.*;

4

- Michigan Mortgage Lending Practices statute: Michigan Compiled Laws 445.1601-1613;
- Michigan Consumer Mortgage Protection Act: Michigan Compiled Laws 445.1631-1644;
- Michigan Credit Reform Act: Michigan Compiled Laws 446.1851-1863;
- Michigan's Consumer Finance Services Act: Michigan Compiled Laws 487.2051-2072;
- 2. Quiet title: Michigan Compiled Law 600.2932, unclean hands, and declaratory judgment;
- 3. Claim and delivery;
- 4. Injunctive relief and request for temporary restraining order;
- 5. Violation of the Fair Debt Collection Practices Act: 15 U.S.C. § 1692 *et seq.*;
- 6. Violation of Real Estate Settlement and Procedures Act and Dodd-Frank Amendments: 12 U.S.C. § 2601, *et seq.*; and
- 7. Intentional or negligent infliction of emotional distress.

On March 22, 2011, Chase removed the case to this Court. (Dkt. 1.) Chase removed on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because Plaintiffs alleged violations of the FDCPA and RESPA, federal statutes. (Dkt. 1, Notice of Removal, ¶ 6.) Chase states that the Court has supplemental jurisdiction over Plaintiffs' remaining state-based claims pursuant to 28 U.S.C. § 1367. (*Id.*) At the time of removal, Chase also alleged that the Court has jurisdiction based upon the parties' complete diversity. (*Id.* ¶ 7.)

Three days later, on March 25, 2011, Plaintiffs filed an amended complaint adding Orlans as a defendant and asserting two claims against it: violation of the FDCPA and "Unfair and Deceptive Business Acts and Practices and [False and/or Fraudulently Procured Documents]."

Plaintiffs state that Orlans is a law firm that "specializes in foreclosure actions and related creditor representation." (Am. Compl. at 5.) Plaintiffs also state that Orlans has members of its staff that are MERS employees and members of its staff that are Lender employees. (*Id.*)

In Count V, Violation of the Fair Debt Collective Practices Act, Plaintiffs allege that "Defendants[] individually and/or collectively were debt collectors. Their documentation so indicates." (Am. Compl. ¶ 118.) Plaintiffs also state that Defendants are "debt buyers" as defined by the FDCPA. (*Id.* ¶ 121.) Plaintiffs maintain therefore that the FDCPA regulates Defendants' conduct. (*Id.* ¶ 118.)

Plaintiffs allege that Defendants violated the FDCPA by:

- threatening foreclosure;
- taking steps towards foreclosing the property;
- using fraudulent techniques and procedures to collect their debts "as they failed to prove any right to collect that debt after being challenged and may have fraudulently asserted an interest in the mortgage and/or note in an unfair practice to collect the debt;"
- alleging loan balances that were intentionally or negligently incorrect and failing to justify their bases for the loan balances upon Plaintiffs' requests;

6

- intentionally refusing to demonstrate that they were entitled to collect the debt and that they were the owner of the mortgage and note, even after Plaintiffs made the requests;
- making false or material misrepresentations, or implications and engaging in oppressive conduct, and unfair practices, in an attempt to collect a debt."

(*Id.* ¶¶ 119-124.)

Against Orlans, Plaintiffs state that it is a debt collector as defined by 15 U.S.C. § 1692a(6). (*Id.* ¶ 125.) Plaintiffs state that Orlans is "vicariously liable for the misdeeds of their clients" as well as "liable for [its] own misconduct when [it] failed to conduct due diligence in reviewing the file." (*Id.* ¶¶ 126, 127.) Plaintiffs argue that "Orlans is strictly liable without regardless [sic] intent or actual knowledge or willfulness or knowledge of the clients [sic] errors and misdeeds." (*Id.* ¶ 128.)

In Count VIII, Unfair and Deceptive Business Acts and Practices and [False and/or Fraudulently Procured Documents], Plaintiffs allege that all the defendants, including Orlans,

> intentionally [] produced and filed documents with the registrar of deeds contrary to the [statutes listed in the complaint], and each of them, as part of their business practices, knowingly procured or offered improperly prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the Michigan Codes and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded in Michigan or intended to use the same to foreclose on Plaintiffs [sic] home.

