UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CURTIS HERTEL**, the Register of Deeds and
Representative of **INGHAM COUNTY**; and
**NANCY HUTCHINS**, the Register of Deeds
and Representative of **BRANCH COUNTY**,
both as Class Representatives of all 83
counties in the State of Michigan.
       Plaintiffs,

**v.**

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., MERSCORP, INC., JEANNE
KIVI, ELLEN COON, MARSHALL ISAACS,
BANK OF AMERICA N.A., JP MORGAN CHASE & CO,
CHASE HOME MORTGAGE CORPORATION f/k/a
CHASE HOME FINANCE, WELLS FARGO BANK, N.A.,
CITIMORTGAGE INC., eTITLE AGENCY INC,
1ST CHOICE TITLE SERVICES INC, ATTORNEYS
TITLE AGENCY LLC, f/k/a WARRANTY TITLE
AGENCY LLC, , and **JOHN DOE** as any other authorized
signers for **MERS** or **MERSCORP, INC.,** and Defendants
**JOHN DOE** Corporations I - MMM,
       Defendants.
_____/

Case No. 1:12-CV-174
HON. ROBERT HOLMES BELL

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S REQUEST FOR EVIDENTIARY HEARING FOR THE
DETERMINATION OF THE DISPUTED ISSUES OF ENTITLEMENT AND/OR THE
AMOUNT OF THE ATTORNEY'S FEES AND COSTS, AND THE REASONABLENESS
OF SUCH COSTS AND FEES,  TO WHICH THE MOVING PARTY CLAIMS IT IS
ENTITLED TO UNDER FCRP 11 [66] AND OBJECTION TO DEFENDANTS
SUBMISSSION OF LEGAL FEES [82]**

Pursuant to this Court's order of February 6, 2013 [82] granting a hearing on Defendant

Marshall Isaac's Motion for Sanctions under FRCP 11,  and upon review of Defendant Marshall

Isaac's motion for sanctions against Plaintiffs, and the significant amount of filings made with

this court entered and filed on February 18, 2013 at 2:24 PM EST (and continuing through

February 19, 2013) for a hearing on February 20, 2013, Plaintiffs hereby respectfully requests

1

that the Court schedule an evidentiary hearing for the determination in this case on the failure to meet the requirements of the Court's order, clarify factual and legal misstatements made in support of their motion, and on the disputed issue(s) of entitlement and/or the amount of the attorney's fees and costs, and the reasonableness of such costs and fees, to which the moving party claims it is entitled.

Witnesses are anticipated to be called and include, but are not limited to, Brian Parker, Stephan Dibert, Marshall Isaacs, Gerald V. Padilla, the billing attorney, the law firm billing clerk and the law firm employee that accounts for the payment of fees and costs.

The court seeks a briefing on whether the claims against Marshall Isaacs in the complaint were supported by law. They are (see argument below and previously filed). The court seeks information about the relationship of Daniel Marsh and William Maxwell to Home Defense League, PLC. The only relationship is one case identified as Hertel I (case No. 1:11-cv-757). The Courts seeks information about the allegations by Isaacs that HDL has filed twelve suits against Isaacs or his firm, Orlans Associates, as defendants. This is absolutely not true. Contrary to those allegations made by Isaacs, the only case ever filed by HDL was Hertel I. The case at bar was not filed by HDL, but is being prosecuted by Daniel Marsh and William Maxwell as co-counsel for plaintiffs. The Court seeks information about a relationship, if any, of Daniel Marsh and William Maxwell to MFI-Miami, called a consultant of Plaintiffs' attorneys. MFI-Miami has never been hired nor paid as a consultant in any case initiated by Daniel Marsh and William Maxwell. MFI-Miami may have been previously hired by a few clients to perform qualified written requests and conduct securitization reviews on documents. There is not now, and never has been, a legal or contractual relationship with MFI-Miami with Daniel Marsh or William Maxwell.

