UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CURTIS HERTEL**, the Register of Deeds and
Representative of **INGHAM COUNTY**; and
**NANCY HUTCHINS**, the Register of Deeds
and Representative of **BRANCH COUNTY**,
both as Class Representatives of all 83
counties in the State of Michigan.

                     Plaintiffs,

**v.**

**MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., MERSCORP, INC., JEANNE
KIVI, ELLEN COON, MARSHALL ISAACS,
BANK OF AMERICA N.A., JP MORGAN CHASE & CO,
CHASE HOME MORTGAGE CORPORATION f/k/a
CHASE HOME FINANCE, WELLS FARGO BANK, N.A.,
CITIMORTGAGE INC., eTITLE AGENCY INC,
1ST CHOICE TITLE SERVICES INC, ATTORNEYS
TITLE AGENCY LLC, f/k/a WARRANTY TITLE
AGENCY LLC, ,** and **JOHN DOE** as any other authorized
signers for **MERS** or **MERSCORP, INC.,** and Defendants
**JOHN DOE** Corporations I - MMM,

                     Defendants.

Case No. 1:12-CV-174
HON. ROBERT HOLMES BELL

**ORAL ARGUMENT REQUESTED**

_____/

## PLAINTIFFS' REPLY TO DEFENDANT WELLS FARGO'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

     NOW COME Plaintiff Counties, by and through their attorneys, Daniel P. Marsh and

William E. Maxwell, Jr., and for their Response to Defendant Wells Fargo's Motion to Dismiss

states that Defendant is not entitled to a dismissal under FRCP 12(b)(6). Plaintiffs HERTEL and

HUTCHINS are the designated representatives of the plaintiff counties INGHAM and

BRANCH. The fact that they are listed as a Register of Deeds for each county is in deference to

their elected positions in each county and is not intended to denote them as an individual

plaintiff. Plaintiff counties bring these claims for Defendants' failure to comply with the County

Real Estate Transfer Tax Act ("CRETTA") resulting in direct and proximate damages to

Plaintiffs and their constituents. The alleged failures by Defendants include filing documents in which the declared value of the property transferred was not in accordance with the statutory requirements and which caused the Plaintiff Counties to be deprived of the full payment of transfer taxes due for the transfer of interests in real property owned and sold/transferred by Defendants over the last 15 years.

Defendant is plainly wrong about it's characterization of the private right of action for collection of Michigan transfer tax statutes. The Statute does NOT provide any mechanism within the statute for collection enforcement. Defendant points to limited criminal penalties for fraudulent use of previously canceled or counterfeited documentary tax stamps filing, and for knowingly filing false or fraudulent affidavits.[1] The CRETTA statute is entirely void of any enforcement mechanisms for a person's failure to declare the actual value the property being transferred or failure to pay the proper amount of transfer taxes. Black letter law in Michigan requires the court to imply a private right of action to enforce these requirements of the CRETTA statutes. To do otherwise negates the spirit and intent of the Michigan Legislature in enacting the law to provide for partial funding the counties general budgetary needs.

The Complaint filed by Plaintiffs in the Ingham Circuit Court is entirely appropriate and valid under Michigan law and court rules applicable to it when it was filed. The Complaint identifies the jurisdiction of the circuit court over the subject matter and the parties. The duties owed by the Defendants under the CRETTA statute is clearly set out, as are the areas of breaches of the statutory duties by Defendants resulting in the loss of tax revenues the lawsuit was brought to recover. The factual basis of the breaches of statutory duties are clearly referred to with multiple documentary examples of Defendants, including Wells Fargo's failure(s) adhere to the

---

[1] MCL 207.511(1)

CRETTA requirements in declaring a transferred properties value and then paying the appropriate transfer tax due on the fully declared value. Any attempt to point the finger at Fannie Mae and Freddie Mac as the focus of this litigation is misplaced. Defendant WELLS's actions stand on there own as violations of the CRETTA statute.

