UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS HERTEL and NANCY
HUTCHINS,

      Plaintiffs,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC,
et al.,

      Defendants.
_____/

File No. 1:12-CV-174

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter is before the Court on Defendant Marshall Isaacs' motion for sanctions against Plaintiffs Curtis Hertel and Nancy Hutchins, and Plaintiffs' attorneys, William Maxwell and Daniel Marsh, pursuant to Federal Rule of Civil Procedure 11. (Dkt. No. 66.) Also before the Court is Plaintiffs' motion for an evidentiary hearing in regard to Isaacs' motion. (Dkt. No. 96.) The Court held a hearing on the motion for sanctions on February 20, 2013 (Dkt. No. 99), and now grants Isaacs' motion as to Maxwell and Marsh and denies Plaintiffs' motion.

**I.**

On November 10, 2011, Hertel, Register of Deeds of Ingham County, and Hutchins, Register of Deeds of Branch County, filed a complaint in Ingham County Circuit Court. Plaintiffs' complaint alleged that multiple defendants violated Michigan's State Real Estate

Transfer Tax Act ("SRETTA") and County Real Estate Transfer Tax Act ("CRETTA"), Mich. Comp. Laws §§ 207.502, 207.523, by improperly claiming exemptions.[1] Ultimately, the case was removed to this Court. (Dkt. No. 1.) On October 4, 2012, the Court determined it had diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the doctrine of fraudulent joinder, and denied Plaintiffs' motion to remand. (Dkt. Nos. 49, 50.) In doing so, the Court found that Plaintiffs' claims against Marshall Isaacs (and the other non-diverse defendants) were not colorable. (Dkt. No. 49, at 9-19.) Subsequently, the Court dismissed Isaacs. (Dkt. No. 60.)

## II.

"In this circuit the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). "[T]he imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct[.]'" *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (quoting *United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999)).

## III.

Isaacs alleges the following violations of Rule 11: (1) the claims against Isaacs in the complaint were frivolous; (2) Plaintiffs' attorneys, Marsh and Maxwell, are members of the Home Defense League, PLC, a group which has filed twelve suits where Isaacs or his firm,

---

[1] Plaintiffs have since voluntarily dismissed their claims arising under the SRETTA. (Dkt. No. 70.)

2

Orlans Associates, have been named as defendants, all of which have been dismissed; and (3) a consultant of Plaintiffs' attorneys, Stephen Dibert, proprietor of the website MFI-Miami, has actively posted baseless internet posts in conjunction with this suit and the other suits against Isaacs, accusing him of statutory and criminal violations and posting his personal information. The first allegation implicates Rule 11(b)(2), while the second and third are properly analyzed under Rule 11(b)(1).

**A. Rule 11(b)(2)**

Federal Rule of Civil Procedure 11(b)(2) provides that by presenting a pleading to the Court, an attorney certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Plaintiffs brought the following claims against Isaacs: (1) failure to pay transfer taxes; (2) preparing transfer instruments "not in conformity with" SRETTA and CRETTA; (3) statutory conversion; and (4) conversion of an instrument. Examining these claims in a vacuum, the Court is unable to conclude that they were frivolous. While the Court is confident that its fraudulent joinder analysis was correct and that Plaintiffs' claims were not colorable, such findings are not equivalent to a violation of Rule 11(b)(2). In finding Isaacs was fraudulently joined, the *only* conclusion the Court reached was that Plaintiffs "could not have established a cause of action against non-diverse defendants under state law." *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Parties do not violate Rule 11 if they make "nonfrivolous argument[s] for

3

extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Thus, because Plaintiffs' claims could be construed as an effort to extend, modify, and/or reverse existing law, the Court concludes that the claims did not violate Rule 11(b)(2) and were not objectively unreasonable per se.

