UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CURTIS HERTEL**, the Register of Deeds and Representative of **INGHAM COUNTY**; and **NANCY HUTCHINS**, the Register of Deeds and Representative of **BRANCH COUNTY**, both as Class Representatives of all 83 counties in the State of Michigan.
                           Plaintiffs,

**v.**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., MERSCORP, INC., JEANNE KIVI, ELLEN COON, MARSHALL ISAACS, BANK OF AMERICA N.A., JP MORGAN CHASE & CO, CHASE HOME MORTGAGE CORPORATION f/k/a CHASE HOME FINANCE, WELLS FARGO BANK, N.A., CITIMORTGAGE INC., eTITLE AGENCY INC, 1ST CHOICE TITLE SERVICES INC, ATTORNEYS TITLE AGENCY LLC, f/k/a WARRANTY TITLE AGENCY LLC, ,** and **JOHN DOE** as any other authorized signers for **MERS** or **MERSCORP, INC.,** and Defendants **JOHN DOE** Corporations I - MMM,
                           Defendants.

Case No. 1:12-CV-174
HON. ROBERT HOLMES BELL

_____/

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION**

**STATEMENT OF THE CASE**

**A. Standard of Review**

Under the Local Rules of Civil Procedure for the Western District of Michigan, a court may grant a motion for reconsideration when the moving party demonstrates both a "palpable defect" by which the Court and parties have been misled and a showing that a different disposition of the case must result from the correction of the mistake. W.D. MICH. L. R. CIV. P. 7.4(a). Although the Federal Rules of Civil Procedure do not explicitly authorize motions for reconsideration, two rules have been interpreted as providing a basis for a trial court to reconsider orders and

judgments. A party may file a motion to alter or amend a judgment within 28 days after the entry of judgment. FED. R. CIV. P. 59(e). A motion brought under Rule 59(e) requests the court reconsider matters properly encompassed in a decision on the merits. *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 451 (1982). Under the rule, a district court may reconsider the judgment entered and may grant the motion for any of four reasons: (1) an intervening change in the controlling law, (2) newly discovered evidence, (3) to correct a clear error of law, or (4) to prevent manifest injustice. *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A party may file a motion for relief from a judgment or order under Rule 60. Rule 60(b) authorizes a court to relieve a party from a final judgment, order, or proceeding for any of six reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that could not have been discovered in time to file a motion under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) a void judgment; (5) satisfaction, release, discharge, reversal or vacation of the judgment; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 542-543 (6th Cir. 2004).

The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. *Weese v. Shukman*, 148 F.R.D. 279, 280 (D.Kan. 1993) (citation omitted).

**B. Marsh and Maxwell not affiliated with Parker**

Attorneys Marsh and Maxwell can factually establish, as alleged by Maxwell in oral argument as a sworn officer of the court, that the allegations filed by ISAACS have no basis in

fact. They should not be, and are therefore not liable in their individual capacity for acts commited by third parties over which they have no control. Furthermore, they did not commit any negligent or wrongful act as to ISAACS. Marsh and Maxwell have had no involvement with Brian Parker beyond the case filed in Hertel I. Neither attorney has any direct supervision or control over MFI-Miami or STEVE DIBERT or Brian Parker; and outside of the single case filed by HDL in Hertel I have had no involvement is cases filed individually by the other attorney. ISAACS does not respond to these facts as shown by the affidavits (Exh. 1 – Maxwell Affidavit and Exh. 2 – Marsh Affidavit) filed herewith.

As indicated in the record, Brian Parker files cases as Brian Parker PC, a Michigan Professional Corporation. "It is well established that a corporation, including a professional corporation, is a legal person distinct and separate from its shareholders." *Dep't. of Consumer & Ind Svcs. v. Shah*, 236 Mich. App. 381, 393 (1999). Under Mich. Comp. Law section 450.226, a professional services corporation:

shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, shareholders, agents or employees while they are engaged on behalf of the corporation in the rendering of professional services.

Also, any "officer, shareholder, agent or employee" is only personally and individually liable for negligent or wrongful acts committed by him, for his misconduct, or for the misconduct of anyone under his direct supervision/control. M.C.L. § 450.226.

Attorneys Marsh and Maxwell are not members of BRAIN PARKER P.C. Plaintiff has not alleged that Attorneys MARSH and MAXWELL have committed any misconduct, or negligent or wrongful acts individually, as shareholders or in partnership with BRAIN PARKER P.C. but instead as members of HDL. Further, ISAACS does not allege that Attorneys MARSH and MAXWELL had direct supervision or control over DIBERT or PARKER. Therefore, even

in a light most favorable to ISAACS, the facts present a genuine material issue as to the legal and factual relationship between MARSH, MAXWELL, PARKER, and DIBERT. Accordingly, this Court should find that Attorneys MARSH and MAXWELL are not individually liable in the instant case.

