# EXHIBIT 2

# EXHIBIT 2

EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CURTIS HERTEL**, the Register of Deeds and
Representative of **INGHAM COUNTY**; and
**NANCY HUTCHINS**, the Register of Deeds
and Representative of **BRANCH COUNTY**,
both as Class Representatives of all 83
counties in the State of Michigan.
                Plaintiffs,

v.

**MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., MERSCORP, INC., JEANNE
KIVI, ELLEN COON, MARSHALL ISAACS,
BANK OF AMERICA N.A., JP MORGAN CHASE & CO,
CHASE HOME MORTGAGE CORPORATION f/k/a
CHASE HOME FINANCE, WELLS FARGO BANK, N.A.,
CITIMORTGAGE INC., eTITLE AGENCY INC,
1ST CHOICE TITLE SERVICES INC, ATTORNEYS
TITLE AGENCY LLC, f/k/a WARRANTY TITLE
AGENCY LLC, , and JOHN DOE** as any other authorized
signers for **MERS** or **MERSCORP, INC.,** and Defendants
**JOHN DOE** Corporations I - MMM,
                Defendants.

Case No. 1:12-CV-174
HON. ROBERT HOLMES BELL

---

# AFFIDAVIT OF DANIEL P. MARSH

STATE OF MICHIGAN    )
                          )    ss:
COUNTY OF WAYNE     )

DANIEL P. MARSH , after being first duly sworn, deposes and states that:

1.     I am making this Affidavit upon my own personal knowledge, information, and belief, without any duress or coercion whatsoever.

2.     That I am an attorney of record in the above identified case.

3.      Pursuant to this Court's order of February 6, 2013 [82] granting a hearing on Defendant Marshall Isaac's Motion for Sanctions under FRCP 11, written representations in response to specific issues and allegations made against me were filed with the Court . This affidavit supplements the record to the oral representations made in court by Attorney for Plaintiff William Maxwell during the February 20, 2013 hearing on the Motion for fees and costs under Rule 11.

4.      The court sought information about the relationship of Daniel Marsh and William Maxwell to Home Defense League, PLC. Attorneys Marsh and Maxwell are members of this professional corporation. The only litigation ever brought by that professional corporation is one case identified as Hertel I (Case No. 1:11-cv-757).

5.      The Court sought information about the allegations by Isaacs that Home Defense League, PLC had filed twelve suits against Isaacs or his firm, Orlans Associates, as defendants. This allegation is not true and appears to be based on speculation and innuendo. The full captions of the cases filed as exhibits by Defendant Isaacs in support if his allegations/accusations were intentionally removed from the filing with this Court.  This method of filing hides the fact that Home Defense League, PLLC was not a named attorney for any party except for the Hertel I case, No. 1:11-cv-757.

**Marsh and Maxwell not affiliated with Parker**

6.      Brian Parker P.C. was member of Home Defense League, PLC for a short period of time.

7.      Home Defense League, PLLC  filed as a Professional Limited Liability Company on June 17, 2011. Attorney Brian Parker was "dissociated" from Home Defense League, PLC in the fall of 2011.

8.      Home Defense League, PLC filed only one case and that is Hertel I.  I am not, nor have ever been, an "officer, shareholder, agent or employee" of Brian Parker P.C.  I am not, nor have ever been, in partnership with Brian Parker P.C. or Brian Parker outside the business relationship in Home Defense League, PLLC that ceased in the fall of 2011.

**Home Defense League PLC did not file 12 cases against ISAACS**

9.      Based on the filings by **ISSACS**, many of the exhibits filed to support their allegations that 12 cases were filed by **MARSH** and **MAXWELL** lack a caption. On information and belief, the captions of those cases would indicate that **MARSH** and **MAXWELL** are not on the caption and that attorney Brian Parker PLC is the attorney of record. An evidentiary hearing that was requested would establish the assertions and arguments by **MARSH** and **MAXWELL** that they do NOT have a relationship to those cases or to those clients, or to attorney that filed the case, Brian Parker PC.

10.     Referring to Defendant Isaacs Exhibit J, I have personal knowledge and as to each state as follows:

+ Lucas v Orlans – I never had any attorney–client relationship with Lynn Lucas either individually or as a member of Home Defense League, PLLC. In fact, Home Defense League, PLLC did not exist and I did not know and had never met attorneys Brian Parker and William Maxwell, Jr. The allegations in that case are not similar to the allegations in the case at bar.

