UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS HERTEL and NANCY
HUTCHINS,

                Plaintiffs,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC,
et al.,

                Defendants.

_____/

File No. 1:12-CV-174

HON. ROBERT HOLMES BELL

**O P I N I O N**

      This matter is before the Court on motions to dismiss filed by Defendant Wells Fargo

Bank (Dkt. No. 76); Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"),

Bank of America, N.A., CitiMortgage, Inc., JP Morgan Chase & Co., and MERSCORP, Inc.

(collectively with Wells Fargo, "Bank Defendants") (Dkt. No. 78); and Intervenors Federal

National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation

("Freddie Mac"), and the Federal Housing Finance Agency ("FHFA") (Dkt. No. 80.) These

motions raise the issue of Plaintiffs Curtis Hertel and Nancy Hutchins' standing to bring the

present suit. On April 10, 2013, this Court ordered that if Plaintiffs wished to provide

evidence of standing, they should file such evidence with this Court within 7 days. On April

17, Plaintiffs filed notice of proofs of standing. (Dkt. No. 125.) The Bank Defendants filed

a response to this notice on April 19. (Dkt. No. 126.) For the reasons that follow, the Bank

Defendants' motions to dismiss will be granted, and the Intervenors' motion to dismiss will be denied as moot.

Also before the Court is the Bank Defendants' motion for leave to file supplemental authority (Dkt. No. 113), and a motion for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b) by the non-diverse defendants previously dismissed (Dkt. No. 83). For the reasons that follow, the motion for leave to file supplemental authority will be granted, and the motion for entry of judgment will be denied as moot.

## I.

On November 10, 2011, Hertel, Register of Deeds of Ingham County, and Hutchins, Register of Deeds of Branch County, filed a complaint in Ingham County Circuit Court. Plaintiffs' complaint alleged that the Bank Defendants and other, non-diverse defendants violated Michigan's State Real Estate Transfer Tax Act ("SRETTA") and County Real Estate Transfer Tax Act ("CRETTA"), Mich. Comp. Laws §§ 207.502, 207.523, by improperly claiming exemptions. On February 27, 2012, the case was removed to this Court. (Dkt. No. 1.)

Following substantial briefing, this Court denied Plaintiffs' motion to remand (Dkt. Nos. 49, 50), dismissed the non-diverse defendants (Dkt. Nos. 60, 67, 69), denied the Michigan Attorney General and Michigan Department of Treasury's motion to intervene (Dkt. Nos. 74, 75), and granted the federal entities' motion to intervene[1] (*Id.*). Plaintiffs have

---

[1]No claims are asserted against the Intervenors, however, some of the claims against the other defendants implicate transactions involving the Intervenors.

since voluntarily dismissed their claims arising under the SRETTA.  (Dkt. No. 70.)
Subsequently, all remaining defendants filed motions to dismiss.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to
state a claim upon which relief can be granted" as an affirmative defense.  "[T]o survive a
motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential
allegations respecting all material elements to sustain a recovery under some viable legal
theory."  *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009)
(internal quotation marks omitted).  In reviewing such a motion, the Court must "accept all
of plaintiff's factual allegations as true and determine whether any set of facts consistent with
the allegations would entitle the plaintiff to relief."  *G.M. Eng'rs & Assoc., Inc. v. W.
Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990).  As a general rule, however, the Court
"need not accept as true legal conclusions or unwarranted factual inferences, and conclusory
allegations or legal conclusions masquerading as factual allegations will not suffice." *In re
Travel Agent*, 583 F.3d at 903.

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of
his entitle[ment] to relief requires more than labels and conclusions, and a formulaic
recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 545 (2007) (internal quotations omitted).  While detailed factual allegations are not
required,  the  pleading  standard  "demands  more  than  an  unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting

*Twombly*, 550 U.S. at 570).

**III.**

**A. Plaintiffs' Standing**

In Michigan, a governmental entity or officer may only exercise those powers which

it or he has been expressly granted. *Citizens for Protection of Marriage v. Bd. of State

Canvassers*, 688 N.W.2d 538, 541 (Mich. Ct. App. 2004) ("An agency has no inherent

power. Any authority it may have is vested by the Legislature, in statutes, or by the

Constitution."); *Bandfield v. Wood*, 304 N.W.2d 551, 552 (Mich. Ct. App. 1981) (quoting

*People v. Freedland*, 14 N.W.2d 62, 65 (Mich. 1944)) (holding that for a public office, "the

powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by

the legislature or through legislative authority").