(*Id.* ¶ 153.) Defendants' business practices, Plaintiffs allege, "were unlawful, deceptive, misleading and fraudulent and violate[d] Federal law "as alleged [in the complaint] as well as the unfair and deceptive acts and practices statute of Michigan." (*Id.* ¶ 154.)

7

### III. Analysis

#### A. The Court has jurisdiction over Plaintiffs' claims

##### 1. The Court has original jurisdiction over Plaintiffs' federal law claims

Plaintiffs argue that the Court does not have jurisdiction over their claims because Orlans destroys the diversity in the suit–upon which Defendant Chase relied to remove the case. Defendant Chase argues that Plaintiffs filed the amended complaint and added Orlans to destroy diversity jurisdiction. Neither of these arguments matters. As Defendant Chase and the other defendants who joined Chase's response point out, the Court has federal question jurisdiction because Plaintiffs have alleged violations of federal statutes on the face of their complaint. The Court has supplemental jurisdiction over the remaining claims because the facts related to those claims are the same facts related to the federal claims–facts related to the execution, transfer, default upon, and enforcement of Plaintiffs' mortgage.

At the time of removal, a defendant bears the burden to show that federal jurisdiction exists. *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1063 (6th Cir. 2008). "It is the general rule that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430-31 (1999) (citing 28 U.S.C. § 1441(a)). "To remove a case as one falling within federal-question jurisdiction, the federal question must appear on the face of a properly pleaded complaint[.]" *Id.* "The language of [§ 1441(a)] obviously permits the removal of a case that contains only claims that 'arise under' federal law. That is because a federal statute explicitly grants the federal courts 'original jurisdiction of all civil

8

actions arising under the Constitution, laws, or treaties of the United States.'" *Wisconsin Dept. of Corr. v. Schacht,* 542 U.S. 381, 386 (1998) (citing 28 U.S.C. § 1331).

Here, Defendants have met their burden. They have shown, in their notice of removal, that Plaintiffs have sued under two federal statutes, the FDCPA and RESPA. (See Compl., Counts V, VI.) Plaintiffs therefore have "subjected [themselves] to the possibility that [Defendants] would remove the case to the federal courts." *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 164 (1997). The Court therefore has original jurisdiction over Plaintiffs' federal claim.

### 2. The Court has supplemental jurisdiction over Plaintiffs' state law claims

The Court also has jurisdiction over Plaintiffs' state law claims. The supplemental jurisdiction statute "provides, 'in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the Untied States Constitution.'" *Int'l Coll.,* 522 U.S. at 164-65 (citing 28 U.S.C. § 1367). "Th[is] provision applies with equal force to cases removed to federal court as to cases initially field there; a removed case is necessarily one "of which the district courts . . . have original jurisdiction." *Id.* (citations omitted).

The supplemental jurisdiction "case or controversy" requirement is met "when [the] state and federal law claims arise from the same contract, dispute, or transaction." *Packard v. Farmers Inc. Co. of Columbus, Inc.,* 10-3023, 2011 WL 1885981, at *3 (6th Cir. May 19, 2011) (citations omitted).

9

Here, all of Plaintiffs' state claims–violations of various Michigan foreclosure laws, quiet title, intentional or negligent infliction of emotional distress, etc.–are related to the same set of facts: the execution, transfer, alleged default, and enforcement of Plaintiffs' mortgage on their property. The Court therefore has supplemental jurisdiction over Plaintiffs' state law claims as well.

### B. Defendant Orlans's motion to dismiss

Orlans moves the Court to dismiss Plaintiffs' causes of action against it, thereby dismissing Orlans from this case. (Orlans's Mot. to Dismiss; Pls.' Resp.) Orlans argues that Plaintiffs have not sufficiently pleaded that it is debt collector, as required by the FDCPA. Orlans also argues that Plaintiffs' allegations under their Unfair and Deceptive Business Act and Practices claims are wholly conclusory and do not contain any factual allegations–therefore failing to state a claim and requiring dismissal. Orlans alternatively has moved for summary judgment on these claims.

#### 1. Rule 12(b)(6) standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. See *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). See also *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d