Also, the case identified by Isaacs as a defendant in the Rogers case (No 2-11-cv-11167-NGE-RSW) alleging violation of the Federal Debt Collections Practices Act (FDCPA) involving attorney Marsh as co-counsel is worth bringing to the Court's attention. Attorney Marsh withdrew from that case on July 15, 2011. Furthermore, the 6th Circuit Court of Appeals has since changed its position on attorney violations under the FDCPA. In fact, that case involves the very firm at issue in this matter, Associates. The 6th Circuit Court of Appeals, held the following;

> *Glazer v. Chase Home Finance LLC*, No. 10-3416, 2013 WL 141699, at *5-9 (6th Cir. Jan. 14, 2013). In *Glazer* we held that "mortgage foreclosure is debt collection under the Act. Lawyers who meet the general definition of a 'debt collector' must comply with the FDCPA when engaged in a mortgage foreclosure. And a lawyer can satisfy that definition if his principal business purpose is mortgage foreclosure or if he 'regularly' performs this function." Id. at *9. In light of *Glazer*, we are left only to determine if the Mellentines' complaint is sufficient to allege that Orlans is a debt collector under the FDCPA. See *Andrew Mellentine, et al. v. Ameriquest Mortgage Company, et al.* No. 11-2467 at 5 (6th Cir. Feb. 14, 2013)

The 6th Circuit of Appeals has affirmed the position of Maxwell and Marsh in those cases where Isaacs was named as a defendant for violations of the FDCPA. In the cases listed and relied upon by Isaacs, there are no findings of harassment and finding based on law or fact that those cases were brought for any other improper purpose.

The Court is seeking briefings on whether the present suit against Isaacs was brought for the improper purpose of harassment, and more information about the previous suits brought by Attorneys Marsh, Maxwell, and/or Brian Parker as members of the Home Defense League, against Isaacs and/or Orlans Associates. Attorney Parker is not now and never has been counsel for plaintiffs in this litigation. Most importantly, the court is seeking "information regarding whether any of these prior suits involved the same or substantially similar claims against Isaacs and information regarding the nature of the dismissals in those cases." A brief review of the complaint filed herein reveals they are not.

The cases filed against Orlans Associates and Isaacs concern fraudulent signatures on publically filed documents ("robo-signing") and violations of the FDCPA. Some of the allegations in the other cases were made against Isaacs as an attorney for Orlans Associates. Such is not the case in this matter. Orlans Associates was never sued in this case and Isaacs was not sued as an attorney for Orlans Associates, contrary to the allegations in Defendant Isaac's motion.

Defendant Isaacs bears the burden to show some relationship between any past filings and the filing of this action for collection of transfer taxes. No such showing has been made and therefore there can be no Rule 11 sanctions.

This action to collect taxes due was initiated by two governmental entities, Ingham County and Branch County, by their statutorily appointed under contract, civil prosecutors who were hired as county civil counsel to prosecute claims for transfer taxes pursuant to MCL 49.71. The Complaint in this matter was filed against Mr. Isaacs was in his position as Vice President and Secretary of MERS who, as a corporate officer, signed/executed documents allegedly transferring property interests in the plaintiff counties without the true value of the property being placed on the documents and without paying the requisite transfer taxes due. The complaint states no other allegations against Defendant Isaacs. Isaacs' motion specifically and incorrectly states and/or infers he is being sued as a lawyer representing his client, and infers that his law firm has been sued as well. The lawsuit regards his duties as a corporate officer for MERS with regard to the specific duties under CRETTA. Mr. Isaacs is clearly identified in Paragraph 14 of the complaint as a person who holds himself out as a Vice President or Secretary of MERS signing documents and deeds as a MERS contractor and corporate officer through a

corporate resolution of MERS. Mr. Isaacs's status as an attorney has nothing to do with the allegations stated in the complaint.

In Paragraph 40 of the complaint, the duties of Mr. Isaacs as a signer of documents for MERS and the alleged breach of those duties are again set out. Under MCL 207.507, persons who <u>make</u>, <u>execute</u>, <u>issue</u> or <u>deliver</u> documents requiring payments of tax have specifically called out duties under the act. It states that:

> " The tax imposed by this Act (CRETTA) shall be evidenced by the affixing of a documentary stamp or stamps to every instrument subject to the tax imposed by this act by the person making, executing, issuing or delivering such document."

Clearly the act specifically states and requires that persons executing, which generally includes signing, documents for filing at the register of deeds specifically affix stamps to every instrument subject to the act prior to filing. It is for the alleged breach of this duty for which Mr. Isaacs was included as a defendant in this litigation and not because of any attorney client relationship he has been unable to establish in this case, which is not even relevant to the allegations against him.