Despite Wells Fargo's offhanded comments of a lack of specific facts and injury from Defendants' non-payment of taxes, Plaintiffs' Complaint clearly states the Plaintiff counties have been deprived of the transfer tax monies, monetary damages as a result of Defendants failure to adhere to the statutory requirements of MCL207 501 *et seq.*

Defendant Wells Fargo also claims the Plaintiffs must "address or explain away" Wells Fargo's role as a loan servicer when recording property transfer documents. Ingham and Branch Counties have no reason or need to address or explain away Wells Fargo's role in some property mortgage or foreclosure scheme. The only relevant inquiry based on this court's prior ruling in Hertel I is whether Wells Fargo is a seller or grantor under MCL 207.502, and whether, under the factual background of each filing, the exemptions available under CRETTA make the transfer or instrument exempt from the act. Wells Fargo's choice to become an owner of properties as a loan servicer or otherwise is irrelevant under CRETTA. As an owner who subsequently becomes a seller or grantor of property is subject to and must comply with the requirements of CRETTA, so must Defendant Wells Fargo.

WHEREFORE, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied and that Defendant be required to file an Answer to the Complaint.

Respectfully submitted,

By: /s/ William E. Maxwell, Jr. P35846
Attorney for Plaintiffs
PO Box 701968
Plymouth, MI 48170

(734) 323-9760 Direct line

Dated: February 14, 2013

**BRIEF IN SUPPORT**

**I. Introduction**

Through this litigation, Plaintiffs seek recovery of *ad valorem* real property transfer taxes owed by Defendants who acted individually and/or in concert to wrongfully claim exemptions from the payment of the payment of real property transfer taxes to the County of Ingham and County of Branch. Plaintiff counties seek the required tax to be paid on the transfer or sale of property that was not paid nor paid in full; and seeks the interest and penalties for the failure to pay the tax as required by Michigan law and statute.

Plaintiff has named a number of financial institutions in this case: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), MERSCORP, INC., BANK OF AMERICA N.A. (BOA), JP MORGAN CHASE & CO (JP MORGAN), CHASE HOME MORTGAGE CORPORATION f/k/a CHASE HOME FINANCE, WELLS FARGO BANK (WELLS), N.A., and CITIMORTGAGE INC.

The removal of this case has stalled the amendment of the case to add other counties and numerous Defendants, including state banks. As indicated in the Complaint, there is a Real Property Ad Valorem Transfer Tax imposed by Michigan statute under MCL 207.501, et seq., that shall be collected from the person or entity transferring the property unless the transfer tax is exempt under Michigan tax statute. The reason for any exemption (not just the exemption section) from the tax is to be stated on the face of the deed or instrument seeking to transfer ownership of real property. The Defendants are identified as inappropriately claiming transfer

tax exemptions under MCL 207.505 resulting in deprivation of funds that would have gone into the Ingham and Branch Counties' general funds by Defendants claiming such exemptions.

The Defendants have all been specifically identified in the complaint for 1) failure to state the specific reasons exemptions were claimed, 2) failure to list the true value of property on the instrument, and 3) recording assignments and mortgage transfers, and failing to pay the appropriate fees and taxes on all such transfers of interests in real property. Defendant Wells Fargo, without filing an answer to the Complaint, asks for dismissal under FRCP 12(B)(6) for numerous reasons, none of which can withstand scrutiny.

## II. COUNTERSTATEMENT OF CASE

Plaintiff seeks recovery of real property transfer taxes owed for the reason that Defendants acted individually and/or in concert to wrongfully declare less than the market value of property being transferred for consideration, and also improperly claimed and stated reasons for claiming exemptions from the payment of real property transfer taxes to the County of Ingham and County of Branch. Plaintiffs seek the required tax to be paid on the transfer or sale of property that was not paid nor paid in full and seeks the interest and penalties for the failure to pay the tax as required by Michigan law and statute.

As indicated in the introduction of the complaint, there is a Real Property Ad Valorem Transfer Tax imposed in Michigan statute under MCL 207.501, et seq. MCL 207.521, et seq., that shall be collected from the person or entity transferring the property unless the transfer tax is exempt under Michigan tax statute. The reason for any exemption from the tax is required to be stated on the face of the deed seeking to transfer ownership of the real property. The Defendants are identified in the complaint as inappropriately claiming transfer tax exemptions under MCL

207.505 & MCL 207.526 resulting in deprivation of funds that would have gone into the Ingham County's general fund and the State of Michigan's school aid fund by claiming such exemptions.

As indicated in the "General Allegations" of the complaint, the Defendants are notified of their duty to pay the transfer taxes, notified of their breach of duty to pay those taxes by taking Michigan statutory exemptions from payment those taxes the Defendants are not entitled to, and the resulting damages from Defendants breach of the duty to pay the transfer taxes resulting in a loss of revenue to the County and depleting the state's General and School aid fund.[2]

The prayer for relief demands equitable and monetary relief. The court is requested to declare the activities of Defendants as violative of the applicable Michigan statutes, Judgment in Plaintiff's favor of monetary damages for each deed or document transferring a property interest without payment of the proper transfer taxes and fees, and Judgment in Plaintiff's favor for monetary damages for the penalties and interest for failure to pay the transfer taxes and fees.