**B. Rule 11(b)(1)**

However, the non-colorable nature of the claims against Isaacs, when considered in conjunction with the actions of Plaintiffs' attorneys, does suggest a violation of Rule 11(b)(1), which prohibits attorneys from presenting pleadings to the Court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Given the litigation history of attorneys Marsh and Maxwell against Isaacs, the Court concludes that the claims against Isaacs in the present case were brought in bad faith for the purposes of harassment. Because the Court finds Marsh and Maxwell's behavior objectively unreasonable, it finds them liable for violating Rule 11.[2] The Court notes that its conclusion on this matter is not based on the actions of Dibert, which cannot be attributed to Plaintiffs' attorneys.

**1. Prior Litigation**

Isaacs has contended that Marsh and Maxwell are members of the Home Defense League, PLC, a group that has filed eleven prior foreclosure/mortgage related lawsuits

---

[2]Because the Court's finding of a Rule 11 violation as to Marsh and Maxwell is dependent on prior litigation which involved various plaintiffs, the Court finds that Plaintiffs themselves have not violated Rule 11.

against Isaacs and/or his firm, Orlans Associates, all of which have been dismissed. Plaintiffs' evidence confirms that Marsh and Maxwell make up the Home Defense League, along with attorney Brian Parker, who is not counsel in the present case. (*See* Dkt. No. 88, Exs. G, H.) Plaintiffs' attorneys, in particular Maxwell, have disputed that this case was brought by the Home Defense League. In Plaintiffs' response brief, Maxwell insists that "[t]his case was not filed by the Home Defense League." (Dkt. No. 72, at 8.) This was an argument vigorously repeated by Maxwell during the hearing.

The Court finds that Maxwell is not credible. An article on attorney Marsh's website states that the Home Defense League is representing the counties in seeking the payment of the transfer taxes. (Dkt. No. 88, Ex. I.) While Plaintiffs' attorneys might argue that this article only referred to the counties' sister suit in this Court, *Hertel v. Bank of America* (*Hertel I*), the Court finds this unlikely given that the article refers to suits brought by the registers of deeds for *both* Ingham and Branch Counties. (*Id.*) Hutchins, the register of deeds for Branch County, is not a Plaintiff in *Hertel I*. Moreover, the article on Marsh's website refers to "lawsuits" being filed by the Home Defense League on behalf of the counties. (*Id.*) Further undermining Plaintiffs' attorneys' argument, three days before the Rule 11 hearing, Maxwell submitted two responses to the pending motions to dismiss and signed both documents (and their accompanying certificates of service) directly underneath the heading "HOME DEFENSE LEAGUE, PLC." (Dkt. Nos. 84, 85.) Maxwell's subsequent attempt to "take back" this admission by filing "corrected" responses removing

this heading the day after Isaacs' counsel pointed it out at the hearing fails to assure the Court of his credibility on this matter.

Even if the Court believed Plaintiffs' attorneys, it is irrelevant whether this case or any of the previous cases against Isaacs were "officially" filed under the guise of the Home Defense League. The existence of the Home Defense League confirms the relationship between Marsh, Maxwell, and Parker, and it is their behavior, whether filing suits under their own names or the Home Defense League, which has subjected Isaacs to harassment.

The following suits[3] were brought by Marsh, Maxwell, Parker,[4] or some combination of the three, against Isaacs and/or his firm, Orlans Associates:

1.   *Lucas v. Marshall Isaacs, Orlans Associates, et al.*, Oakland County Circuit Court Case No. 10-113498-NO: Orlans and Isaacs were accused of wrongful foreclosure, negligence, and intentional infliction of emotional distress. (Dkt. No. 88, Ex. J.) Their motion for summary disposition was granted following a hearing. (Dkt. No. 88, Ex. J-1.)

2.   *Rogers v. Orlans Associates, et al.*, Eastern District of Michigan Case No. 2:11-CV-11167: Orlans was accused of violating the Fair Debt Collection Practices Act ("FDCPA") and of filing false or fraudulently procured documents. (Dkt. No. 88, J-2A.) These claims were dismissed pursuant to Orlans' Rule 12(b)(6) motion. (*Id.*)

---

[3]The Court wishes to offer a few words on the format of this list. First, the Court has listed the name of the court where each case ended up. Thus, if a case was filed in state court but subsequently removed to federal court, only the federal court is listed. Second, the Court listed Isaacs and Orlans as the first defendants even if the case caption listed other defendants first. Last, the Court notes that this list does not contain every claim brought against Isaacs/Orlans in each case.