Attorneys MARSH and MAXWELL never formed or intended to form a partnership with PARKER outside of HDL. (See Exh. 1 & 2) They did not have an oral or written partnership agreement, did not share profits or losses, maintained separate clients and cases, and purchased separate malpractice insurance policies outside of the HDL entity which filed one case in its short history. A partnership by agreement or by estoppel has not met.

"A partnership is an association of two or more persons . . . to carry on as co-owners a business for profit." M.C.L. § 449.6. A "person," as indicated in Mich. Comp. Law section 449.6, includes "individuals, partnerships, *corporations*, and other associations." M.C.L. § 449.6 (emphasis added). The definition of partnership "is devoid of any requirement that the individuals have the subjective intent to create a partnership." *Byker v. Mannes*, 465 Mich. 637, 646 (2002). Each partner in a partnership is an agent of that partnership. M.C.L. § 449.9. The act of every partner, who carries on the usual business of the partnership, binds the partnership – unless the partner has no authority to act in the particular matter, and the person with whom the partner is dealing is aware that the partner lacks authority. *Id*. Partners are jointly and severally liable for everything chargeable to a partnership conducted within the ordinary course of business, and the partnership is liable to the same extent as the partner. M.C.L. §§ 449.13, 449.15. "Judicial interpretations of the Michigan Uniform Partnership Act, Mich. Comp. Laws § 449.1 *et seq*., regularly reference the common-law definition of a partnership," *Byker*, 465 Mich. at 648, which states that "in the absence of an express agreement . . . acts and conduct in relation to the business are the test to be used in determining if a partnership exists." *Van Stee v. Ransford*, 346 Mich. 116, 133 (1956).

In determining whether a partnership exists, Michigan law sets forth the following rules for the establishment of a partnership:

 (2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property;
(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
(a) As a debt by installments or otherwise,
(b) As wages of an employee or rent to a landlord,
(c) As an annuity to a widow or representative of a deceased partner,
(d) As interest on a loan, though the amount of payment vary with the profits of the business,
(e) As the consideration for the sale of the good-will of a business or other property by installments or otherwise.
M.C.L. § 449.7.

"The determination of whether a partnership exists is a question of fact . . . ." *Miller v. City Bank & Trust Co.*, 82 Mich. App. 120, 123 (1978).

In the instant case, Isaacs does not claim, nor is there evidence in the record of, any partnership agreement regarding the 12 cases alleged to be brought by HDL. There is no evidence that Attorneys MARSH and MAXWELL, individually or through their professional companies, made joint decisions concerning any of their work regarding ay of the alleged 12 cases except for Hertel 1. There has not been any sharing of losses or profits which could "constitutes evidence of partnership," *Grosberg v. Mich. Nat'l Bank Oakland*, 113 Mich. App. 610, 615 (1982). There is no evidence that Attorney MARSH and MAXWELL, or PARKER'S professional corporation engaged in any such conduct concerning the 12 cases alleged to be brought by HDL. ISAACS does not contradict this assertion and outside the defective affidavit filed by Attorney Padilla, there is no factual or legal basis for these claims.

There is nothing in the record to show that the 12 case filings alleged by ISAACS to be filed by HDL and Attorneys MARSH and MAXWELL meet the definition of Partnership with PARKER or DIBERT. Viewing the facts in a light most favorable to MARSH and MAXWELL, the record does not reveal evidence of any partnership, express or otherwise, within its definition. There are two elements necessary to establish partnership by estoppel: (1) that the

defendant represents himself to be a partner or consents to another's representation that he is a partner of one with whom he is not a partner; and (2) that the person to whom the false representation is made relies on that representation to his detriment. *Am. Casualty Co. v.Costello*, 174 Mich. App. 1, 9 (1989) (citing MCL 449.16).