+ Rogers v Orlans - I was co-counsel in that case for a short period of time. Isaacs was named as a defendant for allegedly violating the Federal Debt Collection Practices Act (FDCPA).The Eastern District dismissed Isaacs under the theory that Isaacs is not subject to the FDCPA. The law has been subsequently clarified in *Glazer v. Chase Home Finance LLC*, No. 10-3416, 2013 WL 141699, at *5-9 (6th Cir. Jan. 14, 2013) where that Court found that foreclosing law firms are subject to the FDCPA, the same allegations in the Rogers case. On information and belief, co-counsel in the Rogers case, attorney Suzy Woodrow, is the same attorney that successfully argued before the 6th Circuit Court of Appeals that found Orlans is subject to the FDCPA in the case *Mellentine, et al. v. Ameriquest Mortgage Company, et al.* No. 11-2467 at 5 (6th Cir. Feb. 14, 2013). On information and belief, Isaacs is the attorney involved in *Mellentine*. This court was provided a citation to that case at the February 20, 2013. The allegations in that case are not similar to the allegations in the case at bar.

+ Hertel v Orlans – (Hertel I) This litigation was the only case ever filed by the Home Defense League, PLLC. Marshall Isaacs was a named defendant for his activities as a Vice President and Secretary for MERS. Isaacs was not named as an attorney representing clients as Isaacs has argued in these proceedings.

+ Parker v Orlans - – I never had any attorney–client relationship with Mr. or Ms. Parker either individually or as a member of Home Defense League, PLLC. I was never aware of this case until reviewing it in the context of the subject transfer tax litigation. I never had any attorney–client relationship with Brian Parker or his ex-wife, and had no input into or responsibility for the claims asserted by the plaintiffs in that litigation. The allegations in that case are not similar to the allegations in the case at bar.

+ Wharton v Orlans – I never had any attorney–client relationship with Wharton either individually or as a member of Home Defense League, PLLC. I never provided any input into or responsibility for the claims asserted by Wharton in this litigation. The Home Defense League, PLLC, had no attorney–client relationship with Plaintiff Wharton, and had no input into or responsibility for the claims asserted by the plaintiffs in that litigation. Marshall Isaacs was a named defendant for providing business services as part of a foreclosure by advertisement to collect a debt. On information and belief, Defendants never followed through with threats to foreclose after the filing of the complaint. The allegations in that case are not similar to the allegations in the case at bar.

+ Ferguson v Orlans – I never had any attorney–client relationship with Plaintiff Ferguson, do not know Ferguson personally, have never met them, and had no input into or responsibility for the claims asserted by the plaintiffs in that litigation. I was never aware of this case until reviewing it in the context of the subject transfer tax litigation.

+ Shaw v Orlans – I never had any attorney–client relationship with Plaintiff Ferguson, do not know them personally, have never met them, and had no input into or responsibility for the claims asserted by the plaintiffs in that litigation. I was never aware of this case until reviewing it in the context of the subject transfer tax litigation.

+ Fannie Mae v Roberts/ Roberts v Orlans – I handled a hearing for Mr. Maxwell on this matter. At that hearing, Orlans stated they did not know who their client was as their was a transfer and the foreclosing law firm had not yet been notified who they were representing. I did not have any input into or responsibility for the claims asserted by Roberts in this litigation. The Home Defense League, PLLC, had no attorney–client relationship with Plaintiff Roberts, and had no input into or responsibility for the claims asserted by the plaintiffs in that litigation. On information and belief, Orlans and Marshall Isaacs were named in a counter-complaint. The court and parties entered into a stipulated order dismissing all but Fannie Mae and allowing Roberts to re-file using a third party complaint format. Orlans and Isaacs were never added as defendants by way of a third party complaint since the court dismissed the claims of Fannie Mae WITH PREJUDICE for not being the real party in interest, and allowed Roberts to move for attorney fees. Orlans and Isaacs were named as defendants for providing business services as part of a foreclosure by advertisement to collect a debt. The allegations in that case are not similar to the allegations in the case at bar.

+ Conlin v Orlans – I never had any attorney–client relationship with Plaintiff Conlin, do not know Conlin personally, have never met him, and had no input into or responsibility for the claims asserted by the plaintiff in that litigation. I was never aware of this case until reviewing it in the context of the subject transfer tax litigation.