The Bank Defendants argue that Plaintiffs lack standing to bring the present suit

because Michigan law does not authorize registers of deeds to file lawsuits. Plaintiffs

counter by arguing that they are suing not as registers of deeds, but instead as authorized

representatives of the Counties:

> Actions to which this state or any governmental unit, including but not limited
> to a public, municipal, quasi-municipal, or governmental corporation,
> unincorporated board, public body, or political subdivision is a party may be
> brought by or against such party in its own name, or in the official capacity of

4

an officer authorized to sue or be sued in its behalf . . . .

Mich. Comp. Laws § 600.2051(4).  Plaintiffs' reliance on this statute is misplaced.  Registers

of deeds are not "authorized to sue" on behalf of counties under Michigan law.  Michigan

statutes expressly define the powers of registers of deeds, Mich. Comp. Laws §§ 53.89-53.94,

but no statute authorizes a register of deeds to file lawsuits.  Moreover, no statute empowers

a county's board of commissioners to authorize a register of deeds to do so.

Instead, Michigan law specifies the appropriate method for a county to bring suit:

The board of supervisors of any county by a majority vote of the
members-elect may employ an attorney to represent the county in civil matters,
whenever the board determines that the prosecuting attorney is unable to
properly represent the county.

Mich. Comp. Laws § 45.563(e).  This statute authorizes a board of supervisors to employ *an*

*attorney* to represent a county but does not authorize a board of supervisors to designate an

officer as its representative.  Thus, Hertel and Hutchins lack standing to bring the present

suit, even on behalf of the Counties.

Because it appears the real parties in interest are Ingham and Branch Counties, who

likely have standing,[2] the Court would ordinarily grant Plaintiffs leave to amend their

---

[2]It is not a certainty that the Counties have standing because there are numerous
problems with Plaintiffs' "proof" of standing – an Ingham County Board of Commissioners
Resolution (Dkt. No. 125, Ex. A), minutes of the Branch County Board of Commissioners from
June 28, 2011 (Dkt. No. 125, Ex. B), and the affidavit of Teresa Kubasiak, who took the June 28
minutes (Dkt. No. 125, Ex. C).  One such problem is that the Ingham County Resolution
authorized the employment of the "Home Defense League" as counsel.  (Dkt. No. 125, Ex. A.)
Plaintiffs' attorneys have repeatedly claimed that the present suit was not brought by the Home
Defense League.  (*See, e.g.*, Dkt. No. 72, at 8; Dkt. No. 96, at 2; Dkt. No. 120, at 9; Dkt. No. 122,
(continued...)

complaint to reflect the Counties as the true plaintiffs. However, because dismissal is warranted on the merits regardless of who is named as plaintiff, the Court will not grant such leave to amend.

**B. Private Right of Action**

Next the Bank Defendants argue that this case must be dismissed because the CRETTA does not confer on Plaintiffs a private right of action. Plaintiffs concede that the CRETTA contains no express right of action to enforce the failure to pay required transfer taxes. (Dkt. No. 84, at PageID# 974.) However, Plaintiffs contend that a private right of action must be inferred.[3]

"Where the common law provides no right to relief, but the right to relief is created by statute, a plaintiff has no private cause of action to enforce the right unless (1) the statute expressly creates a private cause of action, or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions." *Lane v. Kindercare Learning Ctrs., Inc.*, 588 N.W.2d 715, 718 (Mich. Ct. App. 1998). "As a general rule, the remedies provided by statute for violation of a right having no common-law

---

[2](...continued)
at 6.) Another issue is that the Ingham County Resolution is contingent on approval from the County Attorney and the County Controller/Administrator but Plaintiffs have proffered no evidence of either. However, the Court declines to address these problems as they are irrelevant for purposes of addressing the motions to dismiss on the merits. The Court assumes for purposes of this opinion that the Counties do have standing.

[3]Presumably, Plaintiffs seek a "private" right of action limited to counties whose treasuries would be entitled to the unpaid transfer taxes.