The Michigan legislature set out two types of duties under MCL 207.501, *et seq.* First that grantors or sellers of real property are the person responsible for the payment of transfer taxes for filing such transfer documents. Second, the legislature required that any person making, executing, issuing or delivering such document shall affix and/or pay the tax imposed by the act. "Person" is defined in the statute at MCL 207.501(b):

(b) "Person" means every natural person, association or corporation. Whenever used in any penalty clause the term "person", as applied to associations, means the partners or members thereof, and as applied to corporations, the officers thereof.

Plaintiffs note that the legislature included officers of corporations with regard to the penalty section of the act. The penalty section does not include any criminal charges for

5

corporate officers for non-payment of taxes or failing to affix documentary stamps to property transfer documents. HOWEVER, it does set out criminal penalties for corporate officers, such a Mr. Isaacs for

> **§ 207.512. Unlawful acts; penalty for violations**
>
> (1) It shall be unlawful for any person to:
>
> (a) Fraudulently cut, tear or remove from a document any documentary stamp.
>
> (b) Fraudulently affix to any document upon which tax is imposed by this act any documentary stamp which has been cut, torn or removed from any other written instrument upon which tax is imposed by this act, or any documentary stamp of insufficient value or any forged or counterfeited stamp or any impression of any forged or counterfeited stamp, die, plate or other article.
>
> (c) Wilfully remove or alter the cancellation marks of any documentary stamp or restore any such documentary stamp with intent to use or cause the same to be used after it has already been used, or knowingly buy, sell, offer for sale or give away any such altered or restored stamp to any person for use, or knowingly use the same.
>
> (d) Knowingly or wilfully prepare, keep, sell, offer for sale or have in his possession any forged or counterfeited documentary stamps.
>
> (e) Knowingly or wilfully issue a false or fraudulent affidavit.
>
> (2) Any person violating any of the provisions of this section is guilty of a misdemeanor and shall be fined not more than $500.00 and costs of prosecution, or imprisoned for not more than 1 year, or both.

The Michigan legislature clearly wanted to criminally discourage corporate officers, who were under duties for making, executing, issuing or delivering such documents from fraudulently or willfully misusing document stamps or filing false affidavits. Other duties associated with making, executing, issuing or delivering such documents are however, not criminally chargeable. The legislature's different treatment for those making, executing, issuing or delivering transfer documents for recording clearly shows legislative intent that such persons have separate duties called out in the statute. Here, only the specific acts set out in 207.512 could be charged criminally.

**GOVERNMENTAL IMMUNITY**

Plaintiff counties and their prosecutors are immune from any liability for bringing suit to enforce the statutory requirements for filing of documents evidencing transfer of real property interests. The governmental immunity statute, MCL 691.1407 provides, in pertinent part:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.
>
> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.
>
> (3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.
>
> * * *
>
> (5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.
>
> * * *
>
> (7) As used in this section:
>
> (a) "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Thus, MCL 691.1407(1) broadly exempts government agencies, their employees and contractors performing governmental functions from tort liability if the agency is engaged in the discharge of a governmental function. A "governmental function" is an activity expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law. MCL 691.1401(f); *Maskery v Univ of Mich. Bd of Regents*, 468 Mich. 609, 613-614; 664 N.W.2d 165 (2003). This definition is to be broadly applied. *Id.* It only requires that there be some constitutional, statutory, or other legal basis for the activity in which the agency was engaged. *Richardson v Jackson Co*, 432 Mich. 377, 381; 443 N.W.2d 105 (1989); *Ross v Consumers Power Co (On Rehearing)*, 420 Mich. 567, 620; 363 N.W.2d 641 (1984). The determination whether an activity involves a governmental function must focus on the general activity, not the specific conduct involved at the time of the tort. *Tate v City of Grand Rapids*, 256 Mich.App. 656, 661; 671 N.W.2d 84 (2003). Here clearly the attorneys prosecuting the action for unpaid transfer taxes is a governmental function since only such entities can collect and enforce taxes of any sort.