Plaintiff seeks in the prayer for relief a Judgment awarding the Plaintiff his costs and expenses, including reasonable attorney's fees, expert fees, and other costs and disbursements.

Defendant's owe the penalties and interest to Plaintiff, including costs, expenses, reasonable attorney's fees, expert fees, and other costs and disbursements for each deed or documents transferring a property interest and presented for filing with the Ingham County Register of Deeds without the proper transfer taxes and fees being paid.

The court should note in background portion of  Defendant's Brief at page 6, Wells Fargo makes an utterly false allegation that "Importantly had the underlying lenders serviced their own

---

[2] To make up for the shortfall in revenue the failure to pay the tax inflicts, lowered budgetary adjustments are required to balance spending from these funds with the available revenues. As a result, governmental services are restrained. To the extent that taxes are increased, or not lowered, to make up for the budgetary adjustment, a concomitant reduction of disposable income and governmental services impacts Michigan taxpayers. This reduction of disposable income results in reduced consumption that is a net negative for economic growth affecting county taxpayers in there respective counties.

loans and brought the foreclosures on their own behalf, rather than engaging Wells Fargo to do so, title would have vested post foreclosure through the sheriff's deed, <u>the recording of which is plainly not taxable event</u>."

Defendant is attempting to confuse the court because of the existence of an exemption to the SRETTA portion of taxes in a foreclosure. Under CRETTA, ALL foreclosures are required to pay the county taxes.

### III. ARGUMENT

### A. LEGAL STANDARDS

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the party bringing the claim must plead factual allegations that "raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 964-65, 167 L.Ed.2d 929 (2007) (internal citations and quotation marks omitted). Dismissal is not proper if the party bringing the claim does plead factual allegations that if proven would raise a right to relief above the speculative level. See *Id.*

In their 12(b)(6) Motion to Dismiss, Defendants Plaintiffs' Complaint claiming it "fails to plead any factual basis demonstrating how or why Defendants allegedly claimed improper exemptions". (Defendant's Brief page 2) A close reading of the Complaint, as well as Defendants' motion proves that the Complaint is factually based and raises serious statutory violations and public filings of non-complying real property transfer documents. Defendants have the burden of proving their activities do not give rise to any breach of statutory duties to Plaintiffs and the counties rights to properly filed property interest transfer documents and the payment of full transfer taxes for the property transferred. *DLX, Inc. v Kentucky*, 381 F.3d 511, 516 (6th Cir.

2004); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## B. WELLS FARGO'S ARGUMENTS AND RESPONSES

## A. REGISTER OF DEEDS AUTHORIZATION

**1.    Hertel and Hutchins have authority to sue as executives.**

Defendants have misread and are wrong about the identity of the Plaintiffs herein.

Defendants made the same frivolous allegations in the responses filed to Plaintiffs' Motion

to Remand. Counsel for Defendants continues to show lack of knowledge or open disregard of

the Michigan law and statute in the naming and identity of parties.

**§ 600.2051. Capacity to sue or be sued; assumed name; partnerships; unincorporated**

**voluntary associations; corporations; state; governmental units; officers**

 (4) Actions to which this state or any governmental unit, including but not limited to a public, municipal, quasi-municipal, or governmental corporation, unincorporated board, public body, or political subdivision is a party may be brought by or against such party in its own name, or in the official capacity of an officer authorized to sue or be sued in its behalf. . . .

Clearly, CURTIS HERTEL and NANCY HUTCHINS were duly appointed by their

respective governmental unit to "sue on its behalf." If the court is inclined to accept the Joint

Defendants arguments that HERTEL and HUTCHINS have appeared personally as an

individual, Plaintiffs request that this court enter an order allowing the Complaint to be amended

to fully address this misunderstanding. The only true Plaintiffs prosecuting this action against the

Defendants herein are the counties of Ingham and Branch. Complaint identifies them as such at

paragraphs 2 and 3 of the Complain filed herein.

1.    For all times relevant hereto, Plaintiff **INGHAM COUNTY'S** designated representative

by its Board of Commissioners is **CURTIS HERTEL,** a resident of INGHAM COUNTY and its

Register of Deeds.