[4]The Court recognizes that Parker is not an attorney in the present case. However, his filing of suits against Isaacs is relevant to whether the present suit was filed as part of a pattern of harassment by the Home Defense League attorneys.

6

3. *Hertel v. Orlans Associates, et al. (Hertel I)* (2011), Western District of Michigan Case No. 1:11-CV-757: Orlans was accused of failing to pay transfer taxes. (Dkt. No. 95, Ex. J-3, ¶¶ 13, 17-27.) This claim was dismissed on account of Hertel's lack of standing. (1:11-CV-757, Dkt. No. 82.)

4. *Parker v. Orlans Associates, et al.*, Oakland County Circuit Court Case No. 2011-119889: Orlans was accused of fraud related to the ownership of mortgages, filing false affidavits, and violation of the foreclosure statutes. (Dkt. No, 89, Ex. J-4.) This case was dismissed by stipulated order. (Ex. J.)

5. *Wharton v. Marshall Isaacs, Orlans Associates, et al.*, Western District of Michigan Case No. 1:11-CV-1090: Isaacs and Orlans were accused of wrongful foreclosure by advertisement and negligence. (Ex. J.) Isaacs and Orlans' motion to dismiss was granted. (Dkt. No. 89, Ex. J-5.)

6. *Ferguson v. Orlans Associates, et al.*, Macomb County Circuit Court Case No. 11-3558-CZ: Orlans was accused of fraud (including the robo-signing of Isaacs' signature), negligent infliction of emotional distress, violation of foreclosure by advertisement statutes, and conversion. (Ex. J.) This case was dismissed pursuant to summary disposition. (Dkt. No. 89, Ex. J-6.)

7. *Shaw v. Orlans Associates, et al.*, Wayne County Circuit Court Case No. 11-010406-CZ: Orlans was accused of fraud, violation of foreclosure by advertisement statutes, negligent infliction of emotional distress, conversion, and robo-signing. (Ex. J.) Summary disposition was granted in favor of defendants. (Dkt. No. 89, Ex. J-7.)

8. *FNMA v. Roberts & Roberts v. Marshall Isaacs, Orlans Associates, et al.*, St. Joseph County Circuit Court Case No. 11-950-CH: Isaacs and Orlans were accused of wrongful foreclosure, negligence, breach of contract, and lack of standing to foreclose. (Ex. J.) The counter-claim against Isaacs and Orlans was dismissed without prejudice. (Dkt. No. 89, Ex. J-8.)

9. *Conlin v. Marshall Isaacs, Orlans Associates, et al.*, Eastern District of Michigan Case No. 11-CV-15352: Isaacs and Orlans were accused of fraud, quiet title, breach of contract, and conversion. (Ex. J.) This suit was dismissed because the plaintiff lacked standing. (Dkt. No. 95, Ex. J-9.)

10. *Martell v. Marshall Isaacs, Orlans Associates, et al.*, Wayne County Circuit Court Case No. 11-010344-CH: Isaacs and Orlans were accused of filing false affidavits, violation of the foreclosure statutes, quiet title, breach of contract, and conversion. (Ex. J.) Summary disposition was granted due to the plaintiff's lack of standing. (Dkt. No. 95, Ex. J-10.)

11. *Kinney v. Orlans Associates, et al.*, Western District of Michigan Case No. 1:11-CV-01354: Orlans was accused of robo-signing, violation of the foreclosure statutes, quiet title, breach of contract, and conversion. (Ex. J.) The case against Orlans was dismissed under the doctrine of fraudulent joinder. (Dkt. No. 95, Ex. J-12.)

Every one of these cases was filed in 2011, other than the *Lucas* case which was filed in late 2010. Thus, in a period of little more than one year,[5] Plaintiffs' attorneys, along with their Home Defense League compatriot, Brian Parker, brought a total of twelve lawsuits against Isaacs or his firm, all of which were dismissed pre-trial.