With regard to the 12 cases alleged to be brought by the HDL entity, there is a genuine issue of material fact exists as to whether MARSH and MAXWELL represented themselves to be partners of HDL or consented to the other's representation that they were partners of someone who is not actually a partner. There is no letterhead proffered that states there is or was a partnership, which included MARSH and MAXWELL and PARKER. Additionally, no business cards have been proffered which lists MARSH and MAXWELL representing anyone except themselves, or that MARSH and MAXWELL and PARKER worked together as partners outside of HDL. Moreover, MARSH and MAXWELL and PARKERS phones do not answer with identification of MARSH and MAXWELL as attorneys.  In a light most favorable to the MARSH and MAXWELL, the above is evidence that MARSH and MAXWELL and PARKER have not represented themselves to be partners or consented to the other's representation that they were partners in any of the 12 cases alleged to be brought by the HDL entity. Any such allegations are patently untrue and have no basis in fact or law. (See Exh. 1 & 2)

Therefore, the Court must find that in a light most favorable to MARSH and MAXWELL, the evidence fails to meet the first element of partnership by estoppel; and there continues to be an unproven genuine issue of material fact exists as to whether MARSH and MAXWELL are partners with PARKER  in the 12 cases alleged to be filed by HDL. Neither has there been shown to be any control over the actions of DIBERT as alleged by ISAACS. As can be seen from the attached affidavits, HDL did not file 12 cases against Marshall Isaacs and

Defendant has no provided sufficient proofs for the court to find this allegation to be found as true.

**C. MARSH and MAXWELL cannot control DIBERT'S exercise of free speech**

With regard to the allegations made by ISAACS concerning Steve Dibert, neither Marsh nor Maxwell have any control or influence over his right to free speech on an internet blog site. Defendant ISAACS intimates that such control exists, but provides no factual foundation for any such finding, let alone a finding by the court that any comments by DIBERT could be attributed to Marsh and Maxwell. Furthermore, DIBERT has a right to free speech which cannot be infringed without some proof of ill intent or untruthfulness. ISAACS does not make any such claims or provide any proofs that Marsh or Maxwell have contributed in any way to the comments and writings of DIBERT. Neither does ISAACS allege that comments made by DIBERT are untrue. The fact that the court has found some level of connection or control between DIBERT and Attorneys Marsh and Maxwell giving rise to sanctions for harassment has no basis in fact or law. These allegations should be summarily dismissed on reconsideration.

**D. The Curtis Hertel Complaint and Request for Criminal Investigation Against ISAACS**

As can be seen by the affidavit provided by Curtis Hertel attached hereto (Exh. 3), he had good cause to believe that Defendant ISAACS was involved with "robo signing" documents being filed with the Ingham County Register of Deeds. As a result of the request for criminal investigations to the federal and state authorities about the questionable signatures on publically filed documents, ISAACS was obviously questioned and put under serious scrutiny for fraud and illegal activities that could have cost him his law license. This is clearly a motive for bringing the motion for sanctions based on harassment.

As Attorney MAXWELL alleged to the court during arguments, it is believed, and

remains a question of fact, as to whether ISAACS brought the Motion for Sanctions as a result of the complaints filed by Curtis Hertel. The fact that this Honorable Court did not believe MAXWELL'S allegations concerning Curtis Hertel's allegations is of no matter. The allegations were clearly made by Hertel and ISAACS was directly impacted by a criminal investigation into his activities while working for Orlans Associates The court could have inquired of ISAACS who sat in the courtroom during the oral arguments herein. More to the point though was the failure of ISAACS to correct the record when the court announced its disbelief that such charges were ever made against ISAACS by Hertel. The failure of ISAACS to correct this portion of the record immediately as an officer of the court should require the court to reconsider it's ruling in light of this now unchallenged fact. The actions of ISAACS and his attorney in this regard were meant to and did misled the court. As a result, the motion for reconsideration should be granted and Plaintiffs' Motion for an evidentiary hearing should be reconsidered and granted.

**E. Evidentiary Hearing Requested and Necessary to Clear the Factual Disputes**

Defendant ISAACS, in clear violation of the court's February 18, 2013 Order waited after date and time for filings requested by the court. Because the court's Order did not stagger the filings of ISAACS and the responsive filings by Plaintiff's, giving some time for Plaintiff's to digest and prepare for all ISAACS allegations, Plaintiff have been seriously prejudiced in their ability to respond. ISAACS and his counsel filed hundreds of pages of argument and cases after the time set in the court's Order, thereby requiring Plaintiffs to scramble in filing even an intelligent response to the suppositions and factually baseless allegations of ISAACS and his attorney.