+ Martel v Orlans – I never had any attorney–client relationship with Plaintiff Martel, do not know him personally, have never met him, and had no input into or responsibility for the claims asserted by the plaintiff in that litigation. I was never aware of this case until reviewing it in the context of the subject transfer tax litigation.

+ Ingham County v Orlans – (Hertel II) This is the subject transfer tax litigation filed by Attorneys Maxwell and Marsh as co-counsel. No other attorneys had any input into or responsibility for the claims asserted by Ingham and Branch counties in this litigation. Neither the Home Defense League, PLLC nor Attorney Brian Parker had any input into or responsibility for the claims asserted by the plaintiffs in this litigation. Marshall Isaacs was a named defendant for his activities as a Vice President and Secretary for MERS for specific duties owed under the CRETTA statute as more fully explained herein.

+ Kinney v Orlans – I never had any attorney–client relationship with Plaintiff Martel, do not know him personally, have never met him, and had no input into or responsibility for the claims asserted by the plaintiff in that litigation. I was never aware of this case until reviewing it in the context of the subject transfer tax litigation.

11. Contrary to the allegations made by Isaacs, and the Affidavit of his attorney, the only case ever filed by Home Defense League, PLC was Hertel I. The case at bar is being prosecuted by Daniel Marsh and William Maxwell as co-counsel for plaintiffs. The Home Defense League, PLLC does not represent any party in this litigation. Marsh and Maxwell did not file 12 cases against Isaacs as alleged by Isaacs. I was involved in one case against Isaacs the unrelated allegation of which has been clarified by the 6th Circuit Court of Appeals as a proper allegation. Isaacs seeks to impose individual contractual liability law for being a member of Home Defense League, PLC. The allegations do not provide authority for my legal responsibility/liabilityas an individual lawyer for the acts/conduct of others to include an entity and its other lawyer/members. The factual allegations are a matter of record as not being accurate that I or

Home Defense League, PLC filed cases against Isaacs as alleged in support of the motion for fees and costs under FCRP 11.

12.    The court indicates that the case at bar is filed by "the Home Defense League." (Dkt. No. 102, at 5.) The Court's Opinion states "An article on attorney Marsh's website states that the Home Defense League is representing the counties in seeking the payment of the transfer taxes." *Id.*

13.    The compliant and subsequent filings by **MARSH and MAXWELL** in this case speak for themselves. Plaintiffs are represented by DANIEL P. MARSH, PLLC and WILLIAM MAXWELL & ASSOCIATES. There is not a heading or signature block with "Home Defense League" on file in this case properly indicating the true attorneys in this matter.

14.    The article indicated by the court has since been removed because it is inaccurate.

15.    An evidentiary hearing would establish that the contractor that created and posted the article made a mistake by confusing Hertel I with Hertel II. Also, any filings with "Home Defense League" are incorrect and would need to be corrected.

16.    An evidentiary hearing would also accurately establish the attorneys **MARSH and MAXWELL,** and not "Home Defense League" , were in fact hired to represent the Plaintiff's.

**ISAACS is retaliating against MARSH and MAXWELL for a criminal complaint filed against ISSACS by HERTEL**

17.    At the February 20, 2013 hearing, **MAXWELL** stated on the record that ISAACS is the subject of a criminal complaint filed with Michigan Attorney General's office by Curtis Hertel, Ingham County Register of Deeds.  A copy of Mr. Hertel's sworn complaint is provided in with this filing.

18.    The affidavit indicates ISAACS is aware of the criminal complaint made against him.

19.    A factual dispute has been raised that ISAACS has filed this action and characterized the activities of **MARSH** and **MAXWELL**  to give the impression that  **MARSH** and **MAXWELL** have filed 12 cases against him for purposes of harassment when they clearly have not.

20.    A factual disputes exists as to the motives of ISACCS in light of the inaccurate and misleading filings made with the Court by ISAACS.

**An evidentiary hearing was requested to clear these factual disputes**

21.    An evidentiary hearing was requested by **MARSH** and **MAXWELL** to clear the factual disputes put forward by **MARSH** and **MAXWELL** in court and filings that exist in the record. Such would clearly establish that **MARSH** and **MAXWELL** did not file 12 lawsuits against **ISAACS** and that the activities of tohers being imputed to **MARSH** and **MAXWELL** have no factual basis. Also, the few cases that **MARSH** and **MAXWELL** have filed against **ISAACS** as individual attorneys and firms, have been recently recognized by the 6th Circuit Court of Appeals as appropriate.