6

counterpart are exclusive. However, an exception to this general rule provides that if the statutory remedy is plainly inadequate, a private cause of action can be inferred." *Int'l Bhd. of Elec. Workers, Local Union No. 58 v. McNulty*, 543 N.W.2d 25, 29 (Mich. Ct. App. 1995) (citing *Forster v. Delton Sch. Dist.*, 440 N.W.2d 421 (Mich. Ct. App. 1989); *Dudewicz v. Norris Schmid, Inc.*, 503 N.W.2d 645 (Mich Ct. App. 1993)).

The Court, in finding the non-diverse defendants fraudulently joined, has already held that implying a private right of action for the documentary deficiencies of transfer instruments would be improper. (Dkt. No. 49, at 14-15.)  This is because the CRETTA does impose remedies for certain documentary deficiencies.  Among others, it is a criminal offense for any person to fraudulently remove or tamper with a documentary stamp and for any person to knowingly attach a fraudulent affidavit to a transfer instrument.  Mich. Comp. Laws § 207.512.  These remedies do not become "plainly inadequate" just because the "statutory remedies are not as comprehensive as plaintiffs . . . would like."  *McNulty*, 543 N.W.2d at 30.

In that opinion, however, the Court did not reach the issue of whether a private right of action could be implied to enforce the failure to pay required transfer taxes.[4]  That issue is now before the Court.

There is some support for the Bank Defendants' argument that there is no need to

---

[4]It was unnecessary for the Court to address the issue at the time because the non-diverse defendants were neither sellers nor grantors, and thus were not liable to pay transfer taxes even if a cause of action was inferred.

7

imply a right of action because an adequate enforcement remedy appears elsewhere in Michigan's statutory scheme.[5]  Michigan's Department of the Treasury is the "agency of this state responsible for the collection of taxes" and is responsible for "tax enforcement." Mich. Comp. Laws § 205.1.  The Department of the Treasury has broad tax enforcement powers:

> (a) The state treasurer or a duly appointed agent of the state treasurer may examine the books, records, and papers touching the matter at issue of any person or taxpayer subject to any tax, unpaid account, or money the collection of which is charged to the department. The state treasurer or a duly appointed agent of the state treasurer may issue a subpoena requiring a person to appear and be examined with reference to a matter within the scope of the inquiry or investigation being conducted by the department and to produce any books, records, or papers. The state treasurer or a duly appointed agent, referee, or examiner of the state treasurer may administer an oath to a witness in any matter before the department. The department may invoke the aid of the circuit court of this state in requiring the attendance and testimony of witnesses and the producing of books, papers, and documents.

> (b) After reasonable notice and public hearing, the department may promulgate rules consistent with this act in accordance with the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, necessary to the enforcement of the provisions of tax and other revenue measures that are administered by the department.

> (c) The department may consult with the governor and the legislature on the

---

[5]The Bank Defendants' other argument, that the onus is on the register of deeds to reject up front all instruments presented for recording that do not comply with the CRETTA, lacks merit.  There is no such requirement in the CRETTA, and it defies logic to conclude that once an instrument evidencing a transfer is recorded, tax liability for that transfer ceases even if an improper exemption was claimed.  *See Eastbrook Homes, Inc. v. Treasury Dep't*, 820 N.W.2d 242, 250-51 (Mich. Ct. App. 2012) (allowing the assessment of tax deficiencies for previously recorded instruments under the SRETTA).  Indeed, the statute itself anticipates the fact that instruments "not in accordance with this act" will end up being recorded, and expressly provides that such recording is still valid for purposes of notice.  Mich. Comp. Laws § 207.511.  The Court is unconvinced that the "gatekeeper" system of enforcement posited by Defendants would be an adequate means of enforcement.

subject of taxation, revenue, and the administration of the laws in relation to taxation and revenue, and the progress of the work of the department, including the furnishing of reports, information, and other assistance as the governor may require.

(d) The department may investigate and study all matters of taxation and revenue as the basis of recommending to the governor and the legislature those changes and alterations in the tax laws of this state, as in the state treasurer's judgment may bring about a more adequate and just system of state and local taxation.

(e) The department may formulate a standard procedure that requires the departments, commissions, boards, institutions, and the agencies of this state that collect taxes, fees, or accounts for this state to report all sums of money due and uncollected and those uncollected items as prescribed by law and by the state treasurer. The procedure prescribed in this subdivision shall include a standard practice for receiving, receipting, safeguarding, and periodically reporting all state revenue receipts, whether current, delinquent, penalty, interest, or otherwise, and the amounts, kinds, and terms of items either collected, compromised, or still outstanding, to be summarized, studied, and reported upon as the state treasurer considers advisable.