Any claims against the Ingham County or Branch County Register of Deeds as the named representatives of the county commissioners is in effect a case against the highest and controlling body of each county, and their activities in hiring and requesting Attorneys Marsh and Maxwell to file litigation to recover unpaid transfer taxes involves the exercise or discharge of those agencies' governmental functions of investigating and prosecuting allegations of civil and/or criminal conduct in the payment or non-payment of transfer taxes under CRETTA. Accordingly, those agencies are immune under MCL 691.1407(1). County Representatives Hertel and Hutchins, as the elective executive officials of their respective levels of government, are each entitled to absolute immunity because their alleged conduct relates to the investigation or

prosecution of Isaacs under CRETTA, and thus is within the scope of their executive authority. MCL 691.1407(5); *Bischoff v Calhoun Co Prosecutor*, 173 Mich.App. 802, 806; 434 N.W.2d 249 (1988). See also, *Grahovac v Munising Twp*, 263 Mich.App. 589, 595; 689 N.W.2d 498 (2004).

Based on Michigan's common law, governmental immunity applies even to intentional torts:
governmental immunity does apply to intentional torts when the conduct at issue meets the following criteria: (1) the challenged acts were undertaken during the course of employment and the employees were acting, or reasonably believed that they were acting, within the scope of their authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, as opposed to ministerial. *Odom v Wayne Co,* 482 Mich. 459, 461; 760 N.W. 2d 217 (2008), citing *Ross v Consumers Power Co. (On Rehearing), 420 Mich.* 567; 363 N.W.2d 641 (1984).

As such, Mr. Isaacs, as a maker and/or executor of documents transferring interests in real property has specific duties under MCL 207.501, *et seq.* The civil prosecution of the alleged failure to perform those duties as alleged in plaintiffs' complaint does not give rise to any attorney client relationships and is firmly based on duties specifically set forth in CRETTA. Based on the current record before the court and the statutory duties of both the Plaintiffs and Mr. Isaacs, there is not and could never be a showing of a clear and present vendetta of harassment based on the filing of this lawsuit.  Defendant Isaacs motion for rule 11 sanctions should be denied; and Plaintiffs should be granted attorney fees and costs in responding to Defendant's motion.

Also, the Court ordered that the additional materials requested to be filed by 12:00 on Monday. The Court was very clear in its order that **"If any party wishes to submit additional briefing in accordance with this order, such briefing *shall* be filed no later than 12:00 PM on Monday, February 18, 2013." (emphasis added).** The electronic filing indicates the materials were filed on Monday, February 18, 2013 at **2:24 PM EST**., over 2 hours late from the time set by the court as a prerequisite to submit materials for acceptance. The Defendants have

9

failed to meet the requirements of the Court's order. The failure to follow the courts clearly stated order should not result in the materials being accepted or considered by this Court. Plaintiff's attorney's object to the submission not in compliance with the court's order and respectfully request the materials not be considered and to be stricken from the record.

The connections the Court requested have not been established as a matter of fact and law. There are numerous factual misstatements made as to the relationships at issue. Defendant has failed to meet the requirements of the Courts order in that no connection has been made as to the "whether any of these prior suits involved the same or substantially similar claims against Isaacs and information regarding the nature of the dismissals in those cases." None of the other cases dealt with the collection of unpaid real property transfer taxes under CRETTA.

The requested evidentiary hearing is expected to take 3-4 hours as it will include testimony presented by witnesses and at which the witnesses will be subject to cross-examination, or will have been subject to cross-examination at some earlier point if they gave their testimony out of court.

**WHEREFORE**, Plaintiff's counsel requests, if the court is inclined to grant any Rule 11 sanctions, enter a Notice for Evidentiary Hearing setting the date and time the court determines and to allow discovery prior to the hearing on the factual and legal issues presented.

RESPECTFULLY SUBMITTED:

DANIEL P. MARSH, PLLC

By: __/s/Daniel P. Marsh__
Daniel P. Marsh P45304
February 19, 2013        Attorney for Plaintiffs
101 W. Big Beaver Rd, Suite 1400
Troy, Michigan 48084 (248)-687-1600
dan@danielpmarsh.com

10

## CERTIFICATE OF SERVICE

      I hereby certify that on February 19, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all attorneys of record.

                DANIEL P. MARSH, PLLC

                By:   /s/Daniel P. Marsh
                Daniel P. Marsh P45304
February 19, 2013     Attorney for Plaintiffs
                101 W. Big Beaver Rd, Suite 1400
                Troy, Michigan 48084
                 (248)-687-1600
                dan@danielpmarsh.com