2.     For all times relevant hereto, Plaintiff **BRANCH COUNTY'S** designated representative by its Board of Commissioners is **NANCY HUTCHINS,** a resident of BRANCH COUNTY and its Register of Deeds.

### B.     PLAINTIFFS ARE ENTITLED TO A RIGHT OF ACTION TO ENFORCE COMPLIANCE WITH CRETTA

As Plaintiffs have explained in earlier motions filed herein, the County Real Estate Transfer Tax Act (hereinafter "**CRETTA**") set forth specific duties for all the Defendants who were originally sued in this litigation. As the maker or issuer of the document to be filed, one would necessarily need to know the value of the property and the circumstances around the transfer of interest being recorded in order to first draft the document and thereafter select possible applicable exemptions. This information would also be required for the person or company drafting, endorsing and delivering the document to have prepared the proper value of transfer tax due and owing so it could be affixed at the time of delivery and filing.

The CRETTA statute at issue herein clearly sets out the right and manner of collection of the transfer tax, but is silent on the right of action to enforce compliance with those requirements as of CRETTA where the true value of property transferred is misstated and/or the tax is not paid in full. The statute clearly requires the county treasurer to collect monies paid for taxes due and instructs both the treasurers, as well as the makers, endorsers, issuers and deliverers how to determine the amount of taxes due on filing documents evidencing the sale or transfer of all or any real property interest. However the CRETTA statute fails to provide any remedy, criminal or otherwise for the intentional or negligent failure to declare the true value of a property being transferred and pay the ad valorem transfer taxes on such transfer. A private right of action should be inferred under our fact scenario and the statutory scheme at issue herein. Defendant makes the illusory argument that CRETTA provides for criminal sanctions, but that is not true

with regard to the non-payment of the transfer taxes due or the placement of the true value of the

property interest being transferred in the document(s) being recorded. A close review of the

CRETTA sections providing for criminal sanctions HAVE NOTHING WHATSOEVER TO DO

WITH THE NON-PAYMENT OF TAXES OR THE SELECTION OF EXEMPTIONS UNDER

THE ACT. The actions carrying criminal penalties in the act deal only with fraudulent affidavits

and the improper use or ownership of altered and counterfeit transfer stamps.

**§ 207.512. Unlawful acts; penalty for violations**
(1) It shall be unlawful for any person to:
(a) Fraudulently cut, tear or remove from a document any documentary stamp.
(b) Fraudulently affix to any document upon which tax is imposed by this act any documentary stamp which has been cut, torn or removed from any other written instrument upon which tax is imposed by this act, or any documentary stamp of insufficient value or any forged or counterfeited stamp or any impression of any forged or counterfeited stamp, die, plate or other article.
(c) Wilfully remove or alter the cancellation marks of any documentary stamp or restore any such documentary stamp with intent to use or cause the same to be used after it has already been used, or knowingly buy, sell, offer for sale or give away any such altered or restored stamp to any person for use, or knowingly use the same.
(d) Knowingly or wilfully prepare, keep, sell, offer for sale or have in his possession any forged or counterfeited documentary stamps.
(e) Knowingly or wilfully issue a false or fraudulent affidavit.
(2) Any person violating any of the provisions of this section is guilty of a misdemeanor and shall be fined not more than $500.00 and costs of prosecution, or imprisoned for not more than 1 year, or both.

      Clearly, defendants did not affix any stamps because of their improper use of exemptions

under the CRETT Act to which they were not entitled. MCL 207.512 provides NO CRIMINAL

LIABILITY for the improper claim of exemptions to transfer taxes or the failure to declare the

proper value of the value of the property being transferred. Section 2 of the MCL 207.512

specifically limits the application of criminal penalties to "Any person violating any of the

provisions of this section . . . ". Other sections of CRETTA are specifically excluded by this

language, including failure to pay the taxes due, selecting possible exemption to the taxes or

failing to place the total value of the real property on the transfer document; and therefore are not

included as criminal violations under the legislative scheme of enforcement.

Defendant cites *Lane v Kindercare Learning Ctrs, Inc*, 231 Mich.App. 689, 695-696; 588 N.W.2d 715 (1998) as illustrative. However the *Lane* court found that the Act in question, MCL 722.111 *et seq*., did not expressly allow a private cause of action and one was not implied because "the act adequately provides for enforcement of its provisions through proceedings instituted by the Attorney General" and "also provides criminal penalties for the violation of its provisions." The CRETT Act has no provision for Attorney General proceedings or criminal enforcement proceedings for non-payment of transfer taxes or the improper claim of exemptions under the Act. *Lane,* supra at 695-696, however does recognize that a party may maintain an action for statutory violation and such county right of action can be inferred when the statute provides no adequate means of enforcement of its provisions.