The Court recognizes that many of these prior eleven suits involved distinct claims from the present case. Moreover, it recognizes that only in *Hertel I* was either Isaacs or Orlans sued for not paying the transfer taxes at issue in this case. Nonetheless, the number of cases filed in such a short time frame, the number of claims brought in each case, and the fact that every claim was dismissed at early stages, present strong evidence that the attorneys of the Home Defense League have been including Isaacs and/or Orlans in suits for the purpose of harassment rather than for any good faith reason. In light of this litigation history and apparent targeting of Isaacs, the Court concludes that Marsh and Maxwell's conduct was objectively unreasonable and that the non-colorable claims brought against Isaacs in this case were brought in bad faith and for harassment, in violation of Rule 11(b)(1).

---

[5] The *Lucas* case was filed on September 20, 2010, while the present case was filed on November 10, 2011.

### 2. Dibert's Actions

Isaacs also alleged a connection between Dibert and Plaintiffs' attorneys. Dibert's website, MFI-Miami, has filed numerous posts accusing Isaacs (and others, including at least one judge) of fraud, incompetence, and unethical behavior. (*See* Dkt. No. 66, Ex. E; Dkt. No. 91, Ex. S.) In doing so, the blog has posted Isaacs' personal information. (*See* Dkt. No. 66, Ex. E; Dkt. No. 91, Ex. R.) Dibert also filed a grievance against Isaacs with the State of Michigan, which was summarily denied. (Dkt. No. 66, Exs. C-D.)

There is evidence of a possible association between Plaintiffs' attorneys and Dibert. Hertel has been quoted as stating that Plaintiffs' attorneys worked with Dibert, at least as to *Hertel I*: "'MFI-Miami . . . has been instrumental in assisting with our investigation of this,' said Hertel. William Maxwell, Dan Marsh, and Brian Parker from the Home Defense League, PLC, working in conjunction with MFI-Miami discovered a pattern of unpaid transfer taxes . . . ." (Dkt. No. 90, Ex. M.) Dibert has also posted numerous entries on his blog stating that he has worked with Plaintiffs' attorneys in the prior suits and even coached them on questions to ask during depositions. (*See* Dkt No. 91, Exs. O, P, Q; Dkt. No, 94, Ex. N.)

However, this evidence does not establish that Plaintiffs' attorneys actually had an association with Dibert. Hertel and Dibert's words are not conclusive evidence that Plaintiffs' attorneys worked with Dibert or had any knowledge or part in his blog postings and grievance-filing. Thus, the Court finds that Dibert's actions cannot support the Court's finding that the present claims against Isaacs were filed for an improper purpose in violation of Rule 11(b)(1).

### C. Plaintiffs' Motion for an Evidentiary Hearing

Plaintiffs' February 19 motion for an evidentiary hearing requests that the Court, if it is inclined to issue Rule 11 sanctions, hold a three-four hour evidentiary hearing with at least seven witnesses and a prior period for discovery. (Dkt. No. 96.) On February 6, 2013, this Court expressed its concern about the allegations raised by Isaacs and invited both sides to submit additional briefing by February 18 about (a) the nature of the present suit (i.e. whether it was brought for harassment), (b) the nature of the prior suits against Isaacs and Orlans, and ©) the nature of the relationship between Plaintiffs' attorneys and Dibert. (Dkt. No. 82.) Despite this opportunity, Plaintiffs' attorneys chose not to submit such additional briefing, leading the Court to believe that the request for an evidentiary hearing is disingenuous.

First, the Court gave Plaintiffs ample time to respond to Isaacs' allegations when it issued the February 6 order. Plaintiffs could have submitted affidavits and exhibits but chose not to. Nor did Plaintiffs' attorneys indicate in the present motion that the time period provided by the Court for such additional briefing and evidence was somehow inadequate.