The request by Plaintiff's for an evidentiary hearing was in response to the lack of time provided by the court's Order and the violation of the filing deadline by ISAACS. The fact that

the court gave ISAACS and his attorney accommodations is filing past the deadline and forcing Plaintiffs to respond with less than 36 hour notice is indicative of the prejudice visited upon Plaintiffs. An evidentiary hearing should be granted under this reconsideration motion, and thereafter the court can and will be fully apprised of the true nature and factual basis of ISAACS' allegations of harassment by attorneys Marsh and Maxwell. Without some level of discovery and cross-examination of the factually based allegations made by ISAACS, this Honorable Court will continue to be without the necessary factual basis to a make a reasoned and careful analysis of any possible harassment claimed by ISAACS. (Compare Exh. 1 & 2 to the allegations of ISAACS and the finding of the court in it's Opinion)

**F. Safe Harbor Violation**

In *Liberty Legal Foundation v National Democratic Party,* 2:12-cv-02143-STA cgc, Document 32, the "safe harbor" in Rule 11(c) is discussed:

Rule 11(c) provides a "safe harbor" which requires a party seeking sanctions for violations of Rule 11 to make a separate motion and "describe the specific conduct alleged to violate subdivision (b)." Fed. R. Civ. P. 11(c). Id. Fed. R. Civ. P. 11(c)(1)(A) (emphasis added). Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (emphasis added). *Id. Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997). Importantly, the safe harbor further requires the moving party to serve its motion for sanctions on the opposing party twenty-one (21) days before actually filing or presenting the motion to the court. The ostensible purpose of the safe harbor period is to allow the opposing party a respite in which to cure the alleged violation of Rule 11(b). The comments to Rule 11 addressing the safe harbor requirement state in part, "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion." The comments go on to advise that counsel should also "give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." The Sixth Circuit has held that Rule 11 and the safe harbor procedure contemplate a two step process: (1) to serve the Rule 11 motion on the opposing party for a period of at least twenty-one (21) days; and then (2) file the motion with the court. The Court in *Ridder* concluded that "[b]y filing a motion for sanctions without previously having served the motion on the opposing party for the designated period . . ., Springfield failed to afford *Ridder's* counsel the twenty-one day 'safe harbor' period mandated by [Rule 11]." Id. at 297. Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).

In the case at bar, it is undisputed that Defendants did not serve counsel for Plaintiffs with their

Motion for Sanctions at least twenty-one (21) days before filing the Motion with the Court. Rather, Defendants addressed a safe harbor letter to counsel alerting him to their intention to file the Motion and outlining the grounds for the Motion. Even the comments to Rule 11 suggest that a "safe harbor" letter constitutes only "informal notice." *Williams v. White Castle Sys., Inc.,* 526 F. Supp. 2d 830, 838-40 (M.D. Tenn. 2007). See also *Salkil v. Mount Sterling Twp. Police Dept.*, 458 F.3d 520, 526 n.1 (6th Cir. 2006) (stating in dicta, "This opinion does not indorse the use of a letter in place of the requisite safe harbor 'motion' required by Rule 11 or the Village's incorporation of its motion for judgment on the pleadings into its safe-harbor letter").

The fact remains that Defendants did not serve the actual Motion on counsel for Plaintiffs until the Motion was filed. It has been held that sending a safe harbor letter without including the Rule 11 motion itself does not satisfy the safe harbor requirements of Rule 11(c). Therefore, the Court concludes that Defendants failed to comply with Rule 11(c)'s procedure for seeking sanctions. Accordingly, Defendants' Motion for Sanctions pursuant to Rule 11 is DENIED.

Just like the defendant in the *Liberty Legal* decision above, Defendant ISAACS failed to comply with the safe harbor rules enunciated above by the 6th circuit. In order to comply, ISAACS would have had to file a copy of his motion ONLY WITH PLAINTIFFS' COUNSEL prior to filing a motion with the court. This failure is fatal to the Defendant's request for sanctions; and requires this court to reconsider it's ruling and dismiss the requests and allegations of ISAACS based on his failure to comply with the safe harbor rules.

The attached affidavits at Exhibit 1 for Maxwell and Exhibit 2 for Marsh fully corroborate and support the arguments made herein. For all the foregoing reasons, Plaintiffs respectfully request the Court reverse its Opinion and Order and deny Defendant's motion for Sanctions; or in the alternative, grant Plaintiffs' Motion for Evidentiary Hearing so that a proper actual record can be made for a decision by the court on the allegation of harassment by filing 12 lawsuits by the HDL entity.

RESPECTFULLY SUBMITTED

By: /s/ William Maxwell, Jr.
Wm Maxwell, Jr. P35846
Attorney for Plaintiffs
PO Box 701968
Plymouth, MI 48170

March 26, 2013

## CERTIFICATE OF SERVICE

      I hereby certify that on March 26, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all attorneys of record.


By: /s/ William Maxwell, Jr.
Wm Maxwell, Jr. P35846
Attorney for Plaintiffs
PO Box 701968
Plymouth, MI 48170
Phone: (734) 737-0758