22.     As stated earlier **ISAACS** and Orlans were named as a defendants under the legal theory they were subject to the FDCPA and were violating that statute. Those defendants were dismissed by the District Courts prior to the 6th Circuit Court of Appeals clarifying the law vindicating the legal theory put forth by MARSH and MAXWELL as appropriate.

23.     The 6th Circuit Court of Appeals has held that an attorney and the law firm may be liable for violations under the FDCPA. The 6th Circuit Court of Appeals, held the following;

> *Glazer v. Chase Home Finance LLC*, No. 10-3416, 2013 WL 141699, at *5-9 (6th Cir. Jan. 14, 2013). In *Glazer* we held that "mortgage foreclosure is debt collection under the Act. Lawyers who meet the general definition of a 'debt collector' must comply with the FDCPA when engaged in a mortgage foreclosure. And a lawyer can satisfy that definition if his principal business purpose is mortgage foreclosure or if he 'regularly' performs this function." Id. at *9. In light of *Glazer*, we are left only to determine if the Mellentines' complaint is sufficient to allege that Orlans is a debt collector under the FDCPA. See *Andrew Mellentine, et al. v. Ameriquest Mortgage Company, et al.* No. 11-2467 at 5 (6th Cir. Feb. 14, 2013)

24.     The 6th Circuit of Appeals has affirmed the position of Marsh in the *Rogers* case where Isaacs was named as a defendant for misrepresentation and use of fraudulent affidavits, which are violations of the FDCPA.

25.     In the cases listed and relied upon by Isaacs, no court has ever found that I was harassing Defendant Isaacs or that those cases were brought for any improper purpose.

**Court has found the actions of MARSH and MAXWELL are not frivolous, but has found harassment to exist against ISSACS**

26.     This action to collect taxes due was initiated by two governmental entities, Ingham County and Branch County. These governmental entities hired as contract employees Attorneys Marsh and Maxwell as county civil counsel to prosecute claims for transfer taxes pursuant to MCL 49.71.

27.     The Complaint in this matter was filed against Defendant Isaacs in his position as Vice President and Secretary of MERS who, as a corporate officer, signed/executed documents allegedly transferring property interests in the plaintiff counties without the true value of the property being placed on the documents and without paying the requisite transfer taxes due.

28.     The complaint states no other allegations against Defendant Isaacs. Isaacs' motion specifically and incorrectly states and/or infers he is being sued as a lawyer representing his client, and improperly infers that his law firm has been sued as well. The lawsuit regards his duties as a corporate officer for MERS with regard to the specific duties under CRETTA. Mr. Isaacs is clearly identified in Paragraph 14 of the complaint as a person who holds himself out as a Vice President or Secretary of MERS signing documents and deeds as a MERS contractor and corporate officer through a corporate resolution of MERS. Mr. Isaacs's status as an attorney has nothing to do with the allegations stated in the complaint.

29.     In Paragraph 40 of the complaint, the duties of Mr. Isaacs as a signer of documents for MERS and the alleged breach of those duties are again set out. Under MCL 207.507, persons

who make, execute, issue or deliver documents requiring payments of tax have specifically called out duties under the act. It states that:

> " The tax imposed by this Act (CRETTA) shall be evidenced by the affixing of a documentary stamp or stamps to every instrument subject to the tax imposed by this act by the person making, executing, issuing or delivering such document."

30.    Clearly CRETTA specifically states and requires that persons executing, which generally includes signing, documents for filing at the register of deeds specifically affix stamps to every instrument subject to the act prior to filing. It is for the alleged breach of this duty for which Mr. Isaacs was included as a defendant in this litigation and not because of any attorney client relationship he has been unable to establish in this case, which is not relevant to the allegations against him.

31.    The Michigan legislature set out two types of duties under MCL 207.501, *et seq.* First that grantors or sellers of real property are the person responsible for the payment of transfer taxes for filing such transfer documents. Second, the legislature required that any person making, executing, issuing or delivering such document shall affix and/or pay the tax imposed by the act. "Person" is defined in the statute at MCL 207.501(b):

(b) "Person" means every natural person, association or corporation. Whenever used in any penalty clause the term "person", as applied to associations, means the partners or members thereof, **and as applied to corporations, the officers thereof**.