Mich. Comp. Laws § 205.3. These powers include the right to audit a company for failing to pay transfer taxes owed pursuant to the SRETTA and/or claiming an improper exemption to such transfer taxes, and the right to assess tax deficiencies. *See Eastbrook Homes, Inc. v. Treasury Dep't*, 820 N.W.2d 242, 250-51 (Mich. Ct. App. 2012) (upholding Department of the Treasury audit and assessment of tax deficiencies pursuant to the SRETTA, and holding that "[a]lthough petitioner's quitclaim deeds state that they are exempt from the county transfer tax, MCL 207.505(d), and the state transfer tax, MCL 207.526(d)" they are nonetheless "plainly taxable").

Through the CRETTA, the State delegated collection responsibilities for certain

transfer taxes to the Counties. *See* Mich. Comp. Laws §§ 207.511, 207.509. However, the CRETTA does *not* delegate enforcement responsibilities. Logically, without explicit delegation, that responsibility remains with the State until and unless it expressly delegates it to the county: "a governmental entity or officer may only exercise those powers which it or he has been expressly granted. *Citizens for Protection of Marriage*, 688 N.W.2d at 541 ("An agency has no inherent power. Any authority it may have is vested by the Legislature, in statutes, or by the Constitution.") Under this view, the right to enforce the CRETTA appears to remain with the State.[6]

However, reliance on Michigan's general tax enforcement statute to conclude that the State is the party entitled to enforce the CRETTA may be misplaced. The SRETTA explicitly incorporates that tax enforcement statute, providing that "[t]his act shall be administered by the revenue division of the department of treasury under Act No. 122 of the Public Acts of 1941, being sections 205.1 to 205.31 of the Michigan Compiled Laws." Mich. Comp. Laws § 207.536. There is no parallel provision in the CRETTA. Thus, while it is still possible to conclude that the State has reserved enforcement of the CRETTA for itself, it is also possible to conclude that neither the State nor the Counties has the ability to enforce the CRETTA.

Notably, when the Michigan Attorney General and Michigan Department of the

---

[6]As with the CRETTA, the Counties collect the transfer tax owed under the SRETTA. Mich. Comp. Laws § 207.530. Thus, the entity entitled to collect the taxes should not be conflated with the entity who is entitled to enforce the statutes.

10

Treasury sought to intervene in this case, they only sought leave to assert claims under the SRETTA. (*See* Dkt. No. 26.)  There are two possible conclusions from this: (1) the State does not believe it has the right to assert claims under the CRETTA; or (2) the State chose only to assert claims which would directly affect its own treasury.  Either conclusion lends credence to the idea that, even if the State has enforcement ability under Michigan's general tax enforcement statute, this means of enforcement for the CRETTA is inadequate.

In sum, there is some merit to Plaintiffs' argument that this Court should imply a private right of action.  However, the Court is hesitant to imply such a right of action for a couple reasons.  First, federal courts are justifiably reluctant to find implied causes of action in state statutes due to federalism concerns.  *See, e.g.*, *Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996); *Tr. of Boston Univ. v. ASM Commc'n*, Inc., 33 F. Supp. 2d 66, 75 (D. Mass. 1998).  Second, the fact that since the CRETTA's enactment in 1968 not a single court has found an implied private right of action in the statute demonstrates the wisdom in proceeding cautiously.  Given these concerns, the lack of clarity over whether the state can enforce the CRETTA, and the fact that dismissal is warranted in this case on the merits, the Court declines to imply a private right of action for the CRETTA.

**C.  Claims on the Merits**

Even assuming that a private right of action did exist for the Counties to sue, dismissal would still be warranted.[7]

_____

[7]The Bank Defendants also allege that Plaintiffs are equitably estopped and barred by
(continued...)

### 1. *CRETTA*

Plaintiffs attached over twenty instruments as Exhibit 2 to their complaint.  (*See* Dkt.

No. 79, Ex. A.)[8]  The Bank Defendants[9] argue that all of these instruments are exempt from

taxation under the CRETTA and are not required to conform to CRETTA's drafting

requirements.[10]  The Bank Defendants are correct.