A close reading CRETTA reveals a total lack of enforcement provisions within the Acts. The act states that the "Documentary stamps shall be purchased only in the county in which the property is located."[3] County Treasurer SHALL "Collect" and handle the taxes appropriately; but neither has any special enforcement language built into the Acts. As such, it is right and proper to infer a county right of action to collect the unpaid and over due taxes owed by Defendants as alleged in the Complaint filed herein.

Defendant points the Court to the Department of Treasury's right and responsibilities under MCL 205.1(1) with regard to the collection of taxes. However Defendant's focus is misplaced. The Michigan legislature was well aware of the provision of MCL 205, *et seq.,* but choose to specifically allow **<u>only</u>** the County Treasurer to collect the tax imposed under the CRETTA. Under MCL 207.507, the language used by the legislature that "Documentary stamps

---

[3] MCL 207.507

shall be purchased only in the county in which the property is located", is instructive.
Furthermore, the statutory scheme in CRETTA requires that the money collected under 207.507
for the sale of documentary stamps "shall be deposited in the treasury of the county where the
tax is collected to the credit of the general fund." Under MCL 207.509.

 Defendant alludes to an inherent mechanism in the statutory scheme to **recover payment**
by rejecting documents for filing. However, CRETTA, at Sec. 511 requires the person filing the
document, NOT THE REGISTER OF DEEDS, to determine and draft the transfer document
such that:

 "If the instrument of transfer is not subject to the tax, the instrument shall state on its face
the reason for the exemption. Any instrument accepted for recording **which is not in accordance
with this act** shall not affect the validity of such recording as to notice." (Emphasis added)

 The Michigan legislature obviously anticipated that some devious person or persons
would draft transfer documents that did not claim the market value of the transferred property,
and did not purchase the proper amount of transfer tax for the filing of the transferring
documents. The Michigan legislature clearly did not want the notice portions of our real property
laws to be held up or affected by "Any instrument accepted for recording which is not in
accordance with this act . . . ". The duties to draft and submit proper transfer documents under
the CRETT Act do not lie with the County or it's employees, but with the grantor, " . . . the party
responsible for their purchase (transfer stamps) according to subsection (2) of section 2."[4] If
duties were otherwise, challenges by the Register of Deeds to statements of the grantor on the
documents claiming exemption for any of the numerous reasons listed in 207.505 could hold up
a filing for months if not years. Such requirements or "proofs" are clearly set forth in 205.511.
"If the instrument is not subject to the tax, the instrument shall state on its face the reason for the

---

[4] MCL 207.511(a)

exemption." This is the duty of the grantor/drafter. Once any such statement is placed on the face

of the document, whether the statement is true or not, the register of deeds must accept the

document(s) for filing. (see attached Attorney General Opinion regarding refusal of filings and

requirements of Michigan law)[5]

OAG, 1999-2000, No 7067, p 158 (November 29, 2000), which considered the nature of the
office of county register of deeds, stated in part as follows:
Const 1963, art 7, ¬ß 4, provides for the office of county register of deeds "whose duties and
powers shall be provided by law." The powers and duties assigned to this office are ministerial,
not discretionary, in nature. *Youngblood v US,* 141 F2d 912, 913 (CA 6, 1944). The county
register of deeds must accept for filing or recording all deeds or other instruments affecting title
to real or personal property for which the law provides as long as (i) the instruments satisfy the
legal requirement for form and (ii) the requisite filing or recording fees are paid. *Van Husan v
Heames,* 96 Mich 504, [508-509]; 56 NW 22 (1893). [See also 1 OAG, 1955, No 2065, p 576,
578 (November 1, 1955).]

A review of the Michigan statute stating the requirements for recording with a Michigan

register of deeds reveals that Defendant's imagined mechanism to recover payment by rejection

of filings is in violation of MCL 565.201.[6] Section 1 of the requirements makes no mention of

compliance with other statutes, claiming exemptions to transfer taxes, or paying the appropriate

amount of transfer tax when filing a document with the register of deeds. Quite the opposite,

section 5 of the requirements states that:

"(5)    An instrument that complies with the provisions of this act and any other act relating to
the recording of instruments shall not be rejected for recording because of the content of the
instrument."