Second, Plaintiffs have given this Court no reason to believe that discovery and an extensive evidentiary hearing are necessary. The Court resents the implication made in Plaintiffs' motion and by Maxwell at the hearing that the Court is or will be misled by the documents submitted by Isaacs. Isaacs has provided documentation for most of his allegations, as discussed in this opinion. For those allegations without ample documentation

(e.g. Dibert's connection to Plaintiffs' attorneys), the Court is not relying on them in making its Rule 11 determination. In contrast to Isaacs' numerous exhibits and reasoned arguments, Plaintiffs' attorneys give this Court nothing but their word that Isaacs' allegations are false or misleading. However, it is Plaintiffs' attorneys who have proven to be non-credible. Maxwell appeared before this Court and attempted to mislead it by distancing Plaintiffs' attorneys from the Home Defense League, despite filing briefing under that name three days prior. Moreover, when Maxwell was not interrupting the Court or acting disrespectfully, he was either sugarcoating the role of Plaintiffs' attorneys (e.g. claiming they were "special prosecutors") or raising wild, unsupported allegations about Isaacs. Indeed, instead of providing the Court with the clarification it sought in its February 6 order, Maxwell instead chose to attack Isaacs and his attorney. He accused Isaacs of having a vendetta against Hertel because Hertel allegedly asked the Attorney General's office to file criminal charges against Isaacs (charges that were never filed), without offering any support for this accusation to the Court. He even went so far as to demand the Court sanction Isaacs for filing the Rule 11 motion, its accompanying briefing, and the subsequent briefing the Court requested.

Based on this lack of credibility, the Court is disinclined to even address the arguments made by Plaintiffs' attorneys in the motion. Nevertheless, the Court will briefly touch on them. First, Plaintiffs' attorneys note that Isaacs filed a brief and multiple exhibits after the deadline for doing so set by this Court in its February 6 order. The deadline was noon on February 18. (*See* Dkt. No. 82) Because this was a federal holiday, Presidents Day,

11

Isaacs' attorney requested permission to file the briefing after the deadline. The Court, in its discretion, extended the deadline until noon on February 19, a courtesy the Court would have extended to Plaintiffs if they had asked. Indeed, the Court is considering all of the briefing that was filed, even Plaintiffs' present motion, which attempts to provide the information requested in the February 6 order despite also being filed after the February 18 deadline and despite being cloaked as a distinct motion.

Next, Plaintiffs' attorneys raise two arguments in relation to the *Rogers* case, included as one of the eleven prior suits listed above. First, they note that Marsh withdrew from that case on July 15, 2011. (*See* 2:11-CV-11167, Dkt. No, 27.) While this is true, it does not change the fact that Marsh represented the plaintiffs at the time they brought their claims against Orlans or the fact that these claims were dismissed. Second, Plaintiffs' attorneys note that the Sixth Circuit has subsequently changed its position on attorney violations under the FDCPA. Plaintiffs' attorneys are correct. Within the last two months, the Sixth Circuit has ruled that a lawyer may be considered a debt collector under the FDCPA if his principal business purpose is mortgage foreclosure or if he regularly performs that function. *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463 (6th Cir. 2013). Notably, the Sixth Circuit, in an unrelated case, applied this holding to a motion to dismiss brought by Orlans. *See Mellentine v. Ameriquest Mortg. Co.*, No. 11-2467, 2013 WL 560515, at *3 (6th Cir. Feb. 14, 2013). However, this was not the law at the time Marsh brought the claims against Orlans in *Rogers*. The governing Sixth Circuit ruling at the time was that "an enforcer of a

security interest, such as a repossession agency, does not meet the statutory definition of a debt collector under the FDCPA." *Montgomery v. Huntington Bank*, 346 F.3d 693, 701 (6th Cir. 2003). As *Glazer* itself noted, "[t]he view adopted by a majority of district courts, and the one followed below, is that mortgage foreclosure is not debt collection." 704 F.3d at 460. Moreover, the fact that the Sixth Circuit has since reversed its view on the FDCPA does not make up for the fact that, other than in *Rogers*, a violation of the FDCPA was not alleged in the previous suits. Nor does it change the fact that Plaintiffs' attorneys employed a "kitchen sink" approach in each of those prior cases. The following list represents the Court's attempt to list every non-FDCPA claim against Isaacs and Orlans that was dismissed and, in parentheses, the estimated number of times the claim was brought:[6]

- wrongful foreclosure/violation of foreclosure statutes (12)

- negligence (3)

- intentional infliction of emotional distress (1)