32.    Plaintiffs note that the legislature included officers of corporations with regard to the penalty section of the act. The penalty section does not include any criminal charges for corporate officers for non-payment of taxes or failing to affix documentary stamps to property

transfer documents. HOWEVER, it does set out criminal penalties for corporate officers, such a

Mr. Isaacs for

> ### § 207.512. Unlawful acts; penalty for violations
> (1) It shall be unlawful for any person to:
> (a) Fraudulently cut, tear or remove from a document any documentary stamp.
> (b) Fraudulently affix to any document upon which tax is imposed by this act any documentary stamp which has been cut, torn or removed from any other written instrument upon which tax is imposed by this act, or any documentary stamp of insufficient value or any forged or counterfeited stamp or any impression of any forged or counterfeited stamp, die, plate or other article.
> € Wilfully remove or alter the cancellation marks of any documentary stamp or restore any such documentary stamp with intent to use or cause the same to be used after it has already been used, or knowingly buy, sell, offer for sale or give away any such altered or restored stamp to any person for use, or knowingly use the same.
> (d) Knowingly or willfully prepare, keep, sell, offer for sale or have in his possession any forged or counterfeited documentary stamps.
> (e) Knowingly or willfully issue a false or fraudulent affidavit.
> (2) Any person violating any of the provisions of this section is guilty of a misdemeanor and shall be fined not more than $500.00 and costs of prosecution, or imprisoned for not more than 1 year, or both.

33.    The Michigan legislature clearly wanted to criminally discourage corporate officers, who were under duties for making, executing, issuing or delivering such documents from fraudulently or willfully misusing document stamps or filing false affidavits. Other duties associated with making, executing, issuing or delivering such documents are however, not criminally chargeable. The legislature's different treatment for those making, executing, issuing or delivering transfer documents for recording clearly shows legislative intent that such persons have separate duties called out in the statute. Here, only the specific acts set out in 207.512 could be charged criminally.

34.    Defendant Isaacs, as a maker and/or executor of documents transferring interests in real property has specific duties under MCL 207.501, *et seq.* The civil prosecution of the alleged

failure to perform those duties as alleged in plaintiffs' complaint does not give rise to any

attorney client relationships and is firmly based on duties specifically set forth in CRETTA.

35.     In light of the arguments above that are in the record, this Court found Plaintiffs

identification of ISAACS as a Defendant was "NOT frivolous" .........

Parties do not violate Rule 11 if they make "nonfrivolous argument[s] for
extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ.
P. 11(b)(2). Thus, because Plaintiffs' claims could be construed as an effort to extend,
modify, and/or reverse existing law, the Court concludes that the claims did not violate Rule
11(b)(2) and were not objectively unreasonable per se.

Order [102] pages 3-4

36.     Attorneys Marsh and Maxwell did not have, and there is not and could never be a

showing of, a clear and present vendetta of harassment against Defendant Isaacs, the Vice

President of MERS, based on the filing of this lawsuit as ISAACS is identified as a proper

Defendant by Plaintiff's.

37.     MARSH and MAXWELL filed a Motion for an Evidentiary hearing with Objection to

Submission of Attorney Fees with a request to strike ISAACS filing as failing to follow the

Court's written order [Dkt 96].

**FOR EVIDENT IARY H EARING FOR THE DETERMINATION OF THE DISPUTED
ISSUES OF ENTITLEMENT AND/OR THE AMOUNT OF THE ATTORNEY FEES
AND COSTS AND THE REASONABLENESS OF SUCH COSTS AND FEES, TO
WHICH THE MOVING PARTY CLAIMS I T IS ENTITLED TO UNDER FCRP 11 [66]
AND OBJECTION TO DEFENDANTS SUBMISSSION O F LEGAL FEES [82]**

38.     I am competent to testify in this matter and will do so if called as a witness

Date:   March 26, 2013                  By:  _Daniel P. Marsh_
                                             DANIEL P. MARSH

Subscribed and sworn to before me on this 26th day of March, 2013.

_Douglas L. Toering_
DOUGLAS L. TOERING           , Notary Public
State of Michigan, County of _Macomb_
My Commission Expires:     _4/8/2019_
Acting in the County of ___Oakland___