The Court will address each set of instruments in turn.  First, however, the Court

wishes to address the argument that the CRETTA imposes a "DUTY to declare the true value

of the property" and a "DUTY to attach an affidavit to the deeds and instruments stating the

true value of the property."  (Compl. ¶¶ 30, 58(a)-(b) (emphasis in original).)  According to

the CRETTA, "[a] written instrument subject to the tax imposed by this act shall state on its

---

[7](...continued)
laches from asserting their claims.  Because the claims fail on the merits, the Court declines to address these arguments.

[8]The Court is citing to the exhibit provided by the Bank Defendants because Plaintiffs' Exhibit 2 was not provided in the removal documents.

[9]In addition to filing its own briefing, Wells Fargo has joined in the briefing filed by the other banks.  (Dkt. No. 108, at 1 n.1.)  Because it is unnecessary to reach Wells Fargo's independent arguments that the complaint is impermissibly vague with regard to Wells Fargo and fails to acknowledge Wells Fargo's role as a mortgage servicer, the Court declines to address them in this opinion.  The Court will consequently consider the merits of the claims against all defendants together.

[10]Many pages of the briefs are devoted to whether or not Defendants CitiMortgage, Bank of America, MERS, and MERSCORP are "sellers or grantors" under the CRETTA and thus liable for the payment of transfer taxes absent valid exemptions.  The Court declines to address this issue because all of the exemptions claimed on the instruments attached to the complaint were valid.  Thus, even if these defendants could be deemed "sellers or grantors" for some of the instruments, Plaintiffs have failed to state a claim against them.  This remains true even if the Court were to consider the instruments Plaintiffs present for the first time as attachments to their response brief.  (*See* Dkt. Nos. 97-98.)

face the total value of the real property or there shall be attached to the instrument an affidavit declaring the total value of the real property."  Mich. Comp. Laws § 207.504.  As this provision makes clear, there is no duty to declare the true value of the property if the instrument is not subject to the tax.  As illustrated below, none of the instruments submitted by Plaintiffs were subject to the transfer tax, and thus Defendants face no liability for not declaring the true value of any of the properties at issue.

### a) Assignment of mortgages

Four of the instruments attached to the complaint are assignments of mortgages.  (*See* Dkt. No. 79, Ex. A, Ingham B: 3348 P: 466, Ingham B: 3329 P: 131, Ingham B: 3337 P: 1127, Ingham B: 3340 P: 35.)  The CRETTA explicitly exempts "[i]nstruments or writings given as security or any assignment or discharge thereof."  Mich. Comp. Laws § 207.505(d).  This provision plainly applies to assignments of mortgages.  *McLaughlin v. Chase Home Fin., LLC*, No. 2:11–CV–1101, 2012 WL 995284, at *3 (E.D. Mich. Mar. 23, 2012) ("Assignments of mortgages . . . are specifically exempt from transfer taxes under Mich. Comp. Laws §§ 207.505(d) . . . ."), *aff'd*, 2013 WL 1003465 (6th Cir. 2013) ("[A]ssignments of mortgages are exempt from transfer taxes under MCL §§ 207.505(d) and 207.526(d).").[11]

In an attempt to avoid the applicability of this exemption, Plaintiffs draw an artificial distinction between security interests and security liens.  In essence, Plaintiffs argue that after

---

[11]The Bank Defendants filed a motion for leave to file supplemental authority on March 19, 2013, to draw the Court's attention to the Sixth Circuit decision in *McLaughlin*.  (Dkt. No. 113.)  That motion will be granted.

default on a mortgage, the power of sale  attached to the property becomes taxable under the CRETTA: thus, an assignment of a mortgage after default is an assignment of a security lien and is not exempt.  This distinction lacks merit.  Even if the Court accepted that a distinction exists, Plaintiffs' argument is defeated by the fact that the CRETTA exempts any instrument or writing "given as security."  By its plain terms, the exemption covers all securities, whether deemed an interest or a lien and whether the assignment takes place before or after default.  None of the substantial case law Plaintiffs cite has anything to do with the CRETTA and none support the proposition that the CRETTA exempts only pre-default mortgage assignments.

### b) Power of attorney instruments

In their response brief, Plaintiffs assert that they have never stated and do not allege that powers of attorney are taxable.  (Dkt. No. 85, at PageID# 1005.)

### c) Transfers where consideration is less than $100

With eleven of the remaining instruments, the stated consideration is less than $100.  (Dkt. No. 79, Ex. A, Branch 2009-02118, Branch 2009-01016, Branch 2009-07345, Branch 2010-07832, Branch 2009-05843, Branch 2010-06148, Branch 2009-05004, Branch 2007-02185, Ingham B: 3326 P: 196, Ingham B: 3333 P: 39, Ingham B: 3417 P: 345.)[12]  The CRETTA explicitly exempts "[i]nstruments where the value of the consideration is less than $100.00."  Mich. Comp. Laws § 207.505(a).  In each of the eleven relevant instruments, the

---

[12] Branch 2009-05843 and Branch 2009-02118 appear twice in the attached instruments.

consideration stated is either $0 or $1, and thus each is plainly exempt from the CRETTA.

The listing of nominal consideration on a quitclaim deed has been found presumptively valid by the Michigan Court of Appeals. *See McConnell v. McConnell*, No. 304959, 2012 WL 5857297, at *4 (Mich. Ct. App. Oct. 30, 2012) ("Here, the quitclaim deed provided that valuable consideration for transfer of the property was one dollar. Generally, courts do not inquire into the sufficiency of consideration[.]") Nevertheless, Plaintiffs assert that the amount of consideration stated on the instruments is not "the value of the consideration" within the meaning of § 207.505(a).  Instead, Plaintiffs argue that "the value of the consideration" is the fair market value or sale price of the property at issue:

> Plaintiff has provided numerous "combination" documents filed in both Branch and Ingham counties that include both the Sheriff's deed and subsequent quit claim deed for the same piece of property. All of the Sheriff's deeds provided with the complaint and with this brief have sale prices for property in excess of $10,000.00; and the Sheriff deeds clearly say that the foreclosed property was "sold" to the foreclosing party for large sums of money, all in excess of $100.00. Defendants would have this Honorable Court believe that the Sheriff's deed was really transferred for some value less than $100.00 despite its recitation otherwise.

(Dkt. No. 85, at PageID# 1008.)  This argument lacks merit because while each sheriff's deed provided by Plaintiffs evidences *a sale of the property*, each corresponding quitclaim deed for the same property does not evidence a sale.  Typically, quitclaim deeds of the sort attached to Plaintiffs' complaint evidence mortgage servicers, who foreclosed on and purchased properties in their capacity as agents of lenders, returning the properties to the lenders, who at all times maintain the beneficial ownership interest in the debt and the

15

property securing the debt. The transfer from the agent (the mortgage servicer) to the principal (the lender) is not a sale, and the use of nominal consideration is not unusual.

Thus, for purposes of such quitclaim deeds, the amount of money a foreclosed property sold for *in a sheriff's sale* is irrelevant for purposes of whether the § 207.505(a) exemption applies to a subsequent transfer from an agent to a lender. The CRETTA defines "value" as "the current or fair market worth in terms of *legal monetary exchange at the time of the transfer*," Mich. Comp. Laws § 207.501(c) (emphasis added), meaning that both the money exchanged at the time of the prior foreclosure sale of the underlying property and the fair market value of the underlying property are irrelevant. *See also McConnell*, 2012 WL 5857297 at *3 ("[T]he consideration stated on the deed was one dollar. . . . Therefore, the quitclaim deed properly stated that it was exempt from the transfer tax.");[13] *525 Redevco, Inc.*

---

[13]Plaintiffs argue that *McConnell* is inapplicable because the court relied on the land contract exemption to the CRETTA. (Dkt. No. 85, at PageID# 1009.) This is a misreading of *McConnell*, which independently found that the *quitclaim deed* was exempt because the consideration was only one dollar. Plaintiffs ignore the language preceding the excerpt they quote in their brief:

> However, the consideration stated on the deed was one dollar. As stated on the quitclaim deed, MCL 207.505(a) and MCL 207.526(a) provide that transfers of property for less than $100 consideration are exempt from taxation under the real estate transfer tax. Therefore, the quitclaim deed properly stated that it was exempt from the transfer tax.

2012 WL 5857297 at *3. The court then went on to address the argument that the real consideration was the $60,000 defendants were securing by selling the property back to plaintiffs. The Court debunked that argument by noting that the $60,000 was "the price of the land contract" and not the consideration for the quitclaim deed. *Id.* at *3. The court went on to state that *land contracts* where title does not pass until completion of the payments are also exempt from the transfer tax.

*v. Mich. Dep't of Treasury*, No. 332707, 2011 WL 7006910, at *11 (Mich. Tax. Trib. Dec. 22, 2011) (holding that the fact that "there was no consideration exchanged when Respondent prepaid rent and obtained the warranty deed for the subject property" meant that "the value of the consideration is zero and the subject transaction is exempt from State Real Estate Transfer Tax Act").

The Sheriff's deeds provided by Plaintiffs are not evidence of fraud, and their assertion that the quitclaim deeds' stated amounts of consideration cannot possibly be accurate is not well taken. Because the actual money exchanged at the time of the transfers via quitclaim deeds was zero dollars or one dollar, the instruments at issue are exempt from the CRETTA.

### d) Deeds where Fannie Mae is grantor

Fannie Mae is the grantor on three of the instruments. (*See* Dkt. No. 79, Ex. A, Branch 2007-08095, Branch Liber: 00989 Page: 0273, Ingham B: 3407 P: 535.) These instruments are exempt pursuant to Mich. Comp. Laws § 207.505(c), which exempts "[w]ritten instruments which this state is prohibited from taxing under the constitution or statutes of the United States." Each of the Intervenors is exempt from "all" state taxation. Each of their exemptions comes from three separate, but parallel, federal statutes. For Fannie Mae:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, *shall be exempt from all taxation now or hereafter imposed by any State*, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any

17

county, municipality, or local taxing authority, except that any real property of
the corporation shall be subject to State, territorial, county, municipal, or local
taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2) (emphasis added). The statutes regarding Freddie Mac and the

FHFA contain virtually identical language. *See* 12 U.S.C. § 1452(e) (exempting Freddie Mac

from "all taxation now or hereafter imposed . . . by any State"); 12 U.S.C. § 4617(j)(2)

(exempting the FHFA from "all taxation imposed by any State").

As this Court concluded in *Hertel I*, "[t]here is no possible reading of the statutes

other than that Fannie Mae, Freddie Mac, and the FHFA are exempt from all state taxation,

regardless of whether it is termed a recording or excise tax." *Hertel v. Bank of Am. N.A.*, No.

1:11–CV–757, 2012 WL 4127869, at *3 (W.D. Mich. Sept. 18, 2012). In other words, the

statutes are "unambiguous" and "[u]nder the plain interpretation of these statutes" the

Intervenors are exempt from transfer taxes. *Id.* at *4.

To the extent Plaintiffs are arguing that the Bank Defendants cannot rely on the

Intervenors' tax exemptions, the argument is frivolous. The plain language of the CRETTA

limits imposition of the transfer tax to a "seller or grantor." Mich. Comp. Laws § 207.502(2).

For each of the instruments attached to the complaint implicating one of the Intervenors,

Fannie Mae was the *grantor*. Thus, there can be no transfer tax liability for any of those

instruments, regardless of who was the grantee.

### 2. Conversion

As part of Plaintiffs' claims for relief, Plaintiffs seek: "monetary damages and triple

18

damages as punitive damages pursuant to MCL 600.2919a and/or MCL 440.3420 for the penalties and interest owed for each deed or document/instrument transferring a property interest for filing with the Ingham County Register of Deeds without the proper transfer taxes and fees." (Compl. ¶ 58(c).) First, Plaintiffs have not demonstrated that any instrument was filed with a register of deeds without the proper transfer tax. Second, even if Plaintiffs could show that instruments were filed without the proper transfer tax, Plaintiffs fail to state a claim for relief for either statutory conversion, Mich. Comp. Laws § 600.2919a, or conversion of an instrument, Mich. Comp. Laws § 440.3420.

### a) Statutory conversion

"In order to maintain an action for conversion, the plaintiff must have an enforceable interest in the property at issue." *Kogelshatz v. Gendernalik Funeral Home, Inc.*, No. 293977, 2010 WL 4628678, at *5 (Mich. Ct. App. Nov. 16, 2010). Plaintiffs have not shown that they had an ownership interest in the alleged unpaid taxes because those alleged unpaid taxes never left any defendant's possession, and a person cannot convert his own property. *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992).

Moreover, a failure to pay money owed does not constitute conversion unless identifiable, specific bills are involved:

> [I]t is well settled that an action for conversion of money can only be maintained if there was an obligation to return or deliver the specific physical money at issue. . . . There was no such obligation here; plaintiff demanded payment of a specific sum, not the return of specific earmarked bills. Therefore, the conversion claim cannot be established as a matter of law . . . .

19

*Rybar v. Al Serra Chevrolet, Inc.*, No. 194277, 1998 WL 1989740, at *2 (Mich. Ct. App. Oct. 2, 1998); *see also, e.g.*, *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999) ("To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care.")  Thus, even if transfer taxes were owed on the instruments in question – which they were not – Plaintiffs would still be unable to make out a statutory conversion claim because Plaintiffs seek payment of *a specific sum* and not specific physical money.

Rather than responding to the lack of ownership argument presented by the defendants, Plaintiffs raise a new theory of liability in their response brief:

> Defendants have admitted in their motions that they in some respects act as agents or attorneys in fact for trusts, banks and mortgage companies involved in foreclosure proceedings. Obviously, Defendants do not process foreclosures without payments of [sic] for time, costs, and expenses.  Upon information and belief, Plaintiffs believe that the grantors in this litigation, in some or all of the documentary filings in the litigation, have received or been previously paid for transfer taxes that were thought to be due and owing on properties being foreclosed.

(Dkt. No. 85, at PageID# 1010.)  First, this claim was not alleged in the complaint and cannot be presented for the first time in a response brief.  Second, even if accepted, this claim is impermissibly vague and conclusory because there are no factual allegations supporting it. Last, even if this vague allegation was accepted as true, and the defendants were agents for unidentified third parties who entrusted them with money to pay transfer taxes which the defendants chose to pocket instead, any resulting conversion claim would lie with *the third parties*, not with Plaintiffs.

### b) Conversion of an instrument

Plaintiffs' theory is that the defendants, by avoiding paying transfer taxes, converted instruments (i.e. the money that should have been paid) to persons not entitled to payment (i.e. themselves).  This theory is equally unsupported.  Conversion of an instrument does not apply to money.  Mich. Comp. Laws § 440.3102(1) ("This article applies to negotiable instruments. It does not apply to money[.]")

Consequently, Plaintiffs' claims for conversion, whether statutory conversion or conversion of an instrument, must be dismissed as a matter of law.

### IV.

The Intervenors have also filed a motion to dismiss.  They seek dismissal of the claims against the Bank Defendants because the Intervenors' statutory exemption from all state taxation prohibits transfer taxes on any real estate transaction to which the Intervenors are a party.  Thus, it is the Intervenors' contention that not only are they exempt from such taxation, but so are their counterparts (ie. the Bank Defendants) even if those counterparts are the sellers or grantors.

This Court, in an abundance of caution, allowed the federal entities to intervene because of the sweeping nature of the complaint alleging years of unpaid transfer taxes in 83 Michigan counties.  At the time of intervention, it was possible that a situation would arise where the Court would have to address the issue of whether the Bank Defendants could rely on the Intervenors' statutory exemptions from taxation for an instrument in which a bank was

21

the grantor and one of the federal entities was the grantee. However, such a situation is not alleged in the complaint (which only presents the most general of allegations) and did not occur in any of the instruments attached to the complaint. Moreover, the Bank Defendants have shown that dismissal of this entire case is warranted because Plaintiffs' complaint fails to present a plausible claim to relief. Thus, the Court will not address the arguments presented in the Intervenors' motion and will deny the motion as moot.

## V.

Plaintiffs' complaint and briefs make inaccurate statements of the law under the CRETTA and allege far-fetched theories of liability. While the complaint purports to be a class action covering instruments filed in 83 counties over a number of years, the Court will not allow Plaintiffs to continue "fishing" for an improperly claimed exemption to the CRETTA when transfer taxes are indisputably not owed for any of the instruments Plaintiffs' attached to their complaint.

Because Plaintiffs' claims against the defendants are entirely devoid of supporting factual allegations, their claims to relief are not plausible. Accordingly, the Bank Defendants' motions to dismiss will be granted.

Because this case is now closed and judgment will be entered in favor of all Defendants, the non-diverse defendants' motion for entry of judgment will be denied as moot.

An order and judgment consistent with this opinion will be entered.

Dated:  <u>May 3, 2013</u>                    /s/ Robert Holmes Bell                    
                                   ROBERT HOLMES BELL
                                   UNITED STATES DISTRICT JUDGE