The registers of deeds in Michigan counties, contrary to defendant's allegations, are not allowed

to "reject recording because of the content of the instrument." Section 5 clearly includes the

requirements of MCL 207.501 *et seq.* Contrary to Defendants position, rejection of a properly

formed and drafted instrument must be accepted and recorded by all county registers of deeds if

the specific requirements of 565.201(1) have been met. The fact that some person or persons

---

[5] Exh. 1 – OAG Opinion regarding acceptance and rejection of mortgage documents
[6] Exh. 2 - MCL 565.201

have elected to not properly declare the value of the property and pay the appropriate transfer taxes on the transfer of the property on documents presented for public filing is not a reason to reject a filing under MCL 565.201(5). The collection mechanism of rejection, as put forth by Defendants, is not allowed by Michigan law and should not be considered by this Honorable Court.

Contrary to Defendant's inherently false allegation that Michigan Department of Treasury is the agency to collect taxes, Plaintiffs, Ingham and Branch County, are the ONLY entity legislatively assigned as collector, owner and administrator of the transfer tax under CRETTA. Based on the language and operation described by the legislative scheme of CRETTA, only the individual counties have the right to initiate civil litigation for the failure of Defendants to state the market value of the real property transfers on documents publically filed and to collect unpaid real estate transfer taxes under CRETTA. The right to initiate such litigation to force payment of the appropriate amount of transfer taxes should and must be inferred based on the specific lack of enforcement mechanisms within CRETTA. Clearly, the legislature did not call for and CRETTA does not allow the Department of Treasury to step into this County taxing scheme to collect taxes for property located wholly within the County, despite what Defendants would have this Court believe. Inferring a private right of action herein is right and proper under Michigan law and the clear intent of the Michigan legislature. To hold otherwise would be to eliminate the counties right to force a person transferring real property to declare the actual value of the property being transferred and then to collect the real property transfer taxes due under the legislative pronouncements in CRETTA. The right to collect without the right to enforce in a government taxing scheme is no right at all. In the application of such a scheme, the public would be free to thumb their proverbial noses at the counties attempting to

collect the statutory taxes, and the Michigan legislature who enacted the taxing scheme. Defendants herein have done exactly that, and now argue that this Honorable Court should continue to give them the opportunity to do so. This should not be the case, and this court should declare that the counties have a right to enforce the CRETTA taxing scheme through court actions such as this one.

      **(C)    The Complaint is factually deficient and lacks specific factual allegations against WELLS FARGO.**

Wells Fargo challenges Plaintiff's Complaint as generalized assertions and conclusory allegations that Defendants violated the transfer tax statute.[7] By way of summary, Defendant WELLS claim the Complaint fails to state a cause of action and otherwise fails to notify the cause of action filed against them. In light of the Complaint filed herein, this is an incredulous argument. Michigan law requires the complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend [.]" MCR 2.111(B)(1) ; see also *Iron Co. v. Sundberg, Carlson & Assoc., Inc.,* 222 Mich.App. 120, 124, 564 N.W.2d 78 (1997). "Each allegation of a pleading must be clear, concise, and direct." MCR 2.111(A)(1).  A complaint must provide reasonable notice to opposing parties. MCR 2.111(B)(1); *Jean v. Hall,* 364 Mich. 434, 111 N.W.2d 111 (1961); *Scott v. Cleveland,* 360 Mich. 322, 103 N.W.2d 631 (1960).

      This rule is designed to avoid two opposite, but equivalent, evils. At one extreme lies the straightjacket of ancient forms of action. Courts would summarily dismiss suits when plaintiffs could not fit the facts into these abstract conceptual packages. At the other extreme there lies ambiguous and uninformative pleading. Leaving a defendant to guess upon what grounds plaintiff believes recovery is justified violates basic notions of fair play and substantial justice. Extreme formalism and extreme ambiguity interfere equivalently with the ability of the judicial system to resolve a dispute on the merits. The former leads to dismissal of potentially meritorious claims while the latter undermines a defendant's opportunity to present a defense.

---

[7] Wells Fargo Brief in Support page 14

*Jean and Scott*, supra. Neither is acceptable. *Dacon v. Transue*, 441 Mich. 315, 329; 490 N.W.2d 369 (Mich. 1992).

In this case, plaintiff alleges that the Defendants, in concert with their agents, failed to file appropriate and statutorily compliant transfer documents pay the transfer tax required under Michigan statute by taking exemptions from the transfer tax to which they are not entitled.

Defendant WELLS is fully aware of the allegations against it. In addition, Plaintiff has provided the court and Defendant with numerous new filings at the registers of deeds for Plaintiffs attached to the response to Joint Defendants' Brief in Support. These filings and the methodologies used by Defendants is fully discussed in the Brief.

Defendant WELLS was the entity filing the transfer documents attached to the complaint filed herein and to the documents attached to the Joint Defendants' Response Brief filed herein by Plaintiffs. Wells should be clearly aware of the filings they have made and the position taken by Plaintiff's. WELLS is merely refusing to acknowledge the alleged wrongdoing demonstrated in the complaint filed herein and the further filing provided by Plaintiffs'. Defendant WELLS is fully aware of Plaintiff's theories and has been given further specific examples (exhibits to Plaintiffs' Response to Joint Defendants' Motion to Dismiss) of when and how they failed to comply with CRETTA, for which they have been sued.

The duties under statute CRETT and SRETT require any person or entity *making, executing, issuing or delivering* a document recording a sale or transfer of interest in land, who is entitled to claim any exemptions under MCL 207.505 and 207.526 must remit payment of specific fees and transfer taxes chargeable to the grantor directly to the County Register of Deeds at the time the recording is made pursuant to MCL 600.2567; MCL 207.501 - 207.513; MCL 207.522 - 207.537. (italics added) The duty to pay is at the time of presentation of the instrument pursuant to MCL 207.511, or within 15 days of delivery of the instrument transferring the

ownership or interest, pursuant to MCL 207.523(3) by the person or entity making, executing, issuing or delivering a document recording a sale or transfer of interest in land. Defendant's are each "persons or entity's making, executing, issuing or delivering a document recording a sale or transfer of interest in land". Defendant's failed to do so by way of examples provided herein.

As indicated in the examples provided and in hundreds, if not thousands of filed deeds, Defendant WELLS, in concert with there agents and other Defendants, prepared and filed the deeds or instruments of conveyance of real property or any interest therein, for consideration, and claimed exemptions from state and county real estate transfer taxes.

As the arguments provided in response to the Joint Defendants' Motion to Dismiss, along with instruments attached thereto which Defendant WELLS has been served with, it is clear that None of the Sheriff's deed filings made by Defendants qualify for exemptions based on the failure of statutory requirement that "the instrument shall state on its face the reason for the exemption" as required under MCL 207.511(a). As such Defendants' Motion to Dismiss should be denied on this basis alone.

Defendant WELLS also failed to state on the face of the instruments seeking to transfer the property the total value of the real property being transferred as required by statute by not attaching an affidavit to the written instrument declaring the total value of the real property being transferred pursuant to MCL 207.504 and MCL 207.525.

Apparently when a Complaint is filed and served on Defendant WELLS that does not use entitlements within the pleadings, confusion reigns. The Complaint clearly states that Defendant has statutory duties that were violated based on the CRETT and SRETT statutes. Specific sections of the statute are cited as violated by Defendant, and that the violations created damages

based on the non-payment of real property taxes. The complaint is viable under either Michigan or federal standards and defendants should be required to file an answer.

**D. Equitable Estoppel and Laches are Equitable Principles not available to** Defendants

Defendants cannot rely upon the equitable defenses of Estoppel and laches since they do not come to the table with clean hands. Plaintiffs' allegations of misrepresentation and failure to comply with the statutory dictates of CRETTA as alleged in the complaint and shown in the instrument filings as exhibits filed herein will not allow Defendants claims. Even if such claims were available, factual analysis and a record of actions on all parties is necessary to determine such claims.

Defendant WELLS, and the other Defendants argue that Plaintiff is guilty of laches. This is argument is clearly dependent upon numerous and obvious questions of fact, and is not an appropriate motion under FRCP 12(B)(6). Laches is an affirmative defense primarily based on circumstances that render it inequitable to grant relief to a dilatory plaintiff. *Yankee Springs Twp v Fox*, 264 Mich.App. 604, 611; 692 N.W.2d 728 (2004). Laches applies when there has been both an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich.App. 230, 252; 704 N.W.2d 117 (2005). For laches to apply, the defendant must prove a lack of due diligence on the part of the plaintiff which is a question of fact. *Gallagher v Keefe*, 232 Mich.App. 363, 369–370; 591 N.W.2d 297 (1998).

Defendants have not established the basic elements of laches. Moreover, while Defendants argue that they will be prejudiced if they have to pay tax monies they should have paid initially based on their own improper and what appear to be fraudulent actions; in order to support a defense of laches, Defendants are required to show harm arising from plaintiff's *delay* in

18

pursuing their claims. Defendants have made no such showing and not even filed an answer to the complaint alleging such a defense. Under our circumstances, even if Plaintiffs were guilty of laches, which they are not, Defendant have not made the factual showing necessary to credibly make this portion of their motion; and as such it should be summarily denied.

Defendants also claim that equitable estoppel bars Plaintiffs' claims. Again since estoppel is a fact based on equitable defense, it cannot be merely thrown into a FRCP 12(B)(6) motion without a factual record upon which a determination can be made.  "Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank,* 237 Mich.App. 109, 140-141; 602 N.W.2d 390 (1999). Equitable estoppel may apply "where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Id.* at 141. The only persons prejudiced in this litigation are the Plaintiffs. Ingham and Branch are merely asking for what they should have gotten from the beginning, the proper amount of transfer taxes. Plaintiffs are not to blame and do not need to give Defendant WELLS or the other Defendants legal advice in how to file transfer documents under CRETTA. Clearly, Defendants all used experienced attorneys who were once parties in this case. To blame Plaintiffs for Defendants acts which appear to be intentional and a clear violation of the CRETTA requirements could not give rise to a claim for equitable estoppel. As such, Defendants request for dismissal based on equitable estoppel should be denied by the court.

Defendants also make allegations of a violation of the statute of limitations for collecting transfer taxes, but again this is a factual question and we have no record upon which to base any

such argument. Moreover, because of the allegations of misrepresentation and fraud in Defendants behavior, such an allegation may not withstand any scrutiny factually or statutorily. CRETTA does not set forth and specific statute of limitations. Based on the requirements that Plaintiff are statutorily required to accept properly formed transfer documents, and cannot reject recording instruments based on the content of the instrument under MCL 565.201(5), Defendants position on the application of any statute of limitation is fully untenable. Defendants' motion for dismissal based on a statute of limitations defense should also be summarily denied.

## CONCLUSION

Michigan statute directs that where a question of fraudulent intent is legitimately raised in conveyances, assignments, and/or affidavits affecting real property, such an inquiry is a question of fact and **not law.**

**MCL §566.224. Fraudulent intent; question of fact**
The question of fraudulent intent, in all cases arising under this, or either of the last 2 preceding chapters, shall be deemed a question of fact and not of law.

There significant issues of fact and law that need to be resolved as indicated in the briefs filed herein and the court record. For the foregoing reasons, the Defendants' motion to dismiss should be denied, and plaintiffs afforded the opportunity to proceed to discovery and develop a factual record in support of their claims. Plaintiffs respectfully request oral argument on this motion.

The Plaintiffs have filed a well-pled complaint. It includes a non-repetitious statement of the facts that Plaintiffs rely on in stating the cause of action. Plaintiffs have also provided Defendants and the court with numerous other transfer documents filed by all the Defendants in both counties. Plaintiff believes the Complaint includes specific allegations necessary to reasonably inform the Defendant WELLS, as well as all the other Defendants, of the nature of

the claims they are called on to defend. The court is reminded that Defendant has refused to file

an Answer to the Complaint but instead have requested, and received 90 days to prepare and

submit their Motion to Dismiss. The motion seeks to challenge facts and legal theories that are

not normally established until a proper responsive Answer has been filed, and discovery has

taken place. As such, the Plaintiff, as well as the Court, should not be made to guess at the

factual positions of the Defendants that require a well-examined response to the Complaint and

deliberate examination through normal discovery procedures. Defendant WELLS motions to

dismiss pursuant to FRCP 12(B)(6) should be denied, and this case should be allowed to proceed

into a normal pre-trial schedule in the Circuit Court for the County of Ingham as to all these state

defendants.

William Maxwell & Associates
By: /s/ William Maxwell, Jr.
Wm Maxwell, Jr. P35846
Attorney for Plaintiff
PO Box 701968
Plymouth, MI 48170
Phone: (734) 737-0758

**CERTIFICATE OF SERVICE**

       I hereby certify that on February 21, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all attorneys of record.

William Maxwell & Associates
By: /s/ William Maxwell, Jr.
Wm Maxwell, Jr. P35846
Attorney for Plaintiff
PO Box 701968
Plymouth, MI 48170
Phone: (734) 737-0758