- negligent infliction of emotional distress (2)

- fraud of some form (including filing false or fraudulently procured documents a/k/a robo-signing, filing false affidavits, fraudulent ownership of mortgages) (9)

---

[6]This list does not include claims brought in the present case. Note also that this list is an estimate only included to show the scope of the claims brought. While the Court made every effort to be accurate, sometimes the complaint in each case and/or the documents available to this Court for review were not entirely clear on whether certain claims applied to every defendant. Moreover, note that the Court counted every claim once, even if it could arguably fit within multiple categories. Also note that because the Court grouped many sets of different claims in the same category (such as "fraud"), sometimes distinct claims from the same case were included in the same category.

13

- failure to pay transfer taxes (1)

- quiet title (4)

- breach of mortgage contract (5)

- conversion (6)

- Defendants are not holders of original notes (6)

- Defendants are not the real parties in interest/lack of standing to foreclose (6)

This list shows the breadth of the claims brought by Plaintiffs' attorneys against Isaacs and Orlans, and their repetition. Thus, the fact that, under current Sixth Circuit law, the FDCPA claim in *Rogers* may have been dismissed prematurely does not affect this Court's conclusion that Plaintiffs' attorneys have been filing meritless lawsuits to harass Isaacs and Orlans.

Next, Plaintiffs' attorneys note that the present complaint was filed against Isaacs for his position as Vice President and Secretary of MERS and not as a lawyer. The Court fails to see the relevance of this argument. The Court has not adopted a position as to whether Isaacs was sued in his capacity as an attorney in this matter. The Court's conclusion that Isaacs was fraudulently joined was based on the fact that the claims against Isaacs were non-colorable, and this fact did not depend on in what capacity Plaintiffs' were suing Isaacs. (*See* Dkt. No. 49.)

The last argument the Court wishes to address is the defense of immunity asserted by Plaintiffs' attorneys. Plaintiffs' attorneys are not entitled to governmental immunity. Michigan Compiled Law § 691.1407 concerns the immunity of governmental agencies and

14

officers from *tort* liability. Sanctions under Rule 11 do not constitute tort liability. All parties, including governmental parties and attorneys hired by governmental parties, must comply with the Federal Rules of Civil Procedure.

Thus, because Plaintiffs' motion for an evidentiary hearing lacks merit, it will be denied.

**IV.**

The Court is generally loathe to impose Rule 11 sanctions. However, it cannot ignore the unique circumstances of the present case. Marsh and Maxwell have made a target of Isaacs and his firm in the last year, filing voluminous claims in twelve different lawsuits, every one of which was dismissed pre-trial. Given this history of harassment, the failure of Plaintiffs' attorneys to submit evidence to the contrary, the non-credibility of Plaintiffs' attorneys, and the fact that this Court dismissed every claim against Isaacs in this case under the fraudulent joinder doctrine, which required the Court to "apply a test similar to, but more lenient [to the plaintiffs] than, the analysis applicable to a Rule 12(b)(6) motion to dismiss," *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012), the Court concludes that Marsh and Maxwell have violated Rule 11(b)(1). Isaacs is therefore entitled to appropriate sanctions:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11(c)(1).

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). The Court concludes that the payment of reasonable attorneys fees is an appropriate sanction in this situation.

Currently, the billing sheets for Isaacs' attorneys fees are under seal on account of Isaacs' stated fear that the contents of these sheets would be posted on Dibert's blog. (*See* Dkt. No. 93.) In accordance with its February 6 order, the Court has reviewed these billing sheets *in camera* and concludes that permanent sealing is not warranted. If the Court is to award attorneys fees as sanctions in this case, Plaintiffs' attorneys are entitled to review the hours and time claimed for reasonableness. Accordingly, Isaacs shall file with this Court an unsealed request for attorneys fees.

However, this request for attorneys fees shall be subject to a protective order. The Court finds that good cause exists to issue a protective order prohibiting Plaintiffs and their attorneys from disclosing to a third party the contents of any request for attorneys fees and of any accompanying documentation. *See* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.")

An order consistent with this opinion shall be entered.

Dated: February 26, 2013                     /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE